1   MICHELLE B. HEVERLY, Bar No. 178660
    mheverly@littler.com
2   SOPHIA BEHNIA, Bar No. 289318
    sbehnia@littler.com
3   LITTLER MENDELSON, P.C.
    650 California Street, 20th Floor
4   San Francisco, CA  94108.2693
    Telephone:     415.433.1940
5   Fax No.:        415.399.8490

6   KARIN M. COGBILL, Bar No. 244606
    kcogbill@littler.com
7   LITTLER MENDELSON, P.C.
    50 W. San Fernando Street, 15th Floor
8   San Jose, CA  95113.2303
    Telephone:     408.998.4150
9   Fax No.:        408.288.5686

10  MIREYA A.R. LLAURADO, Bar No. 194882
    mallaurado@fedex.com
11  FEDEX FREIGHT, INC.
    3425 Victor Street
12  Santa Clara, CA  95054
    Telephone: 408.654.3186
13  Facsimile: 408.654.3297

14  Attorneys for Defendant
    FEDEX FREIGHT, INC.
15

16                    UNITED STATES DISTRICT COURT

17                   EASTERN DISTRICT OF CALIFORNIA

18                          FRESNO DIVISION

19

20  KELLY L. HALL, RICHARD ARP,          Case No. 1:13-CV-01711-SKO
    ISRAEL FLORES, ROBERT
21  MARKOWITZ, ROY TAYLOR and            **REQUEST FOR JUDICIAL NOTICE IN**
    RICHARD RODRIGUEZ                    **SUPPORT OF DEFENDANT'S REPLY**
                                         **BRIEF IN SUPPORT OF ITS MOTION**
22            Plaintiffs,               **FOR SUMMARY JUDGMENT AGAINST**
                                         **PLAINTIFFS RICHARD RODRIGUEZ,**
23        v.                             **ROBERT MARKOWITZ, AND KELLY L.**
                                         **HALL**
24  FEDEX FREIGHT, INC., an Arkansas
    Corporation, and DOES 1 through 25,  Date:    June 11, 2014
25  inclusive,                           Time:    9:30 a.m.
                                         Judge:   Hon. Sheila K. Oberto
26            Defendant.                          Courtroom: 7

27                                       Complaint filed: September 19, 2013

28

REQUEST FOR JUDICIAL NOTICE ISO REPLY BRIEF
ISO MOTION FOR SUMMARY JUDGMENT                          CASE NO. 1:13-CV-01711-SKO

In support of its Motion for Summary Judgment Against Plaintiffs Richard Rodriguez, Robert Markowitz and Kelly Hall, Defendant FedEx Freight, Inc. respectfully requests that the Court take judicial notice of the following documents pursuant to Federal Rule of Evidence 201:

1.  Order re: Motion for Summary Adjudication, *Rohan Mahabali v. Federal Express Corp.*, Case No. AG10536357 (Cal. Sup. Ct. County of Alameda, July 18, 2013), a true and correct copy of which is attached hereto as **Exhibit A.**

2.  Opinion, *Karim A. Shabazz v. Federal Express Corp.*, 2011 Cal. App. Unpub. LEXIS 9120, (Nov. 30, 2011), a true and correct copy of which is attached hereto as **Exhibit B.**

3.  Order On Court's Ruling Under FRCP 52(C); Findings of Fact and Conclusions of Law, *Roger Walton v. Federal Express*, Case No. 2:08-cv-00840-GAF-FFM (N.D. Cal. Mar. 31, 2010), a true and correct copy of which is attached hereto as **Exhibit C.**

4.  Ruling re: Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) and 12(C) Each Cause of Action in Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment And/Or Summary Adjudication of Issues Pursuant to Rule 56, *Samuel Frith v. Federal Express Corp.*, Case No. CV 09-7999-VBF (FMOx) (C.D. Cal. Dec. 11, 2009), a true and correct copy of which is attached hereto as **Exhibit D.**

5.  Order re: Defendant's and Plaintiff's Cross-Motions for Summary Judgment, *Randall Butler v. Federal Express Corporation*, Case No. 1:03-cv-6822 OWW DLB, (E.D Cal. April 12, 2005), a true and correct copy of which is attached hereto as **Exhibit E.**

6.  Memorandum Opinion and Order, *Cheryl Badgett v. Federal Express Corp.*, 378 F. Supp. 2d 613, (M.D. N.C. Apr. 7, 2005), a true and correct copy of which is attached hereto as **Exhibit F.**

7.  Memorandum Opinion and Order, *Leonia Allen v. Federal Express Corp.*, 2009 U.S. Dist. LEXIS 91775, (M.D. N.C. Sept. 30, 2009), a true and correct copy of which is attached hereto as **Exhibit G.**

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

REQUEST FOR JUDICIAL NOTICE ISO REPLY
BRIEF ISO MOTION FOR SUMMARY JUDGMENT                2.                CASE NO. 1:13-CV-01711-SKO

8.   Order Granting Defendant's Motion of Summary Judgment, *Barry Tompkins v. Federal Express Corp.*, 2010 U.S. Dist. LEXIS 42593 (W.D. Tenn. April 30, 2010), a true and correct copy of which is attached hereto as **Exhibit H.**

9.   Memorandum Opinion, *Darnell Wilkerson v. Federal Express*, 2011 U.S. Dist. LEXIS 59708 (D. Md. June 2, 2011), a true and correct copy of which is attached thereto as **Exhibit I.**

10.   Opinion and Order Granting Defendant's Motion for Summary Judgment, *Joe M. Ray, Jr., v. FedEx Corporation Service Inc.*, 2009 U.S. Dist. LEXIS 93517 (W.D. Tenn. July 31, 2009), a true and correct copy of which is attached hereto as **Exhibit J.**

13.   Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment, *Darryl M. Dumas v. Federal Express Corporation*, Case No. 03-72402 (E.D. MI July 8, 2004), a true and correct copy of which is attached hereto as **Exhibit K.**

15.   Opinion and Order Granting Defendants Federal Express Corporation's Motion for Summary Judgment, *Heather Linseman v. Federal Express Corporation*, Case No. 05-71022 (E.D. MI March 20, 2006), a true and correct copy of which is attached hereto as **Exhibit L.**

16.   Order on Defendants' Motion for Summary Judgment on the Pleadings, *Mark Klemm v. Federal Express Corporation, et al.*, Docket No. 07-C-0891 (NH Sup. Ct., County of Rockingham, Mar. 12, 2008), a true and correct copy of which is attached hereto as **Exhibit M.**

17.   Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment, *Temika McGahee v. Federal Express Corp., et al.* Case No. 06-83537-NO (7th Cir. Court, State of Michigan, June 14, 2007), a true and correct copy of which is attached hereto as **Exhibit N.**

18.   Memorandum Opinion, *Alvin Evans v. FedEx Express*, Case No. W2013-01717-COA-R3-CV (TN Ct. of Appeal, Jan. 29, 2014), a true and correct copy of which is attached hereto as **Exhibit O.**

ITTLER MENDELSON, P.C.
650 California Street
20th Floor
in Francisco, CA. 94108.2693
415.433.1940

1    Federal Rule of Evidence 201(b) permits courts to take judicial notice of any fact "not

2 subject to reasonable dispute" which is "capable of accurate and ready determination by resort to

3 sources whose accuracy cannot reasonably be questioned." Courts may properly take judicial notice

4 of orders of other courts or orders of the same court in a different case. (*Ferdowsnia v. Std. Ins. Co.*,

5 2011 U.S. Dist. LEXIS 53807, *9, fn.5 (N.D. Cal. May 10, 2011); *Johnson v. Mitchell*, 2011 U.S.

6 Dist. LEXIS 44367, *21, fn.3 (E.D. Cal. Apr. 25, 2011); *Onkvisit v. Board of Trs.*, 2011 U.S. Dist.

7 LEXIS 42401, *8 (N.D. Cal. Apr. 13, 2011) ("Decrees, orders, and judgments of other courts are

8 subject to judicial notice under Fed. R. Ev. 201"), citing *Papai v. Harbor Tug and Barage*, Co., 67

9 F.3d 203, 207 (9th Cir. 1995).)

10    The materials for which judicial notice is here requested is relevant to Defendant FedEx

11 Freight, Inc.'s Reply in support of its Motion for Summary Judgment in that it illustrates that various

12 other courts have upheld the six-month limitation provision used within FedEx's employment

13 applications.

14    Accordingly, FedEx Freight, Inc. submits that judicial notice may be properly taken as

15 requested herein.

16 Dated:  June 4, 2014                       Respectfully submitted,

17

18                                            */s/ Sophia Behnia*

19                                            MICHELLE B. HEVERLY
                                             SOPHIA BEHNIA

20                                            LITTLER MENDELSON, P.C.
                                             Attorneys for Defendant

21                                            FEDEX FREIGHT, INC.

22 Firmwide:127289858.1 057116.1016

23

24

25

26

27

28

ITTLER MENDELSON, P.C.
650 California Street
20th Floor
in Francisco, CA 94108.2693
415.433.1940

# EXHIBIT A

Law Offices of Waukeen Q McCoy
Attn: Mccoy, Waukeen Q
703 Market Street
Suite 1407
San Francisco, CA   94103

Federal Express Corporation
Attn: Wilson, David S.
2601 Main Street
Suite 340
Irvine, CA   92614____

## Superior Court of California, County of Alameda
## Hayward Hall of Justice

| | |
|---|---|
| Mahabali<br><br>                   Plaintiff/Petitioner(s)<br><br>          VS.<br><br><br>Federal Express, a corporation<br>                   Defendant/Respondent(s)<br>              (Abbreviated Title) | No. <u>AG10536357</u><br><br>Order<br><br>Motion for Summary Adjudication<br>Denied |

The Motion for Summary Adjudication filed for Federal Express Corporation was set for hearing on 06/07/2013 at 01:30 PM in Department 510 before the Honorable Delbert C. Gee.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

Defendant Federal Express's Motion for Summary Adjudication, as to Plaintiff Rohan Mahabali's First Supplemental Complaint filed October 10, 2012, is DENIED.

The undisputed facts establish that in 1999, Plaintiff signed an Employment Agreement providing that any legal action against Federal Express must be brought no more than six months from the date of the event forming the basis for the lawsuit. (See Defendant's Facts Nos. 2-3 and the evidence cited in support.) Plaintiff's employment with Federal Express was terminated on March 16, 2012, and he didn't file his First Supplemental Complaint until October 10, 2012.

The Court (again) rejects Plaintiff's argument that he "substantially complied" with the limitations period. To the contrary, the Register of Actions clearly reflects that Plaintiff's First Supplemental Complaint was not filed until October 10, 2012, which would be after the expiration of the contractual limitations period (absent the application of equitable tolling, as discussed below.) Although Plaintiff filed his motion to supplement the pleadings on August 27, 2012, that motion was not granted, and Plaintiff's First Supplemental Complaint was not filed, until October 10, 2012. It is irrelevant that a proposed (but not yet filed) First Supplemental Complaint was lodged with the moving papers for that motion.

The Court also (again) rejects Plaintiff's argument that the six month limitations period set forth in Plaintiff's Employment Agreement is unenforceable on the grounds of unconscionability. In order for the Court to determine that an agreement is unconscionable, the party opposing enforcement of the agreement must establish both procedural and substantive unconscionability. (See Soltani v. Western & Southern Life Insurance Company (9th Cir. 2001) 258 F.3d 1038, 1042.)

Assuming, arguendo, that Plaintiff has raised a triable issue of material fact suggesting that his Employment Agreement is procedurally unconscionable (see Plaintiff's Additional Facts A-F and the evidence cited in support), that would not establish that it was unenforceable absent evidence of substantive unconscionability. A six month limitation period in an employment agreement is not substantively unconscionable under California law. (See Soltani, supra, 258 F.3d at 1043-1044, and

the California Supreme Court and Court of Appeal decisions cited therein.) In Martinez v. Master Protection Corp. (2004) 118 Cal.App.4th 107, 117, the Court held that a six month statute of limitations provision in an arbitration agreement was substantively unconscionable and rendered the arbitration agreement unenforceable. However, this case does not involve any attempt to enforce an arbitration agreement, and neither the Martinez case nor Ingle v. City Stores Inc. (9th Cir. 2003) 328 F.3d 1165 (also cited by Plaintiff, and also denying a petition to compel arbitration on that ground) have any relevance to a contractual agreement to shorten the statute of limitations period for filing an action in court. Again, a six month contractual limitation period in which to file a court action is not substantively unconscionable under California law, even in an employment contract. (See Soltani, supra, and the cases cited therein.)

However, the Motion is DENIED because there is a triable issue of fact about whether the statute of limitations for Plaintiff's claims concerning his termination are equitably tolled by Plaintiff's attempt to pursue Defendant's internal remedy for employment claims (the Guaranteed Fair Treatment Procedure ("GFTP").) (See Plaintiff's Declaration at paragraphs 13-22.) The doctrine of equitable tolling applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one within the applicable limitations period. (See Collier v. City of Pasadena (1983) 142 Cal.App.3d 917, 923-924.) Pursuing an employer's internal grievance procedure can equitably toll the statute of limitations for an employment claim. (See McDonald v. Antelope Valley Community College Dist. (2008) 45 Cal.4th 88, 101-105.) Defendant cites no case law in support of its contention that equitable tolling is inapplicable because it is a private employer, or because its internal grievance procedure is not regulated the California Code of Regulations.

The evidence submitted by Plaintiff suggests that he intended to, and attempted to, pursue Defendant's internal grievance procedure, but Defendant prevented him from doing so by not providing him with the paperwork he needed to initiate that procedure. (See Plaintiff's Declaration at paragraphs 13-22.) Plaintiff claims he only abandoned his attempt to pursue Defendant's internal grievance procedure sometime after April 11, 2012 - the last time he was at Defendant's workplace - when it became clear he would not be provided with the paperwork to initiate the grievance procedure. (Id.) Voluntary abandonment of an internal grievance procedure does not prevent application of the equitable tolling doctrine. (See McDonald, supra, 45 Cal.4th at 111-114.) Although Plaintiff's termination memorandum, dated March 16, 2012, states that Plaintiff was required to submit "the attached bubble form" within five days of receipt of that letter, Plaintiff's evidence reflects that he never received "the attached bubble form", and there is a triable issue as to whether he reasonably expected he would receive the bubble form up until his last appearance at Defendant's workplace on April 11, 2012. Therefore, there is a triable issue of material fact as to whether the statute of limitations on Plaintiff's claims arising from his termination is tolled until at least April 11, 2012. Plaintiff filed his First Supplemental Complaint less than six months later, on October 10, 2012.

The Court rules as follow on Federal Express's Objections to Evidence:

Objections Nos. 1-5 and 9-17 are OVERRULED on the grounds asserted.

Objection No. 6 is SUSTAINED as inadmissible hearsay.

Objections Nos. 7-8 are SUSTAINED, as argumentative, speculative, and lacking foundation.

Dated: 07/18/2013

_____
Judge Delbert C. Gee

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mahabali VS Federal Express, a corporation | AG10536357 |

ADDITIONAL ADDRESSEES

Federal Express Corporation
Attn:  Matheis Jr, Charles W.
2601 Main Street
Suite 340
Irvine, CA   92614

# EXHIBIT B

LEXSEE



Warning
As of: Jun 03, 2014

**KARIM A. SHABAZZ, Plaintiff and Appellant, v. FEDERAL EXPRESS
CORPORATION, Defendant and Respondent.**

**B211986**

**COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT,
DIVISION SEVEN**

**2011 Cal. App. Unpub. LEXIS 9120**

**November 30, 2011, Filed**

**NOTICE:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(b). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

**PRIOR HISTORY: [*1]**
APPEAL from orders and judgment of the Superior Court of Los Angeles County. Los Angeles County Super. Ct. No. BC373824. Elizabeth A. Grimes, Judge.

**DISPOSITION:** Affirmed in part, reversed in part.

**CORE TERMS:** discovery, deposition, notice, subpoena, declaration, summary judgment, trial date, disability, reasonable accommodation, attorney's fees, financial condition, mediation, defense counsel, deposition transcript, reconsideration, prevailing, ex parte application, pro per, accommodation, termination, calendar, deponent's, confer, moot, hernia, public policy, timely response, statute of limitations, imposing sanctions, corrections

**COUNSEL:** Nina Ringgold for Plaintiff and Appellant.

Christopher J. Yost, Federal Express Corporation, for Defendant and Respondent.

**JUDGES:** WOODS, J.; PERLUSS, P. J., JACKSON, J. concurred.

**OPINION BY:** WOODS

**OPINION**

*INTRODUCTION*

Karim Shabazz appeals from the trial court's grant of summary judgment in favor of his employer Federal Express in addition to adverse rulings on various pre- and post-judgment motions. We affirm in part and reverse in part.

*FACTUAL AND PROCEDURAL SUMMARY*

On July 5, 2007, Karim Shabazz (in pro per) filed a complaint against Federal Express, asserting four causes of action: (1) disability discrimination, retaliation and wrongful termination in violation of Government Code section 12940 et seq. and public policy; (2) failure to engage in a timely good faith, interactive process and failure to provide a reasonable accommodation for disabilities in violation of Government Code section

2011 Cal. App. Unpub. LEXIS 9120, *1

12940 et seq. and public policy; (3) breach of contract; and (4) failure to provide and/or designate intermittent leave in violation of the California [*2] Family Rights Act (Gov. Code, § 12900 et seq.) and public policy.

Shabazz alleged as follows: He was hired by Federal Express in 1996 and was last assigned to the Marina del Rey station where he worked as a courier. He received good reviews and special commendations.

In January 1999, Shabazz alleged, he suffered a hernia, and Federal Express acknowledged the hernia as a work-related injury. Between 2000 and 2002, he suffered several illnesses requiring time off work. In late 2001, he was diagnosed with diabetes and placed on medical leave under the Family Medical Leave/California Family Rights Act.

From 2002 through his termination in 2005, Shabazz requested reasonable accommodations based on his disabilities. Other than one request granted by manager Karen Parker, Federal Express either ignored his requests or provided miscellaneous erroneous reasons why he could not be accommodated. Further, Federal Express failed to engage in any timely, good faith interactive process with Shabazz, choosing instead to counsel and reprimand him for minor performance deficiencies caused by his disabilities and/or perceived disabilities. Federal Express never requested that Shabazz produce medical documentation [*3] to substantiate his disabilities or requests for accommodation, and he was never asked to contact any person, division or department to request an accommodation or "Reasonable Accommodation Form."

After Shabazz complained to management about what he felt was harassment, after he reported safety concerns he had about broken and unsafe equipment, Federal Express began a campaign of threatening, harassing, intimidating, accusing, charging and erroneously disciplining him. When he tried to use his employer's Guaranteed Fair Treatment Process (GFTP) to protest discipline he erroneously received, he was threatened and informed he would probably not win and that moving forward would not look good on his record for going into the Federal Express management program.

After [*4] he attempted to use the Guaranteed Fair Treatment Process in March/April 2005, Federal Express continued to treat Shabazz unlawfully by refusing to allow him to consult with a surgeon for his work-related injury, refusing to reasonably accommodate his requests for accommodations, refusing to honor his medical restrictions and failing to conduct thorough and good faith investigations after alleging his violation of company policies.

Shabazz alleged he was pretextually terminated on July 8, 2005, and he filed timely complaints with the Department of Fair Employment and Housing and received right to sue letters thereafter.

Federal Express answered in October 2007.

On January 8, 2008, the trial court conducted a case management conference and made orders, including a reference to mediation to be completed by April 15, 2008, and a trial date set for July 7, 2008 (five months later). Shabazz (representing himself) had filed a statement indicating he would complete anticipated discovery (written discovery and depositions) by February/March 2008. Federal Express had represented it anticipated completing discovery (interrogatories, requests for production and Shabazz's deposition) by March/April [*5] 2008.

On January 23, Federal Express propounded discovery on Shabazz, comprised of 56 requests for production of documents, 33 employment form interrogatories, 43 general form interrogatories, 27 special interrogatories and 25 requests for admission.

On February 19, Federal Express filed an ex parte application to shorten time to consider its motion to continue trial and related dates. According to the declaration of defense counsel (Christopher Yost) with supporting exhibits, on January 24, Federal Express had noticed Shabazz's deposition for February 8, but Shabazz e-mailed the following day indicating his unavailability and requested alternate dates. Federal Express was unwilling to take the scheduled date off calendar without securing an alternate date and proposed February 15. Shabazz responded he did not "have anyone to appear with [him]" on the 15th but "believe[d] he ha[d] someone" who could appear with him on the 21st or 22nd. On February 6, defense counsel responded he would be out of town that week and wished to proceed on the 15th as it appeared Shabazz was available, but if Shabazz was retaining counsel, he (Yost) would try to rearrange his schedule so the deposition could [*6] proceed on the 22nd. Otherwise, if Shabazz was proceeding in pro per, Yost would notice the deposition

for the 15th. He said he could no longer communicate with Shabazz directly if he was now represented and requested new counsel contact Yost instead.

On February 7, Shabazz responded that he could not proceed on the 15th and was hiring an attorney to attend the deposition, but "due to scheduling concerns the attorney has let me know that they cannot attend a deposition until after February 21," and he did not want to proceed on February 22. On February 8, Yost reiterated that he had said Federal Express was unwilling to take the February 8 date off calendar without securing an alternate, and Shabazz was obligated to appear but had rejected proposed alternate dates so the deposition was not taken off calendar and Shabazz failed to appear. Yost said Shabazz's failure to agree to a date for his deposition and plans to retain counsel would prejudice Federal Express's ability to meet the deadlines imposed by the pending trial date so, rather than filing a motion to compel Shabazz's deposition, he proposed the parties seek to continue the trial date to permit Shabazz to engage counsel, to [*7] allow counsel to get up to speed on Shabazz's claims and select a date and proceed with his deposition.

On February 13, Shabazz agreed to Federal Express's proposal to continue the trial date, said he had retained counsel to defend his deposition and his new attorney would contact Yost to schedule an agreeable date. The following day, Nina Ringgold (Shabazz's appellate counsel) e-mailed Yost, indicating she would not be available for deposition until March 12 and 13 due to trial commitments. That day (February 14), Yost e-mailed Shabazz to give notice Federal Express would proceed with the ex parte on February 19, and on February 15, "via pdf e-mail," served Shabazz with the ex parte documents Federal Express filed in support of the request.

Federal Express's request was accompanied by a notice of non-opposition signed by Shabazz, stating he did not oppose Federal Express's ex parte application, "[r]ather, [he] support[ed] it."

On February 20, Federal Express served notice the court had ordered as follows: (1) the ex parte application was granted; (2) the new trial date was August 11, 2008; (3) Shabazz was to appear for deposition on February 28 and 29 under penalty of sanctions to and [*8] including dismissal; and (4) Shabazz "is NOT represented by counsel in this matter until such counsel files a

Substitution of Counsel for all purposes with the Court; until such time, [Shabazz] remains In Pro Per for all purposes, including at his deposition."

On February 27, Shabazz appeared for the first day of his videotaped three-day deposition.

That same day, Shabazz served responses to Federal Express's requests for production (two days late) but no responses to the requests for admissions.

On March 4, Federal Express filed a motion to deem admissions and request for sanctions. Shabazz then filed responses that evening, but the trial court ordered Shabazz to pay Federal Express sanctions in the amount of $3,200 for his delay in responding.

On April 22, Federal Express filed a motion for summary judgment or summary adjudication of Shabazz's claims on multiple grounds, including the time bar of the six-month statute of limitations set forth in his signed employment agreement and failure to exhaust administrative remedies where required. The hearing was set for July 7.

Three weeks later, on May 15, Federal Express filed an amended declaration (of Cynthia Gonzalez, Senior Litigation Paralegal [*9] for Federal Express), regarding exhibits relating to Shabazz's timecards and start times previously filed in support of its motion. In addition, there was a notice of errata indicating her original declaration incorrectly bore the caption for another case and corrected that error to identify Shabazz's case instead.

Another four days later, on May 19 (27 days after the original April 22 notice of motion), Federal Express filed an amended notice of motion for summary judgment or adjudication, indicating its original notice of motion contained the correct hearing date (July 7) in the caption, but incorrectly stated in the body of the notice that the hearing would take place on August 11 (the trial date). Federal Express asserted there could be no prejudice as the original caption and all other supporting pleadings identified the July 7 date.

On May 30, represented by counsel (Nina Ringgold), Shabazz filed a motion to quash deposition subpoenas for employment records and requested sanctions against Federal Express, on the grounds the subpoena to Shabazz's current employer was defective for failure to give Shabazz prior notice as required; the requested

Page 3

documents were irrelevant and protected [*10] by Shabazz's privacy rights; and sanctions against Federal Express were justified for Federal Express's bad faith or lack of substantial justification. (No amount of sanctions was identified in the notice of motion.) In her declaration, Ringgold said any experienced attorney would be aware of the proper manner in which to serve a subpoena for consumer and employment records. "It is clear the delayed service of the subpoena on the plaintiff (in pro per) was an abusive and unlawful use of the subpoena power. Unwarranted tactics of this sort have forced plaintiff to incur the expense of retaining an attorney. Such misuse of the discovery process is also reportable to the California State Bar."

She requested orders striking the subpoena in its entirety, requiring defense counsel to relinquish the original and all copies, prohibiting Federal Express and its counsel from using the documents and an award of attorney's fees and costs. Given the prior award to Federal Express of $3,200 in sanctions in connection with the motion to deem admissions, Ringgold urged, it would be grossly unfair not to award Shabazz his fees and costs for the blatant violation of subpoena and discovery procedures [*11] in this instance. At a rate of $350 per hour, the cost of preparing and appearing for the motion to quash as well as the ex parte application for order shortening time required plus costs amounted to $4,287.50. In his own declaration, Shabazz said he had spent $750 for legal consultation fees and $475 on courier and typist fees.

On June 4, Shabazz filed a form entitled "Notice of Limited Scope Representation," indicating Nina Ringgold would provide limited scope representation in the case at hearings set for June 6, June 24 and July 7, e-mailing a copy to defense counsel with another copy placed in the U.S. mail that day.

That same day (June 4), Shabazz filed a motion "regarding plaintiff's deposition transcript," seeking relief pursuant to Code of Civil Procedure section 473 due to lack of proper or timely notice regarding time for corrections and for protective order prohibiting use of transcript and exhibits in pending motion for summary judgment or adjudication and request for sanctions under Code of Civil Procedure section 2025.420. (The notice of motion did not include any specification of the party or attorney or the amount of sanctions sought.)

In his declaration, Shabazz said [*12] his deposition

was taken February 27 through February 29, but he was not notified a transcript was available and only had some idea when he was served with Federal Express's motion for summary judgment or adjudication. He made repeated attempts to contact the court reporter and when he reached her after much time had expired, she informed him it would cost more than $1700 for him to obtain a copy of the transcript, but he was unable to pay this amount due to his limited financial means. After that (in a letter dated May 7), the court reporter sent him notice he could make corrections. He needed the assistance of an attorney to review the transcript and make necessary corrections and he had made reasonable and good faith efforts to meet and confer to resolve the matter without success.

According to this motion, notwithstanding Code of Civil Procedure section 2025.510 and the "normal stipulation" recognized in standard practice guides relieving the reporter of her duties under the Code, which recites that the original transcript shall be delivered directly to the *deponent's* counsel (and not examining counsel); that deponent's counsel assumes responsibility for notifying other counsel [*13] of any changes made by the deponent during the 30-day period provided; that unless such notice is given, the deposition shall have the same force and effect as though signed by the deponent without corrections; and deponent's counsel shall retain custody of the original until after final judgment in the action or as otherwise ordered, defense counsel recited a stipulation on the record providing the transcript would be forwarded to him.

In Ringgold's declaration, she said she had been practicing civil litigation for more than 15 years with substantial experience in employment discrimination, she had never seen a plaintiff in an employment case incur a $1700 cost for the original transcript of his own deposition, and it was "clear" defense counsel had advance access to plaintiff's transcript and was aware no notice was provided to Shabazz and Shabazz did not have the transcript; under the circumstances, defense counsel was proceeding with a dispositive motion in bad faith, was taking unfair advantage of Shabazz because he was in pro per and sanctions in the amount of $2,712.50 should be imposed.

Also on June 4, Federal Express filed a motion to bifurcate punitive damages claim and preclude [*14] Shabazz from introducing evidence of Federal Express's

financial condition.

On June 5, Federal Express filed "notice that plaintiff's motion to quash deposition subpoena for production of business records and for sanction is moot" and "request to dismiss said motion and take it off calendar." According to Federal Express, it had served a notice of withdrawal of the original subpoena on May 6 followed by a new subpoena.[1] According to Federal Express, with the filing of the notice of limited scope representation, Shabazz was "in contempt of this court's February 19, 2008, order," stubbornly refused to meet and confer and was knowingly pursuing a moot motion. In addition, Federal Express filed oppositions to Shabazz's motions and ex parte applications for orders shortening time relating to the motion to quash, the motion regarding his deposition transcript and to advance the briefing and hearing dates on Federal Express's summary judgment or adjudication motion.

    1    On June 23, 2008, Federal Express filed a corrected notice of withdrawal.

On June 12, Shabazz filed a motion to continue trial, to set date for mediation and for financial condition discovery pursuant to Civil Code section 3295, subdivision (c), [*15] Code of Civil Procedure section 128 and California Rules of Court Rule 3.1332. According to her supporting declaration, as Ringgold was the former director of the Disability Mediation Center at Loyola Law School, she checked the status of dispute resolution efforts upon her retention and was surprised to find that when Federal Express sought a continuance of the trial date, it failed to address the mandatory mediation completion date. She said she had been recently retained and would represent Shabazz through trial (set for August 11) but had substantial conflicts with this date because of expedited briefing in the Court of Appeal in matters with calendar preference by court order. For this reason and in order to pursue mediation and because Shabazz needed to complete necessary discovery including the financial condition discovery requested in this motion, trial should be continued. Based on her review, she said, there was a substantial probability Shabazz would prevail on his punitive damage claims as Shabazz was a long term employee, Federal Express failed to engage in a reasonable dialog about the need and manner in which to accommodate Shabazz's disability and instead made pretextual [*16] assertions about his performance to avoid complying with the law. Shabazz requested a trial

date of November 18, mandatory mediation completion date of August 4 and an order allowing financial condition discovery.

Federal Express opposed this motion as well.

On June 23, Shabazz filed his opposition to Federal Express's motion for summary judgment or adjudication along with supporting documents (including his own declaration) as well as objections to Federal Express's evidence.

Federal Express filed its reply along with further objections to Shabazz's opposition papers and additional documents set forth in his other pending motions.

On July 3, the trial court denied Shabazz's motion to continue trial, set mediation date and for financial condition discovery and sanctioned Shabazz and his counsel in the amount of $3,800 pursuant to Code of Civil Procedure section 2024.050, subdivision (c).

On that same date (July 3), Shabazz filed a motion for sanctions under Code of Civil Procedure section 128.7 relating to three documents filed by Federal Express in connection with his motion to quash deposition subpoena.

On July 7, after taking the matter under submission following argument, the trial court [*17] denied Shabazz's motion regarding his deposition transcript, granted Federal Express's summary judgment motion and deemed the remaining motions (regarding the subpoena for employment records and Federal Express's motion to bifurcate) moot, and entered judgment in Federal Express's favor.

On July 14, Shabazz filed a motion for reconsideration of the July 3 denial of its motion to continue trial, set mediation and complete financial condition discovery and imposition of sanctions.

Federal Express filed its own motion for sanctions under Code of Civil Procedure section 128.7, arguing Shabazz's motion for reconsideration did not comply with Code of Civil Procedure section 1008.

Federal Express filed a memorandum of costs and Shabazz filed a motion to tax in response.

The trial court granted Shabazz's motion to tax to the extent he had voluntarily drawn the amount of $552.23,

and granted Federal Express's motion for sanctions under Code of Civil Procedure section128.7, ordering Shabazz's counsel to pay $5,800 to Federal Express.

Shabazz appeals.

### DISCUSSION

**The Trial Court Did Not Err in Imposing Sanctions for Shabazz's Failure to File Timely Responses to Federal Express's Requests for Admissions.**

According [*18] to Shabazz, the trial court abused its discretion in granting Federal Express's request for sanctions in the amount of $3,200 for his failure to file a timely response to requests for admission because he did not engage in "any willful discovery violation."[2] We disagree.

> 2  We reject Shabazz's assertion that Federal Express is not entitled to sanctions as a "pro per corporate entit[y]" represented by in-house counsel. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1093-1094.)

"If a party to whom requests for admission are directed fails to serve a timely response, the following rules apply: . . . It is mandatory that the court impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) on the party or attorney, or both, whose failure to serve a timely response to requests for admission necessitated this motion." (Code Civ. Proc., § 2033.280, subd. (c).) Shabazz concedes he did not serve responses when they were due (on or about February 25, 2008), and Federal Express filed its motion to deem admissions on March 4. Shabazz then e-mailed responses after close of business that night (at 6:15 p.m.).[3] Consequently, although he served his responses one week after [*19] they were due, sanctions were properly imposed under Code of Civil Procedure section 2033.280, subdivision (c).

> 3  In his opposition, Shabazz said he had notified counsel for Federal Express at 8:31 a.m. on March 4 (the date the motion was filed) that his responses would be served later that same day and counsel did not object, but Shabazz said nothing about such a communication with defense counsel in his supporting declaration; in his declaration, he said defense counsel knew he was ill, and he (Shabazz) would have requested an extension if

he had realized he could do so.

**The Trial Court Erred in Imposing Sanctions Pursuant to Code of Civil Procedure Section 2024.050.**

Shabazz says the trial court erred (1) in imposing sanctions in the amount of $3,800 against him and his attorney pursuant to Code of Civil Procedure section 2024.050 in connection with the denial of his request to conduct financial condition discovery under Civil Code section 3295 and (2) in later denying his subsequent motion for reconsideration of this order. We agree that sanctions were improperly imposed pursuant to Code of Civil Procedure section 2024.050.

Shabazz filed a motion to continue trial, to set a date for [*20] mediation and for financial condition discovery pursuant to Civil Code section 3295, subdivision (c). Federal Express opposed the motion and argued it was entitled to sanctions pursuant to Code of Civil Procedure section 2024.050 for Shabazz's failure to meet and confer before seeking to reopen discovery. Agreeing with Federal Express, the trial court imposed sanctions in the amount of $3800 against Shabazz and his counsel.

As relevant, subdivision (c) of Civil Code section 3295 provides as follows: "No pretrial discovery by the plaintiff shall be permitted with respect to [the financial condition of the defendant or profits gained by virtue of the defendant's wrongful course of conduct] unless the court enters an order permitting such discovery pursuant to this subdivision. . . . Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may *at any time* enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the [*21] plaintiff will prevail on the claim pursuant to Section 3294. . . ." (Italics added.)

Code of Civil Procedure section 2024.050, subdivision (a), provides: "On motion of any party, the court may grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set. This motion shall be accompanied by a meet and confer declaration under Section 2016.040."

Pursuant to subdivision (c) of this statute, "The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to extend or to reopen discovery, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." Code of Civil Procedure section 2023.010 states: "Misuses of the discovery process include, but are not limited to, the following: . . . (i) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning [*22] discovery, *if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that an attempt at informal resolution has been made.*" (Italics added.)

While a motion to reopen discovery pursuant to section 2024.050 would have required the filing of a declaration demonstrating the effort to resolve the matter informally, Civil Code section 3295 specified no such requirement for purposes of conducting discovery limited to the defendants' financial condition. As a result, the trial court erred in imposing sanctions against Shabazz and his counsel pursuant to Code of Civil Procedure section 2024.050. Because we agree that sanctions were improperly imposed in the first instance, we need not address his further argument regarding his subsequent motion for reconsideration of the trial court's order.

**Shabazz Has Failed to Demonstrate Prejudicial Error in the Trial Court's Rulings on his (1) Motions to Quash, Modify or Limit and for Protective Order Concerning a Subpoena to His Current Employer and Request for Sanctions, (2) Motion Concerning Deposition Transcript and Request for Sanctions, and (3) Motion for Sanctions Pursuant to Code of Civil Procedure Section 128.7 [*23] and Request for Sanctions.**

Shabazz says he had four motions pending at the time of the hearing on Federal Express's summary judgment motion. Without hearing, he says, the trial court advanced and vacated his motions to quash and motion for sanctions under Code of Civil Procedure section 128.7 and denied his motion concerning his deposition transcript so he could not recover the unwarranted expenses he incurred. Citing *Kahn v. Lasorda's Dugout,*

*Inc.* (2003) 109 Cal.App.4th 1118, 1124, Shabazz says, "The failure to exercise discretion is an abuse of discretion." Otherwise, he provides no legal discussion or argument. As he acknowledges, however, the trial court did rule on his motion seeking to bar the use of his deposition transcript; that motion was denied as the trial court determined it was "without merit." Then, after hearing argument on Federal Express's motion for summary judgment and taking the matter under submission, the trial court granted Federal Express's motion and advanced and vacated the future hearing dates on Shabazz's remaining motions, deeming those motions to be moot.

With citations to the record, Federal Express says it immediately withdrew the defective subpoena at [*24] issue on the first motion, it filed no opposition to the subsequent motion and no records were produced to Federal Express by Shabazz's employer in any event. Further, Federal Express responded, Shabazz sought sanctions under Code of Civil Procedure section 128.7 for Federal Express's improper filing of "ex parte" communications (Federal Express's notices to the court it had withdrawn the subpoena, rendering Shabazz's motions moot), but noted its proofs of service of such documents in the record. Leaving to one side Shabazz's failures to properly notice his sanctions requests, as Shabazz failed to provide relevant discussion of the record or legal authority supporting his arguments in this regard, we find them to be waived.

**Summary Judgment Was Properly Granted.**

Shabazz says reversal is required due to prejudicial fundamental procedural errors: (1) lack of access to his deposition transcript; (2) lack of the mandatory 75-day notice; (3) inadequacy of the separate statement; and (4) denial of his request for a continuance as well as on the merits.

Leaving to one side the deficiencies Shabazz notes (as well as the validity of some of his arguments on the merits), the problem for Shabazz [*25] is that, in the end, summary judgment was properly granted to the extent his claims are barred by the six-month statute of limitations to which he agreed in signing his employment agreement, signed after acknowledging he had read and understood it as he acknowledged at his deposition.

"It is true California courts have afforded contracting parties considerable freedom to modify the length of a

Page 7

statute of limitations.[] (See, e.g., *Hambrecht v. Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1548.) Courts generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable. 'Reasonable' in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy. 'It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way. [Citations.]'[]" (*Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430 [*26] [deprivation of discovery rule impermissible].)

Citing *Pellegrino v. Robert Half Internat., Inc.* (2010) 181 Cal.App.4th 713, but without further discussion of its application to the facts of this case, Shabazz says the employment agreement he executed is unconscionable and unenforceable. However, review was granted in the *Pellegrino* case (which involved allegations of violations of wage and hour statutes in violation of public policy) on April 28, 2010 (the month before Shabazz filed his opening brief) and it is not citable.

Moreover, to the extent Shabazz did file one administrative complaint on December 13, 2005, within six months of his termination on July 8, 2005, he failed to mention the termination. He said the "[d]ate of most recent or continuing discrimination" was December 14, 2004, when he was denied reasonable accommodation (scheduling) due to his disability. He said he requested accommodation on November 9, 2004; he was given performance counseling for punctuality on December 14, 2004; he reminded his supervisor (Castillo) of his request, but Castillo said he could not change the schedule because he had not taken a scheduling class; when he (Shabazz) asked Ms. Williams about [*27] reasonable accommodation, she said to wait until Castillo had taken the scheduling class and there was a shortage of couriers; he asked Castillo again in February 2005, and Castillo said he would look into it, but Shabazz was never given reasonable accommodation he said.

On June 28, 2006, Shabazz filed another DFEH complaint, indicating the "[d]ate of most recent or continuing discrimination" was June 28, 2005, when he was denied reasonable accommodation, interactive process and California Family Rights Act leave because of his *hernia*--still without mention of his termination.

Then on July 7, 2006, he filed another DFEH complaint for disability (diabetes and hernia), indicating the date of most recent or continuing discrimination was July 5, 2005, when he was terminated for improperly refueling his truck because it was his third warning/performance reminder within a 12-month period. From March 31, 2005, through July 8, 2005, he said, he was subjected to differential treatment. On or about June 1, 2005, he was denied reasonable accommodation. On June 28, 2005, he said, he was denied reasonable accommodation. He was required to work although he had previously told Castillo he had a hernia [*28] surgery appointment that day. On July 8, 2005, he was terminated but said the reason given was a pretext because he previously requested reasonable accommodation, never falsified his timecard and other couriers had put the incorrect fuel in a truck without being terminated.

On July 7, 2006, he filed another DFEH complaint stating he was subjected to differential treatment on July 8, 2005, on the basis of his race (African-American) and sex (male) without further explanation.

Given the deficiencies in his claims, summary judgment was properly granted.

## Shabazz Has Failed to Establish Error in the Trial Court's Award of Costs to Federal Express.

Federal Express filed a memorandum of costs totaling $10,783.64. Shabazz filed a motion to strike and/or tax costs, and Federal Express filed opposition. After hearing argument and taking the matter under submission, the trial court granted Shabazz's motion only to the extent it struck costs totaling $552.23 Federal Express had voluntarily withdrawn.

Citing *Christiansburg Garment Company v. EEOC* (1978) 434 U.S. 412, 421, and this court's decision in *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387, Shabazz says the trial court erred [*29] in denying his motion to strike and/or tax costs "in the absence of an express finding of lack of merit and the plaintiff's ability to pay." We disagree.

In *Cummings, supra,* 11 Cal.App.4th 1383, the FEHA plaintiff challenged an award to the prevailing defendant of $60,318.50 in attorney's fees and $3,049.95 in costs, and we said, "The standard a trial court must use in exercising its discretion in awarding fees *and costs* to a prevailing defendant was set forth in the Supreme Court's decision in *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412." (*Cummings, supra,* 11 Cal.App.4th at p. 1387, italics added.) Because the plaintiff's age discrimination claim could not be deemed frivolous, unreasonable or groundless, we concluded the "award of fees and costs" to the prevailing defendant was an abuse of discretion. (*Cummings, supra,* 11 Cal.App.4th at p. 1390.)

However, as the courts in *Perez v. County of Santa Clara* (2003) 111 Cal.App.4th 671, 681, and *Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 135-136, subsequently noted, the *Christiansburg* case addressed the recovery of attorney fees only, and not an award of costs: "In sum, a district court may in its discretion [*30] award *attorney's fees* to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." (*Christiansburg Garment Co. v. EEOC, supra,* 434 U.S. at p. 421, italics added.) As recognized in *Perez, supra,* 111 Cal.App.4th 671, 680-681, citations omitted, several federal courts thereafter had expressly distinguished the *Christiansburg* test for the recovery of defense attorney fees from the analysis applicable to the recovery of ordinary litigation expenses: "The rationale for this distinction is clear. Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable, and, compared to the costs of attorneys' fees, small.'"

This appeal involves an award of costs only; we are not addressing an attorney fee award. Code of Civil Procedure section 1032, subdivision (b), states: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Pursuant to Government Code section 12965, subdivision (b), [*31] "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs [except where the action is filed by a public agency or public official acting in an official capacity]." Accordingly, as articulated in *Perez* and *Knight,* contrary to *Cummings,* we agree that the

*Christiansburg* standard applicable to the recovery of attorney fees does not extend to the recovery of ordinary litigation expenses; rather, we agree that "ordinary litigation expenses are recoverable by a prevailing FEHA defendant even if the lawsuit was not frivolous, groundless, or unreasonable." (*Perez, supra,* 111 Cal.App.4th at p. 681; *Knight, supra,* 132 Cal.App.4th at p. 135.) Consequently, Shabazz's reliance on this ground is misplaced.

Further, as we observed in *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 129, nothing in Code of Civil Procedure section 1032 grants the trial court discretion to reduce the amount of reasonable costs recoverable as a matter of right based on a claim of inability to pay, and the trial court rejected Shabazz's "bare assertions" that he was unable to pay in any event. Shabazz has failed to identify any basis on which to find the cost award to constitute [*32] prejudicial error.[4]

> 4 Without citation to any legal authority or further discussion, Shabazz says recovery in the amount of $6,745.50 for his three-day videotaped deposition was "outrageous" and that Federal Express sought other expenses "which were not allowed by law such as messenger expenses, photocopying, court call, travel expense, parking, fax filing." The taking, videotaping and transcribing of necessary depositions is expressly allowed by statute (Code Civ. Proc., § 1033.5, subd. (a)(3)), and items not expressly mentioned may be allowed in the discretion of the court (Code Civ. Proc., § 1033.5, subd. (c)(4)), but Shabazz has simply failed to demonstrate how the trial court abused its discretion in any respect.

**The Order Granting Federal Express's Motion for Sanctions under Code of Civil Procedure Section 128.7 for Shabazz's Failure to Withdraw His Motion for Reconsideration of the Court's Prior Award of Sanctions Under Code of Civil Procedure Section 2024.050 Should Be Reversed.**

As already discussed, the order imposing sanctions pursuant to Code of Civil Procedure section 2024.050 was improper. Accordingly, we reverse the trial court's order awarding sanctions to Federal Express [*33] for Shabazz's motion for reconsideration of this ruling.

***DISPOSITION***

2011 Cal. App. Unpub. LEXIS 9120, *33

The orders imposing sanctions pursuant to Code of Civil Procedure section 2024.050 and granting Federal Express's motion for sanctions under Code of Civil Procedure section 128.7 on the basis of Shabazz's motion for reconsideration of the sanctions imposed under Code of Civil Procedure section 2024.050 are reversed. In all other respects, the judgment and orders are affirmed.

Each side is to bear its own costs of appeal.

WOODS, J.

We concur:

PERLUSS, P. J.

JACKSON, J.

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ROGER WALTON,

                Plaintiff,

     v.

FEDERAL EXPRESS, a Tennessee
Corporation,

              Defendant.

Case No. CV 08-840-GAF

**ORDER ON COURT'S RULING
UNDER F.R.C.P. 52(C);
FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

      The following sets forth the Court's ruling on Defendant's Motion under
Rule 52(c) and its findings of fact and conclusions of law.  The Court notes that
its Rule 52(c) ruling disposes of the entire case in favor of defendants.  The
Court concluded, based on the evidence presented at the close of Plaintiff's case,
that Plaintiff had failed to present sufficient evidence to establish damages in
this case.  Moreover, the Court concluded that the statute of limitations had run
on the sole remaining claim – breach of contract – that was tried to the Court.
However, as set forth below, the Court has made findings of fact and
conclusions of law indicating that, even if the Court had denied the Rule 52(c)
motion, Plaintiff failed to prove his breach of contract claim.  The Court further
notes that this written order and findings should be read together with oral

findings made by the Court at the close of the parties' closing arguments on January 20, 2010.

I.     Proposed Order on Court Rulings under F.R.C.P. 52(C)

The Court held trial in this matter on January 19-20, 2010.  On January 19, 2010, at the close of the plaintiff's case, Defendant Federal Express Corporation moved this Court under Rule 52(c) of the *Federal Rules of Civil Procedure* for Judgment on Partial Findings as to the First Amended Complaint filed by Roger Chris Walton ("Plaintiff").  The Court deferred ruling on the motion until close of the evidence.  On January 20, 2010, after the close of evidence, FedEx renewed its motion under Rule 52(c).

The Court, having heard the trial testimony in this case, and the Motion of Defendant Federal Express Corporation under Rule 52(c) of the *Federal Rules of Civil Procedure*, hereby orders that FedEx is entitled to judgment on the First Amended Complaint filed by Plaintiff Roger Chris Walton on the following grounds:

(1)     Plaintiff has failed to demonstrate any breach of oral contract, as alleged in the First Claim of the First Amended Complaint, in that Plaintiff has failed to demonstrate the existence of a promise, any breach by FedEx and any evidence of damages.  With respect to the issue of damages the record was almost entirely barren of any evidence on the subject.  Though Plaintiff presented some evidence regarding various salary ranges that were in effect for certain positions at different times over a ten year period, he failed entirely to:

– identify the rate of pay to which he claimed to be entitled over any of the relevant time periods;

– provide any computation of the differential or to provide data from which a computation of his alleged back pay claim could be determined.

2

The Court would have no way of determining even the order of magnitude of Plaintiff's claim.

(2)     Plaintiff's claim is untimely and thus barred by the applicable two year statute of limitations on oral contracts. CAL. CODE CIV. PROC. § 339. Even assuming that FedEx made an oral promise to Plaintiff to give Plaintiff back pay and to promote him to the top of the salary range, such promise was made no later than August 2005 and the present lawsuit was not filed until December 2007; and

(3)     Plaintiff's claim is untimely and thus barred by the applicable six month contractual limitation contained in the *Employment Agreement* entered into between the parties.  Plaintiff knew FedEx's position regarding his back pay and under pay claims for years prior to his filing of the present lawsuit.

Accordingly, for all these reasons, the Court ORDERS that FedEx is entitled to judgment.

## II. <u>FINDINGS OF FACT</u>

### A. WALTON'S *EMPLOYMENT AGREEMENT*

FedEx first hired plaintiff Roger Chris Walton in 1987 to work as a cargo handler at its facility in downtown Los Angeles.  (Exh. 6.)  Throughout his employment at FedEx, Mr. Walton worked at different FedEx locations and in various positions, receiving multiple pay raises and promotions.  (Exhs. 1, 9, 25.)  On February 25, 1999,  Mr. Walton signed a written *Employment Agreement* that states at Paragraph 11:

(11) That during the term of my employment, which I understand is INDEFINITE IN DURATION, I will comply with the guidelines established in the Company's policies, rules, regulations and procedures. I acknowledge and agree that Federal Express has the absolute, unfettered right to change its policies, rules, regulations, and procedures unilaterally,

3

1  at any time, without prior notice.  I ALSO AGREE THAT MY
2  EMPLOYMENT AND COMPENSATION CAN BE TERMINATED
3  WITH OR WITHOUT CAUSE AND WITHOUT NOTICE OR
4  LIABILITY WHATSOEVER, AT ANY TIME, AT EITHER MY OR
5  THE COMPANY'S OPTION.  I FURTHER UNDERSTAND THAT NO
6  MANAGER OR REPRESENTATIVE OF THE COMPANY, OTHER
7  THAN THE CEO, OR ANY SENIOR VICE PRESIDENT
8  DESIGNATED BY THE CEO HAS ANY AUTHORITY TO ENTER
9  INTO ANY AGREEMENT FOR EMPLOYMENT WITH ME FOR ANY
10  SPECIFIED PERIOD OF TIME OR TO AMEND THIS AGREEMENT
11  IN ANY MANNER.  MOREOVER, ANY SUCH AMENDMENTS
12  SHALL BE IN WRITING.  NOTHING IN THIS AGREEMENT, NOR
13  ANY DOCUMENTATION OR OTHER COMMUNCIATION FROM
14  THE COMPANY, SHALL AFFECT MY EMPLOYMENT AT WILL
15  STATUS.
16  The *Employment Agreement* (at Paragraph 15) also establishes a six-month
17  contractual obligation for an employee to sue FedEx:
18  I hereby agree … (15) This agreement constitutes the entire and final
19  agreement between the parties and all other prior agreements,
20  arrangements, or understandings, oral or written, are merged into and
21  superseded by the terms of this agreement. . . .  To the extent the law
22  allows an employee to bring legal action against Federal Express
23  Corporation, I agree to bring that complaint within the time prescribed by
24  law or 6 months from the date of the event forming the basis of my
25  lawsuit, whichever expires first.
26  (Id.)
27
28

4

**B. THE 1998 COMPLAINT**

This case finds its genesis in 1998, when Mr. Walton worked as a Mail Operations Agent at FedEx's facility at LAX Airport, within FedEx's Airline Operations (AOD or Airline Maintenance) Division, under Mr. Dennis Wiggs. (See, e.g., Exh. 12 [January 9, 2001 Memorandum from Wiggs to Coop].) During the several years that he worked at AOD, Mr. Walton pressed Mr. Wiggs to revise his job classification because Mr. Walton believed that his job description/classification did not describe his actual duties and precluded him from receiving a higher rate of pay. (Id.)

After attempting for several years to deal with Mr. Walton's complaints, Mr. Wiggs in January 2001 wrote to the FedEx Compensation Department on behalf of Mr. Walton, asking whether it was possible for Mr. Walton's position to be re-classified as a Senior Handler position within AOD. (Id.) He advised that Mr. Walton "believes that his duties are out of the scope of a Mail Ops Agent and more in line with a senior handler." (Id.) Mr. Wiggs further wrote:

> He has used the Open Door Policy, his managing director and vice president to state his case, all to no avail. I have spoken to him several times, as recent as yesterday. He informed me that he has spoken to you also and believes that perhaps he did not explain his situation clearly to you. I must inform you that Roger does not understand what "NO" means and I would like to use this opportunity to finalize his persistent quest to have his position upgraded to a senior handler.

(Id.) Mr. Wiggs went on to explain the situation and to ask Kay Coop, to whom the memorandum was addressed, to make a final determination as to whether Mr. Walton's position should be reclassified. (Id.)

1    Ms. Coop responded a few days later. (Id., [January 22, 2001

2    Memorandum from Coop to Wiggs].)  In a memorandum informing Mr. Wiggs

3    that the request could not be honored, she advised:

4              We have previously provided Mr. Walton with a logical response

5              which tells him there is no current or planned progression for a

6              Mail Operations Agent in the maintenance hanger or elsewhere in

7              AOD.  I have attached a copy of the e-mail I sent to Mr. Walton on

8              January 4, 2001.  It contains all the guidance we have for him. . . .

9              We do not question that he is a good employee, but we have

10             expended a considerable amount of time and attention responding

11             to his inquiries.

12   (Id.)   The attached email, which was sent directly to Mr. Walton, informed him

13   that the Mail Operations Agent position would not be reclassified and that, if he

14   sought advancement, he should transfer out of the AOD Division and into

15   another division of the company in order to progress within the company.  (Id.)[1]

16   **C. THE TRANSFER TO TORRANCE**

17   In April 2005, Mr. Walton transferred out of the AOD Division to a

18   FedEx facility in Torrance ("TOA"), where he obtained a position as a Handler.

19   In early August 2005, Mr. Walton went on a leave of absence due to health

20   issues.  (See Exh. 10.)  At the time of his leave, Mr. Walton was living in San

21   Bernardino and commuting to TOA.  (See Exh. 19.)  Mr. Walton had been

22   driving 1.5 hours to get to work in TOA and 2.5 hours to return home.

23

24   _____

25   [1]Walton continued to complain about his AOD compensation over the next seven years. Among others,
     Mr. Walton contacted multiple FedEx managers and executives, including Chief Executive Officer Mr.

26   David Bronzcek, to complain about his pay because of the supposed job mis-classification. (See, e.g.,
     Exh. 13, Memorandum from Walton to Wiggs.) As if to confirm Wiggs's observation that Mr. Walton

27   did not understand the word "NO," Walton, in this May 2004 memorandum, advised Wiggs that he had
     spoken to Bornzcek about his compensation issue and wrote, "I have now made two attempts to bring my

28   job description into allignment [sic] with what I actually do.  I have been unable to accomplish this, even
     with the support and encouragement from you, Dennis, Mike and Leverne."

In early August 2005, at the start of Mr. Walton's leave, Nancy Hanlon, who is a disability manager in FedEx's Human Capital Management Program, contacted FedEx Managing Director for the LA Empire District, Timothy Wertner, and asked him to reach-out to Mr. Walton, a long term employee facing health issues, and offer him some words of encouragement. In early August 2005, Mr. Wertner made a "cheer up" call to Mr. Walton while he was out on medical leave. The call was consistent with his practice of making up to eight such cheer-up calls each month to FedEx employees in his district who needed some encouragement because they were facing health issues or other adversity.

During that phone conversation in August 2005, Mr. Walton complained to Mr. Wertner about the stress created by his long commute to TOA and sizeable gasoline costs, and Mr. Walton also raised the topic of his prior dispute concerning his pay while he worked at FedEx's facility at LAX Airport. During that conversation, Mr. Wertner suggested that Mr. Walton transfer to the FedEx facility in Ontario ("ONT"), which was much closer than Torrance to his home. During that conversation, Mr. Wertner did not offer what Mr. Walton calls a "pay exception," which Mr. Walton describes as an increase in pay to the highest pay grade possible for Mr. Walton's position, back-pay based on that higher grade dating back to 1998, and reimbursement for mileage and car repairs. Indeed, Mr. Wertner did not have the authority to make such a promise. During that conversation, Mr. Wertner did not promise to promote Mr. Walton to a Shuttle Driver position in ONT.[2]

---

[2] Mr. Walton objects to the proposed findings on this issue because he claims that this issue, and several others, were discussed with Mr. Wertner in the intial telephone conversation and that a number of promises were made by Mr. Wertner to Mr. Walton. As stated on the record in post-trial proceedings, the Court was required to determine credibility regarding this conversation and concluded that Mr. Wertner was the more credible witness. The Court assessed the two witnesses' demeanor and manner on the witness stand, their respective interest in the outcome of the case, and the plausibility of their testimony in view of all of the evidence in the record and found Mr. Wertner more credible. See note 3 below.

7

Mr. Walton concedes that he received nothing in writing from Mr. Wertner concerning his pay. Nevertheless, Mr. Walton claims that, based on promises made, he decided to transfer to ONT. He acknowledges that Mr. Wertner directed Mr. Manuel Vivanco, the Senior Manager at the ONT facility, to complete the transfer with Ms. Hanlon. Mr. Vivanco and Ms. Hanlon communicated over the next few weeks to complete the transfer of Mr. Walton to ONT as a Handler. Mr. Vivanco and Ms. Hanlon also discussed the possibility of a subsequent promotion for Mr. Walton to a Shuttle Driver position.[3] Under FedEx policy, Ms. Hanlon could not promote Mr. Walton when placing him upon his return from leave; she could only provide him with the same, similar or less senior position than the Handler position he held at TOA.

**D. THE TRANSFER TO ONTARIO**

On August 30, 2005, Mr. Walton returned from his leave and started working as a Handler in ONT, where his new supervisor was Jeff Carden, the Senior Manager was Mr. Vivanco, and the Senior Human Resources Representative was Elizabeth Steffey. At the time of his transfer, per corporate policy, he was employed at ONT as a handler, the same position he held at TOA. On September 30, 2005, Mr. Vivanco, Ms. Steffey and Mr. Carden finalized paperwork to promote Mr. Walton to a position of Shuttle Driver at ONT, which resulted in a six percent increase in pay. (Exh. 11.) After Mr. Walton's

---

[3] According to Mr. Walton, Mr. Wertner, who had never before met Mr. Walton, made a number of specific promises to Mr. Walton in their first telephone conversation regarding, among other things, back pay for Walton's alleged under compensation from 1998 to 2005, and an increase in Walton's salary to the top of the pay range. The Court concluded (and here concludes) that Mr. Walton's version of the events was not credible. Mr. Wertner had no authority in the first instance to make such promises, and he so testified. The written record and the testimony of other witnesses is consistent with Mr. Wertner's testimony that he did nothing more than suggest that Walton relocate to Ontario, which would dramatically reduce Mr. Walton's commute and would in turn help to mitigate the stress of commuting and put more money in his pocket by saving fuel costs. Mr. Wertner later assisted Mr. Walton in obtaining a promotion to shuttle driver which resulted in a 6% raise in his pay. Mr. Wertner credibly testified that he made no promises regarding back pay and never assured Mr. Walton that he (Wertner) would put in for a pay exception for Walton.

8

1   promotion to Shuttle Driver on September 30, 2005, he continued to complain

2   about his pay to Mr. Wertner and to Mr. Vivanco, and he also began

3   complaining to Ms. Steffey.  (See, e.g., Exh. 20.)  Ms. Steffey conducted an

4   investigation into Mr. Walton's pay in the Fall of 2005, by speaking with Mr.

5   Walton, confirming his pay on the FedEx on-line pay calculator, speaking with

6   Mr. Dennis Wiggs (Mr. Walton's former manager at the LAX Airport) and

7   speaking with Leverne Rogers (Mr. Walton's former Human Resources

8   Representative).  Ms. Steffey confirmed that Mr. Walton's pay was correct, and

9   she advised him of this verbally.

10      Nevertheless, Mr. Walton continued to complain about his pay in 2006,

11  and raised the issue in a conversation with a FedEx Vice President, Glen Corbin,

12  concerning his pay after his promotion to Shuttle Driver.  (Exh. 19.)  Mr. Corbin

13  did not offer to assist Mr. Walton with his supposed pay exception but instead

14  referred Mr. Walton to Mr. Wertner.  Mr. Corbin directed Mr. Wertner to

15  investigate and deal with the inquiry.[4]  Mr. Wertner in turn directed Ms. Steffey

16  and Mr. Vivanco to advise Mr. Walton to cease such communications, as well as

17  to re-investigate the pay issues to determine if Mr. Walton had any new

18  information to support his claim that his pay was incorrect.  (Exhs. 20, 101.)

19      On October 13, 2006, while Ms. Steffey was present, Mr. Vivanco

20  notified Mr. Walton to refrain from contact with the Vice President and the

21  Managing Director about his pay.  (Exh. 101.)  During that same conversation,

22  Mr. Vivanco notified Mr. Walton that Ontario management would re-investigate

23  his pay issue and gave him until October 20, 2006, to provide information to

24  support his claim about a supposed pay exception.  (Exh. 20.)

25

26

27

28

[4]Consistent with his behavior throughout the entire course of events making up this case, Mr. Walton in October 2006, sent additional communications to Mr. Wertner and Mr. Corbin about his pay. (See Exhs. 19, 20.)

9

On October 17, 2006, Mr. Walton gave Mr. Vivanco documentation that he believed supported his claim for a pay exception. (Exh. 110.) On October 20, 2006, after determining no impropriety in Mr. Walton's pay, Mr. Vivanco notified Mr. Walton in writing that its re-investigation into his pay was complete. (Exh. 201.)

## E. WALTON'S FURTHER COMPLAINTS

On April 23, 2007, Mr. Walton lodged an internal complaint at FedEx, and he included a complaint about pay inequity. On July 10, 2007, FedEx notified Mr. Walton that it had completed its investigation into his complaint of April 23, 2007. Mr. Walton did not submit any requests for reimbursement of mileage at the Ontario facility for alleged use of his personal vehicle. ONT Senior Manager Mr. Vivanco was not aware of Mr. Walton ever using his personal vehicle for work purposes.

On December 19, 2007, Mr. Walton sued FedEx. On May 6, 2008, the Court dismissed Mr. Walton's race discrimination claim, per Stipulated Entry of Dismissal of Cause of Action No. 1 for Discrimination, from the Complaint. On January 16, 2009, this Court granted Mr. Walton's motion to file a First Amended Complaint. On October 8, 2009, this Court granted partial summary judgment to FedEx, dismissing Mr. Walton's claims of Breach of Implied Contract; Breach of the Covenant of Good Faith and Fair Dealing and Promissory Estoppel from the First Amended Complaint. On January 19-20, 2010, this Court held a trial on the claim of Breach of Oral Contract.

## III.

## CONCLUSIONS OF LAW

1. Mr. Walton brings claims under California contract law, and the applicable law is set forth in the *Judicial Council of California, Civil Jury Instructions* (June 2009) (CACI).

2. Under CACI 303 (Breach of Contract – Essential Factual Elements) to establish a breach of contract, Mr. Walton must prove all of the following elements:

> (1)  That Mr. Walton and FedEx entered into a contract;
>
> (2) That Mr. Walton did all, or substantially all, of the significant things that the contract required him to do or that he was excused from doing those things;
>
> (3) That FedEx failed to do something that the contract required it do; and
>
> (4)  That Mr. Walton suffered damages as a result of that failure.

See also CAL. CIV. CODE § 1549; Troyk v. Farmers Group, Inc., 90 Cal. Rptr. 3d 589, 628-29 (Ct. App. 2009) (requirement that plaintiff proved that defendant's alleged breach caused him damages); Acoustics, Inc. v. Trepte Const. Co., 92 Cal. Rptr. 723, 740-41 (Ct. App. 1971) (elements).

3. Under CACI 307 (Contract Formation – Offer), to establish a breach, Mr. Walton must first demonstrate that there was a viable contract: Both an offer and acceptance are required to create a contract.  In this case, in which Mr. Walton contends that he entered into an oral agreement with FedEx that contained conditions not found in his 1999 written employment contract, he was obligated to prove that a FedEx manager, with authority to enter into employment contracts, extended an offer that he accepted.  To prove that an offer was made, Mr. Walton bore the burden of proving the following:

    (1)  That FedEx communicated to Mr. Walton that it was willing to enter into a contract with Mr. Walton;

    (2)  That the communication contained specific terms; and

    (3)  That, based on the communication, Mr. Walton could have reasonably concluded that a contract with these terms would result if Mr. Walton accepted the offer.

As stated in <u>Ladas v. California State Automobile Ass'n</u>, 23 Cal. Rptr. 2d 810, 814-15 (Ct. App. 1993) (citations omitted):

> Under basic contract law "[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain." "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. [Citation.]"
>
> To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.

More to the point in this case is the observation in <u>In re First Capital Life Ins. Co.</u>, 40 Cal. Rptr. 2d 816, 819 (Ct. App. 1995) that the "trier of fact must determine 'whether a reasonable person would necessarily assume ... a willingness to enter into contract.'" (Citation omitted). This case demonstrates that, to the contrary, FedEx never manifested any willingness to enter into an agreement with Walton, and that Walton failed or refused to grasp that concept. The only offers made were the offer to transfer to Ontario, which Mr. Walton accepted, and his promotion to shuttle driver with a 6% raise, which he also accepted. No other offer was ever made to Mr. Walton and specifically, the record contains overwhelming evidence that FedEx never made Mr. Walton any

1   offer in response to his many demands that his position be re-classified and/or

2   that he be given a pay adjustment to account for the actual duties he claimed to

3   perform.  Accordingly, absent any such offer, the Court concludes that Mr.

4   Walton never proved the formation of any oral contract with FedEx.

5        4.  The written agreement between the parties also provides that it

6   constitutes the complete agreement between the parties and that any amendment

7   addition to the agreement must be put in writing.  See Beck v. Am. Health

8   Group Int'l, Inc., 260 Cal. Rptr. 237, 241 (Ct. App. 1989); CACI 306

9   (Unformalized Agreement).  Here the record clearly provides that any

10  amendment to the agreement between the parties must be put in writing and

11  approved by an authorized agent of FedEx.  No such writing was prepared in

12  this case, which is a further ground for finding in favor of FedEx.   Further, Mr.

13  Walton has failed to demonstrate that, even if Mr. Wertner made an oral promise

14  of a pay exception, it was enforceable, given that Mr. Wertner did not have

15  authority to do so and that the *Employment Agreement* (at Paragraph 11)

16  required such promises be in writing.

17       5.  In summary, Mr. Walton failed to prove the existence of an oral

18  promise, the existence of any written agreement as required by his employment

19  agreement with FedEx, or proof of any damages allegedly resulting from the

20  purported breach of contract.  The claim therefore fails.

21       6.  In its First Affirmative Defense, FedEx has asserted the statute of

22  limitations.  To succeed on this defense, FedEx must prove that Mr. Walton's

23  claimed harm occurred before December 20, 2005, which is two years prior to

24  the date that Mr. Walton sued FedEx.  CACI 338 (Affirmative Defense –Statute

25  of Limitations); see also CAL. CODE CIV. PROC. § 339(1) (two years for oral

26  contract).

27       7.  There can be no doubt that Mr. Walton failed to bring suit within the

28  statute of limitations for any harm resulting from the refusal to grant his request

1    for a pay exception in connection with his job duties at AOD. However, to the

2    extent that Mr. Walton contends that FedEx made a promise of back pay, in

3    connection with other alleged promises that were supposedly made in August

4    2005, his claim fails even assuming that those promises were in fact made. Mr.

5    Walton plainly knew by September 2005 that the promises allegedly made to

6    him had not been performed and that FedEx's position was that any promises

7    made had been performed. Thus, even before his promotion to Shuttle Driver in

8    late September 2005, Mr. Walton knew that he was not being granted a pay

9    exception in his new position or back pay relating to his work at AOD.

10    Nonetheless, Mr. Walton did not sue until December 19, 2007, which is more

11    than two years after Mr. Walton learned of the supposed breach. Thus, FedEx

12    has established the First Affirmative Defense.

13      8. Mr. Walton has asserted that the statute of limitations is tolled due to

14    equitable estoppel. However, he has not presented sufficient evidence to support

15    an equitable estoppel claim. The elements of equitable tolling were described in

16    Kleincke v. Montecito Water District, 195 Cal. Rptr. 58, 61 (Ct. App. 1983), as

17    follows:

18        The doctrine of equitable estoppel is based on the theory that a

19        party who by his declarations or conduct misleads another to his

20        prejudice should be estopped from obtaining the benefits of his

21        misconduct. [Citation.] (2) Under appropriate circumstances

22        equitable estoppel will lie to bar a defendant from pleading the bar

23        of the statute of limitations where the plaintiff was induced to

24        refrain from bringing a timely action by the fraud,

25        misrepresentation or deceptions of defendant. [Citations.] A

26        defendant should not be permitted to lull his adversary into a false

27        sense of security and cause the bar of the statute of limitations to

28

1    occur and then plead in defense the delay occasioned by his own

2    conduct. [Citations.]

3 This case demonstrates that FedEx never misled Walton into a false sense of

4 security, but rather, over a period of many years, repeatedly rejected his claims

5 for higher pay, back pay and job reclassification. Moreover, specifically with

6 respect to the events of August and September 2005, Mr. Walton knew of the

7 supposed breach of the alleged August 2005 promise before September 30,

8 2005. FedEx repeatedly rejected his demands in clear and unequivocal terms.

9 Mr. Walton's refusal to acknowledge FedEx's position and his repeated attempts

10 to raise the issue of his pay with different FedEx managers and to elevate the

11 issue to different FedEx executives (e.g., Ms. Steffey and Mr. Corbin) does not

12 suffice to demonstrate equitable tolling. Mr. Walton had complained about his

13 pay since December 1998, and there is no evidence that FedEx dissuaded him

14 from pursuing legal action. Accordingly, there is no inequity in FedEx's

15 enforcement of the two year statute of limitations.

16        9. In its Second Affirmative Defense, FedEx has asserted the contractual

17 limitation at Paragraph 15 in the *Employment Agreement*. To succeed on this

18 defense, FedEx must prove that the *Employment Agreement*'s 6-month

19 contractual limitation applies, and that Mr. Walton's claimed harm occurred

20 before June 20, 2007, which is six months prior to the date that Mr. Walton sued

21 FedEx.

22        FedEx has established that Mr. Walton knew of his harm – the lack of the

23 supposed pay exception – before his promotion to Shuttle Driver on September

24 30, 2005. Mr. Walton did not sue until December 19, 2007, which is more than

25 six months after Mr. Walton learned of the supposed breach. The contractual

26 limitation applies to this case. Thus, FedEx has established the Second

27 Affirmative Defense.

28

## IV.

## CONCLUSION

For all of the foregoing reasons, Mr. Walton failed to meet his burden of proving that he entered into any oral agreement with FedEx, that FedEx breached any such oral agreement, or that he suffered any damages as a result of the alleged breach.

IT IS SO ORDERED.

DATED: March 31, 2010

_____
Judge Gary Allen Feess
United States District Court

# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 09-7999-VBF(FMOx)**                    Dated: **December 11, 2009**

Title:    Samuel Frith -*v*- Federal Express Corporation, et al.

---

PRESENT:  HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

Rita Sanchez                          None Present
Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS (IN CHAMBERS):    RULING RE: DEFENDANT'S MOTION TO
                              DISMISS PURSUANT TO FEDERAL RULE OF
                              CIVIL PROCEDURE ("RULE") 12(B)(6) AND
                              12(C) EACH CAUSE OF ACTION IN
                              PLAINTIFF'S COMPLAINT OR, IN THE
                              ALTERNATIVE, MOTION FOR SUMMARY
                              JUDGMENT AND/OR SUMMARY
                              ADJUDICATION OF ISSUES PURSUANT TO
                              RULE 56 (dkt. #11)

**I. Ruling**

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  Accordingly, **the hearing set for December 14, 2009 at 1:30 p.m. is vacated and the matter taken off-calendar.**

MINUTES FORM 90                       Initials of Deputy Clerk   _rs_
CIVIL - GEN

The Court has received, read, and considered Defendant Federal Express Corporation's ("Defendant") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(c) Each Cause of Action in Plaintiff's Complaint Or, in the Alternative, Motion for Summary Judgment and/or Summary Adjudication of Issues pursuant to Rule 56 (dkt. #11); Plaintiff Samuel Frith's ("Plaintiff") Opposition (dkt. #20); and Defendant's Reply (dkt. #24).

Defendant moves to dismiss each cause of action in Plaintiff's Complaint on the grounds that (1) Plaintiff's action is barred by the applicable statute of limitations; and (2) fails to state a claim. *See* Notice of Mot. at 2:3-8. Defendant also moves for summary judgment and/or summary adjudication on the grounds that Plaintiff cannot raise a material issue of fact as to each cause of action on the basis that each cause of action is barred by the applicable six-month contractual limitation provision, and that his Second and Fifth Causes of Action are barred by Plaintiff's at-will employment status. *See* Notice of Mot. at 2:9-13.

The Court GRANTS Defendant's Motion for Summary Judgment and/or Summary Adjudication on:
(1) all of Plaintiff's five causes of actions as they are time-barred by the six month contractual limitation provision, and Plaintiff does not raise a triable issue as to whether the provision is unreasonable;
(2) Plaintiff's Second Cause of Action for breach of contract and Fifth Cause of Action for breach of implied covenant of good faith and fair dealings on the additional ground that Plaintiff was an at-will employee, and Plaintiff does not raise an issue of material fact as to whether Defendant breached any express or implied contractual provision.

As the Court grants Defendant's Motion for Summary Judgment and/or Summary Adjudication, the Court takes off-calendar Plaintiff's Motion to Dismiss as moot.

Plaintiff contests that Defendant has not complied with Local Rule 7-3. However, as set forth in Defendant's Reply, Defendant has complied with the meet-and-confer obligations under Local Rule 7-3. *See* Reply at 6:14-9:14; Decl. of Christopher J. Yost in Supp. of Def.'s Reply ¶¶ 4-13; Exs. A and B.

## II. Background

Plaintiff was in a collision while operating a Federal Express vehicle on December 11, 2006 that resulted in the fatality of the other motorist. SUF 1-2 (undisputed). Defendant placed

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ___rs___

Plaintiff on suspension with pay the day after the collision, and later converted the paid suspension into an unpaid suspension on January 8, 2007. SUF 3 (undisputed). Defendant discharged Plaintiff from his employment on June 29, 2007. SUF 5 (undisputed). The Parties dispute whether Defendant completed an investigation of the collision on April 12, 2007 (*see* SUF 4 and Plaintiff's response). On September 26, 2007, Defendant denied Plaintiff's post termination internal appeal procedure through its Guaranteed Fair Treatment Procedure. SUF 6 (undisputed).

Plaintiff Samuel Frith filed his Complaint against Defendant Federal Express Corporation in the Superior Court of the State of California on September 28, 2009 and alleged five causes of action: (1) wrongful termination; (2) breach of contract; (3) negligence; (4) violation of public policy pursuant to Government Code section 12940; and (5) breach of implied covenant of good faith and fair dealings. Defendant removed this case to federal court on November 2, 2009.

## III. Analysis

### A. Motion for Summary Judgment

#### 1. Standard

A summary judgment motion is granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a genuine issue of material fact when the evidence is such that a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A defendant who seeks summary judgment on plaintiff's cause of action carries an initial burden of production of either (1) producing evidence negating an essential element of the nonmoving party's case, or (2) showing that the nonmoving party does not have enough evidence of an essential element of its claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-60 (1970). Evidence and the inferences therefrom will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989).

#### 2. Contractual Six-Month Limitation Provision

MINUTES FORM 90                                    Initials of Deputy Clerk   __rs__
CIVIL - GEN

The Court grants Defendant's Motion for Summary Judgment on all of Plaintiff's causes of actions as they are time-barred by the six month contractual limitation provision and Plaintiff does not raise a triable issue as to whether the provision is unreasonable.

Under California law, "parties may agree upon a shorter period of limitation for bringing an action than that prescribed by statute, so long as the time allowed is reasonable." *Tebbets v. Fidelity & Cas. Co.*, 155 Cal. 137, 138-39 (1909); *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038 (9th Cir. 2001). The Ninth Circuit has held that "the weight of California case law strongly indicates that the six-month limitation provision is not substantively unconscionable" and that a six-month period is "not unreasonable" as a matter of law. *Soltani*, 258 F.3d at 1043-44. *See also Beeson v. Schloss*, 183 Cal. 618 (1920) (finding six-month limitation provision reasonable in employment contract).

It is undisputed that Plaintiff signed an Employment Agreement that contains a contractual six-month limitation provision to bring legal action against Defendant. *See* SUF 9 (undisputed). It is also undisputed that Plaintiff filed his lawsuit on September 28, 2009, more than six months after his employment was terminated on June 29, 2007. *See* SUF 5, 7 (undisputed).

Plaintiff asserts that whether the six-month limitation provision is reasonable is a question of fact, and that many facts establish that the six month limitation provision is in fact unreasonable. He asserts that as he was involved in criminal proceedings from June 2007 to December 2007, was in a lengthy appeals process to regain his job, was denied his workers compensation action and initiated an administrative court action in January 2008, and also became a co-defendant with Defendant in a wrongful death suit on December 8, 2008 whereby Defendant stated he would provide Plaintiff with defense counsel. *See* Opp. at 4:20-6:6. However, Plaintiff fails to provide any legal authority for this contention, and cases have found, as matter of law, that a six-month limitation provision is reasonable. *See, e.g., Beeson*, 183 Cal. 618 (finding six-month limitation reasonable in employment contract); *Soltani*, 258 F.3d at 1044.

Accordingly, as Plaintiff waited more than six months from the date of the events forming his lawsuit – the termination on June 29, 2007 and/or the final post-termination internal appeal decision on September 26, 2007 – to file his Complaint the Court grants Defendant's Motion for Summary Judgment on the ground that all of Plaintiff's five causes of action are barred by the six-month contractual limitation provision.

### 3. Second and Fifth Causes of Action

MINUTES FORM 90                                    Initials of Deputy Clerk ___rs___
CIVIL - GEN

The Court also grants Defendant's Motion for Summary Adjudication on Plaintiff's Second Cause of Action for breach of contract and Fifth Cause of Action for breach of implied covenant of good faith and fair dealings on the additional ground that Plaintiff was an at-will employee, and Plaintiff does not raise an issue of material fact as to whether Defendant breached any express or implied contractual provision.

The Parties do not dispute that Plaintiff signed an Employment Agreement acknowledging his at-will status. *See* SUF 8 (undisputed). They also do not dispute that Defendant's Policy 2-5 provides guidelines regarding at-will employees. *See* SUF 10 (undisputed). Plaintiff fails to provide any evidence showing policies or handbooks that state otherwise.

As Plaintiff is an at-will employee, he has no contractual rights to continue his employment indefinitely and to be terminated only for good cause, as he alleges in his Second and Fifth Causes of Action. Also, while Plaintiff alleges that Defendant breached the contract by not adopting the Department of Motor Vehicle's investigation result regarding the accident, not giving Plaintiff a meaningful opportunity to response and improve, and not thoroughly investigating the accident (*see* Compl. ¶¶ 41, 44), Plaintiff fails to provide evidence of any contractual provision or provision in a handbook that creates this obligation. *See, e.g., Calhoun v. Fed. Express Corp.*, No. C 99-4335, 2000 WL 1071837 (N.D. Cal. July 31, 2000) (finding on motion for summary judgment that breach of contract and implied covenant claims fail as a matter of law as plaintiff was an at-will employee and parties did not have an agreement that she could only be terminated for good cause); *Leahy v. Fed. Express Corp.*, 609 F. Supp. 668, 672 (E.D.N.Y 1985) (finding on a motion for summary judgment that claims for breach of contract fail as a matter of law as Federal Express' employee handbook expressly preserved its right to terminate employees at will).

Accordingly, the Court grants Defendant's Motion for Summary Adjudication on Plaintiff's Second and Fifth Causes of Action on the additional ground that Defendant did not breach Plaintiff's contract or implied contract for termination with good cause as Plaintiff was an at-will employee, and as Plaintiff fails to provide evidence of other policies or contracts that creates any other express or implied obligations.

### B. Motion to Dismiss

As the Court grants Defendant's Motion for Summary Judgment and/or Summary Adjudication, Defendant's Motion to Dismiss is taken off-calendar as moot.

MINUTES FORM 90                                        Initials of Deputy Clerk __rs__
CIVIL - GEN

# EXHIBIT E

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL BUTLER,<br><br>           Plaintiff,<br><br>    v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>         Defendant. | 1:03-cv-6822 OWW DLB<br><br>ORDER RE: DEFENDANT'S AND PLAINTIFF'S CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOCS. 38 & 39) |

## INTRODUCTION

Randall Butler ("Plaintiff") worked as a courier for Federal Express Corporation ("Defendant" or "FedEx") until Defendant terminated his employment. Plaintiff filed a complaint against Defendant in the Superior Court of California, County of Fresno (Case No. 03CECG04023), alleging three state law causes of action. Doc. 1 Ex. A., filed Nov. 5, 2003. Count I alleges discrimination based on physical disability and medical condition in violation of California Government Code § 12940 et seq. ("Fair Employment and Housing Act" or "FEHA"), Count II alleges breach of the employment contract between Butler and FedEx, and Count III alleges breach of the covenant of good faith and fair dealing. On December 12, 2003, Defendant removed this case to federal court on the basis of diversity jurisdiction. Doc. 1.

Before the court are cross-motions for summary judgment. Plaintiff seeks partial summary judgment as to the first cause of action only, arguing that Defendant violated FEHA by

1

1   discriminating against him on the basis of a perceived physical
2   disability.  Doc. 38.  Defendant seeks summary judgment for all
3   three claims on the grounds that (1) Plaintiff cannot establish
4   he was qualified to perform the courier job, an element of a
5   prima facie discrimination claim (Count I), (2) Plaintiff's non-
6   statutory claims (Counts II and III) are barred by the
7   contractual limitations period set out in the written employment
8   agreement, and (3) Plaintiff was an at-will employee and cannot
9   argue that he was terminated without just cause in breach of his
10  employment contract (Count II) and in breach of the covenant of
11  good faith and fair dealing (Count III).

12

13                    **FACTUAL AND PROCEDURAL HISTORY**

14       Plaintiff worked for FedEx from August 30, 1999 until
15  September 25, 2002 as a courier for the Fresno station.  Doc. 1
16  at 2.  Plaintiff signed a written Employment Agreement, which
17  provides:

18

19              I do hereby agree that...  during the term of
                my employment, which term I understand is
20              indefinite, I will comply with the guidelines
                set forth in the Company's policies, rules,
21              regulations and procedures, which I
                understand shall be amended from time to
22              time. I ALSO AGREE THAT MY EMPLOYMENT AND
                COMPENSATION CAN BE TERMINATED WITH OR
23              WITHOUT CAUSE AND WITHOUT NOTICE OR LIABILITY
                WHATSOEVER AT ANY TIME AT THE OPTION OF
24              EITHER THE COMPANY OR MYSELF. I further
                understand that no manager or representative
25              of the Company, other than the CEO, COO or
                other senior vice president designated by the
26              CEO has any authority to enter into any
                agreement for employment with me for any
27              specified period of time or to amend this
                agreement in any manner. Any such amendments
28              shall be in writing.  Nothing in this

                                   **2**

                    agreement or any other communication from the
                    Company shall abrogate this employment-at-
                    will status.

Doc. 40, Ex. B.

     On May 13, 2000, Plaintiff Randall Butler was involved in an

automobile accident while driving a FedEx vehicle.  In the

accident, Plaintiff injured his right knee, right shoulder, head,

neck, right elbow, and lower back.  By May 31, 2000, Plaintiff's

hand and right knee had recovered, but his other medical problems

persisted.  Plaintiff was unable to work from the date of the

accident until approximately July 17, 2000.  During that time, he

saw Dr. Montana and was subsequently referred to Dr. Mochizuki.

Doc. 38, Ex. 8 at 2.  In July 2000, Plaintiff was released to

return to work with no restrictions and resumed his usual job

duties as a full-time courier for FedEx.

     After the May 17, 2000 accident, Plaintiff initiated two

separate legal proceedings: 1) a personal injury lawsuit against

the driver of the other vehicle (to which FedEx was not a party)

and 2) a workers' compensation proceeding.  For Plaintiff's

personal injury lawsuit, Dr. Huene examined Plaintiff in June,

2001 and Dr. Birnbaum examined Plaintiff in December, 2001.  On

January 26, 2001, during Plaintiff's workers' compensation

proceeding, Dr. MacMorran performed a "qualified medical

examination" on Plaintiff and determined that Mr. Butler could

continue to perform his usual and customary job duties as a

courier.  Because Dr. MacMorran's report conflicted with Dr.

Mochizuki's earlier medical report, the parties stipulated that

Dr. Bray would perform an "Agreed Medical Evaluation".  Bray

Depo., Doc. 41, Ex. A. at 8.  On August 20, 2002, Dr. Bray

diagnosed Plaintiff with a cervical spine sprain, a right

**3**

1   shoulder sprain with residual shoulder impingement, and a right

2   knee sprain with residual problems. *Id.* at 36. In his August

3   29, 2002 medical report, Dr. Bray wrote:

> WORK RESTRICTIONS
>
> Mr. Butler has a permanent partial disability to
> his cervical spine precluding Very Heavy Lifting.
>
> For his right shoulder there is a permanent
> partial disability precluding Work Overhead and
> prophylactically precluding him from Repetitive
> Pushing, and Pulling with the Right Dominant Upper
> Extremity.
>
> For his right knee he should have prophylactic
> preclusion from Repetitive Squatting and Kneeling.
>
> The above work restrictions apply to the workforce
> in general and do not reflect whatsoever on Mr.
> Butler's capabilities of performing his usual and
> customary job at Federal Express, where he has
> clearly demonstrated his capabilities and
> continuing to do so.

15  Bray Report, Doc. 41, Ex. A Part 1 at 7.

16      By letter dated September 26, 2002, FedEx advised Plaintiff

17  that "a review of his medical status indicates that he has

18  reached maximum medical improvement and is permanently incapable

19  of performing the essential functions of his position as a

20  courier/DOT, with or without reasonable accommodation." Doc. 40,

21  Ex. F. After he received this letter, Plaintiff was placed on 90

22  day medical leave. During that time, FedEx sent Plaintiff job

23  postings for other positions within FedEx on a weekly basis.

24  Plaintiff did not express any interest in any position other than

25  as a courier and did not submit any job applications after

26  September 26, 2002.

27      On December 26, 2002, Defendant terminated Plaintiff.

28

**4**

1 | Plaintiff claims that FedEx terminated him "based upon a
2 | perceived disability" and that he "was fully capable of
3 | performing his usual and customary duties" at the time of his
4 | termination. *Id.*

5 | On November 25, 2002, Plaintiff filed a complaint with the
6 | Department of Fair Employment and Housing ("DFEH"). DFEH sent
7 | Plaintiff his "right-to-sue letter" on February 20, 2003.
8 | Plaintiff also pursued FedEx's "internal appeal process". During
9 | the appeal process, Plaintiff sent Dr. Bray's reports of August
10 | 29, 2002, January 24, 2003, and February 15, 2003 to FedEx's
11 | upper management. A managing director at FedEx upheld
12 | Plaintiff's termination and communicated that decision to
13 | Plaintiff in a letter dated January 10, 2003.

14 | On November 5, 2003, Plaintiff filed this lawsuit against
15 | Defendant in state court. On December 12, 2003, Defendant
16 | properly removed this action to federal court on the basis of
17 | diversity.

18 |

19 | **STANDARD OF REVIEW**

20 | **The General Summary Judgment Standard**

21 | Summary judgment is warranted only "if the pleadings,
22 | depositions, answers to interrogatories, and admissions on file,
23 | together with the affidavits, if any, show that there is no
24 | genuine issue as to any material fact." Fed. R. Civ. P. 56(c);
25 | *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). To
26 | defeat a motion for summary judgment, the non-moving party must
27 | show (1) that a genuine factual issue exists and (2) that this
28 |

factual issue is material. *Id.* A genuine issue of fact exists
when the non-moving party produces evidence on which a reasonable
trier of fact could find in its favor viewing the record as a
whole in light of the evidentiary burden the law places on that
party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,
1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 252-56 (1986). Facts are "material" if they "might
affect the outcome of the suit under the governing law."
*Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations
without any significant probative evidence tending to support the
complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.
2001).

> [T]he plain language of Rule 56(c) mandates the entry
> of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the
> existence of an element essential to the party's
> case, and on which that party will bear the burden of
> proof at trial. In such a situation, there can be
> "no genuine issue as to any material fact," since a
> complete failure of proof concerning an essential
> element of the nonmoving party's case necessarily
> renders all other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986). The more
implausible the claim or defense asserted by the nonmoving party,
the more persuasive its evidence must be to avoid summary
judgment. *See United States ex rel. Anderson v. N. Telecom,
Inc.*, 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless, the
evidence must be viewed in a light most favorable to the
nonmoving party. *Anderson*, 477 U.S. at 255. A court's role on
summary judgment is not to weigh evidence or resolve issues;
rather, it is to determine whether there is a genuine issue for

**6**

1    trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th

2    Cir. 1996).

3

4                              **ANALYSIS**

5    **I.   FEHA claim**

6         Under California law, an employer may not discriminate

7    against a worker based on the employee's physical condition or

8    disability.  Cal. Gov. Code § 12940(a).  "In order to establish a

9    prima facie case under FEHA, [Plaintiff] must show that (1) he

10   suffered from a disability or was otherwise regarded as disabled,

11   (2) was otherwise qualified to perform the essential functions of

12   his job, and (3) was subjected to an adverse employment action

13   because of his disability."  *Finegan v. County of Los Angeles*, 91

14   Cal. App. 4th 1, 7 (2001).  "A defendant seeking summary judgment

15   has met the burden of showing that a cause of action has no merit

16   if that party has shown that one or more elements of the cause of

17   action cannot be established."  *Jackson v. County of Los Angeles*,

18   60 Cal. App. 4th 171, 178 (1997).

19        Here, Defendant asserts that Plaintiff cannot establish the

20   second element of his FEHA claim - that he was otherwise

21   qualified to perform the essential functions of his job.[1]

22   Defendant contends (1) that Dr. Bray expressly precluded

23   Plaintiff from "Very Heavy Lifting", an essential function of the

24   courier job, and (2) that Plaintiff cannot be qualified as a

25   courier for this lawsuit because he took a contrary position

26   during his workers' compensation proceeding.

27   _____

28        [1] In their moving papers, the parties do not dispute the
     first or third elements of a prima facie case under FEHA.

                                    **7**

1      Plaintiff argues that he is entitled to judgment on his FEHA

2   claim because (1) he competently and adequately performed the

3   essential functions of his job following his return to full time

4   duty, (2) none of the medical doctors (Dr. Bray, Dr. MacMorran,

5   Dr. Birnbaum, or Dr. Huene) determined he was unable to perform

6   his usual and customary duties as a courier for FedEx, and (3)

7   Defendant terminated Plaintiff simply because they assumed he

8   could not perform his job as a courier because of his disability.

9      **A.  The "essential functions" of the courier job**

10      "Essential functions" are defined by statute as "the

11   fundamental job duties of the employment position that the

12   individual with a disability holds or desires."  2 Cal. Code Reg.

13   § 7293.8(g).  "Essential functions" do not include "the marginal

14   functions of the position."  *Id.*  Here, Defendant offers two

15   documents to establish the essential functions of the courier

16   job.  Defendant presents (1) FedEx's June 15, 1998 Job

17   Description Report and (2) Randall Butler's November 12, 2002 Job

18   Analysis Report.

19      According to FedEx's June 15, 1998 Job Description Report, a

20   courier must have the "ability to lift 75 lbs" and the "ability

21   to maneuver packages of any weight above 75 lbs with appropriate

22   equipment and/or assistance from another person."  Powell Dec.,

23   Doc. 39, Ex. A.

24      During Plaintiff's medical leave, FedEx met with Plaintiff

25   to prepare his November 12, 2002 Job Analysis Report[2].  The

26   _____

27      [2] California Government Code § 12926(f) provides: "evidence
    of whether a particular function is essential includes, <u>but is</u>

28   <u>not limited to</u> written job descriptions prepared before

**8**

1   report states that "employees are required to be able to lift up
2   to seventy-five pounds unassisted." *Id.* at 2.  Plaintiff must
3   also (1) bend the elbow, knee, wrist, and other body parts, (2)
4   kneel and stoop when loading and unloading packages and (3) climb
5   steps while getting in and out of the delivery vehicle.  *Id.*
6   During his deposition, Plaintiff reviewed the Job Analysis report
7   and agreed that the report "accurately reflected the physical
8   requirements of his job."  Doc. 40, Ex. A, Deposition of Randall
9   Butler.

10      During oral argument, the parties disagreed as to whether a
11   FedEx courier could use <u>assistance</u> to lift 75 pounds.  Defendant
12   claims that lifting 75 pounds unassisted is an essential element
13   of the job, whereas Plaintiff interprets the Job Description
14   Report differently.  This disputed issue of material fact cannot
15   be resolved as a matter of law.

16      **B.  "Qualified"**

17      "Under FEHA, the plaintiff proves he is a qualified
18   individual by establishing that he can perform the essential
19   functions of the position."[3] *Bagatti v. Department of*

20   _____

21   advertising or interviewing applicants for the job."  Plaintiff
     argues that Defendant cannot use the 2002 Job Analysis Report to
22   establish the essential functions of the courier job because it
     was prepared after Defendant placed him on medical leave.
23   Plaintiff further contends that Section 12926(f) only mentions
     job descriptions prepared <u>before</u> advertising or interviewing
24   applicants.  However, the list provided in the statute is not
     exhaustive.  The 2002 Job Analysis Report is relevant in order to
25   determine the essential functions of the courier job, and
     Plaintiff's objection to the use of this evidence is overruled
26   for that limited purpose as admitted by Plaintiff at his
27   deposition.

28      [3] Plaintiff argues that Defendant's claim that he was not
     qualified is irrelevant under *Bagatti v. Department of*

**9**

1     *Rehabilitation*, 97 Cal. App. 4th 344, 361 (2002).  Defendant

2     argues that summary judgment should be granted in its favor

3     because Plaintiff was not "qualified" to lift 75 pounds, an

4     "essential element" of his job.  However, four doctors examined

5     Plaintiff's injuries following his accident.  An analysis of

6     their medical reports and related deposition testimony reveals

7     the existence of disputed material facts as to Plaintiff's

8     performance abilities.

9          **1.  Dr. Bray**

10      Defendant argues that Dr. Bray "prophylactically precluded"

11   Plaintiff from "working overhead" for his right shoulder

12   disability and from "repetitive squatting and kneeling" for his

13   right knee.  Dr. Bray defined "repetitive" as "up to a third of

14   the time" and "prophylactically precluded" as meaning "something

15   to prevent further damage from occurring."  Bray Depo., Doc. 41,

16   Ex. A at 46.  Dr. Bray's <u>prophylactic</u> preclusion does not

17   necessarily mean that Plaintiff is not qualified, in a legal

18   sense, to perform these tasks.  Defendant offers no legal

19   authority or factual basis to support a conclusion that

20   "prophylactic preclusion" is equivalent to being unable to

21   ————————————

22   *Rehabilitation*, 97 Cal.App.4th 344, 360-361 (2002).  However,
*Bagatti* involved a claim for failure to accommodate under

23   California Government Code § 12940(m).  *See Bagatti*, 97 Cal. App.
4th at 361, n. 4.  In his Complaint, Plaintiff brings a claim for

24   "discrimination based on physical disability and medical
condition" under California Government Code § 12940.  Plaintiff

25   does not allege Defendant's failure to accommodate in the
Complaint, but raises it for the first time in the Opposition to

26   Defendant's Motion for Summary Judgment.  Doc. 52 at 3.

27   Plaintiff is bound by allegations in the pleadings and his
failure to accommodate argument will not be considered.

28

10

1  perform a task.

2      Defendant also emphasizes that Dr. Bray restricted Plaintiff

3  from lifting 75 pounds, an "essential element" of the courier job

4  according to the 1998 Job Description.  In his August 2002

5  report, Dr. Bray "permanently precluded" Plaintiff from "Very

6  Heavy Lifting."  Doc. 41, Ex. A Part 1 at 7.  Dr. Bray defined

7  "Very Heavy Lifting" as "normally 75 pounds or more for most

8  adults."  Bray Depo., Doc. 41, Ex. A at 13-14.

9      However, key facts pertaining to Dr. Bray's report remain in

10 dispute.  For example, Dr. Bray wrote in his medical report, "The

11 above work restrictions apply to the workforce in general and do

12 not reflect whatsoever on Mr. Butler's capabilities of performing

13 his usual and customary job at Federal Express, where he has

14 clearly demonstrated his capabilities and is continuing to do

15 so."  Doc. 41, Ex. A Part 1 at 8.  It is not clear why Dr. Bray

16 stated that Plaintiff could "certainly do his job at FedEx" after

17 he had precluded Plaintiff from "Very Heavy Lifting."  It may be

18 possible that Dr. Bray did not know of FedEx's performance

19 standards for the courier position, but nothing in the record

20 provides an explanation for his statement.  Defendant also argues

21 that in Dr. Bray's February 15, 2003 letter, Dr. Bray did not

22 withdraw his August 2002 work restrictions.  Bray Letter, Doc.

23 41, Ex. A, #9.  In that letter, however, Dr. Bray wrote, "Mr.

24 Butler has obviously self-modified his ability to perform his

25 job, and has continued to do so, at least when I evaluated him."

26 *Id.*  Plaintiff interprets Dr. Bray's statements to mean that he

27 could perform the essential functions of his job, but Defendant

28 interprets Dr. Bray's work restrictions and letter differently.

**11**

1    In addition, the other doctors' medical reports and

2  depositions do not conclusively establish whether Plaintiff was

3  qualified to perform the essential functions of the courier job

4  or not.

5         **2.  Dr. MacMorran**

6    Dr. MacMorran's medical report and letter provide additional

7  support for this ambiguity.  Dr. MacMorran, the Qualified Medical

8  Examiner, wrote in his report, "Mr. Butler should have a

9  prophylactic work preclusion related to his low back restricting

10  very heavy lifting."  MacMorran Report, Doc. 41, Ex. B, #2 at 9.

11  Dr. MacMorran "prophylactically preclude[d] work activities above

12  shoulder level" and "work activities requiring pulling and

13  pushing with the right (dominant) arm."  *Id*.  However, in his May

14  6, 2001 letter, Dr. MacMorran wrote that Plaintiff "was

15  restricted in his ability to work at <u>some</u> specific jobs in the

16  competitive work market" such as "a garbage collector or a

17  roofer."  MacMorran Letter, Doc. 41, Ex. B, #3 (emphasis added).

18         **3.  Dr. Birnbaum and Dr. Huene**

19    Two doctors, Dr. Birnbaum and Dr. Huene, examined Plaintiff

20  in connection with Plaintiff's personal injury lawsuit.  Both

21  doctors suggested that Plaintiff could perform the essential

22  functions of his job, but neither expressly stated whether or not

23  Plaintiff could lift 75 pounds.  Dr. Birnbaum reported that "it

24  appeared to me that [Plaintiff] could perform the core duties [of

25  his job].  There might have been some question about whether

26  there were some marginal duties that were giving him difficulty."

27  Doc. 38 Ex. 6 at 24.  Dr. Huene rated "[Plaintiff's] complaints

28  as being in the annoying category."  Doc. 38, Ex. 8 at 11.  He

**12**

1  believed that Plaintiff's injuries "should not interfere with any
2  activities of daily living or work or recreational activities."
3  *Id.*

4      Key facts regarding the essential functions of the courier
5  job and Plaintiff's qualification and ability to perform them
6  remain in dispute.  As to Count I, Defendant's Motion for Summary
7  Judgment is **DENIED**.  Plaintiff's Motion for Summary Judgment is
8  **DENIED**.

9      **C.  Judicial Estoppel**

10      Defendant asserts that Plaintiff's position during his
11  workers' compensation proceeding prevents him from bringing his
12  FEHA claim under the doctrine of judicial estoppel.  Defendant
13  asserts that Plaintiff took the position in his workers'
14  compensation proceeding that his physical injuries rendered him
15  unable to perform the essential functions of his job.  "The
16  doctrine of judicial estoppel bars a party from asserting a
17  position in a legal proceeding that is contrary to a position
18  previously taken in the same or some earlier proceeding."
19  *Jackson v. County of Los Angeles*, 60 Cal. App. 4th 171, 181
20  (1997).  The purpose of the doctrine is to prevent inconsistent
21  results and the impairment of the judicial process.  *See Russell
22  v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990).  *Jackson* sets
23  forth the elements of judicial estoppel:

24              (1) the same party has taken two positions;
              (2) the positions were taken in judicial or
25              quasi-judicial administrative proceedings;
              (3) the party was successful in asserting the
26              first position (i.e., the tribunal adopted
              the position or accepted it as true); (4) the
27              two positions are totally inconsistent; and
              (5) the first position was not taken as a
28              result of ignorance, fraud, or mistake.

**13**

60 Cal. App. 4th at 183 (emphasis added).

Judicial estoppel may be asserted regarding a position taken in an administrative proceeding, including workers' compensation, but only if the position was adopted by the tribunal or led to a settlement.  *See id.; see also Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996).

Here, no final decision was rendered in Plaintiff's workers' compensation proceeding where Plaintiff's position was adopted, nor was there a settlement.[4]  Plaintiff states, "My worker's compensation claim has not been resolved.  I have signed no agreement in that matter."  Butler Dec., Doc. 52, para. 11.  Until a final ruling or settlement is made regarding Plaintiff's workers' compensation case, there is no danger of inconsistent results.  *Jackson*, 60 Cal. App. 4th at 183; *Risetto*, 94 F.3d at 601.  Plaintiff's FEHA claim is not barred by judicial estoppel.


II.  **Contractual Statute of Limitations**

Defendant asserts that Plaintiff failed to bring legal action within the employment agreement's six-month limitations period for his non-statutory claims, counts II (breach of employment contract) and III (breach of covenant of good faith and fair dealing).  The employment agreement states, "to the extent the law allows an employee to bring legal action against

---

[4]During oral argument, Defendant stated that Plaintiff's workers' compensation proceeding is still pending.

**14**

1 Federal Express Corporation, I agree to bring that complaint
2 within the time frame prescribed by law <u>or</u> 6 months from the date
3 of the event forming the basis for my lawsuit, whichever expires
4 first."

5      California courts have recently held that a contractual six-
6 month statute of limitations "unlawfully restricts an employee's
7 ability to vindicate his civil and statutory rights." *Martinez*
8 *v. Master Protection Corporation*, 18 Cal. App. 4th 107, 117
9 (2004). In that case, Martinez sued for discrimination under
10 FEHA, and his contract required all statutory and common law
11 claims to be brought within six months of the date that the claim
12 arose. *Id.* The court reasoned that the agreement's shortened
13 limitations period was "insufficient to protect its employees'
14 right to vindicate their statutory rights." *Id.* Here,
15 Plaintiff's employment agreement does not involve arbitration,
16 but a similar analysis applies. FEHA provides that Plaintiff has
17 one year to file his administrative DFEH complaint and one year
18 from the date of his "right to sue" letter to file a civil action
19 under FEHA. Because Plaintiff complied with these statutory
20 provisions, the employment agreement's six-month statute of
21 limitations does not bar Plaintiff's FEHA claim (Count I).

22      *Martinez*, however, only applies to "non-contractual" claims,
23 such as claims under FEHA and the Labor Code. "Many California
24 cases have upheld contractual shortening of statutes of
25 limitation in different types of contracts, including employment
26 situations." *Soltani v. Western & Southern Life Insurance*, 258
27 F.3d 1038, 1044-1045 (9th Cir. 2001). The California Supreme
28 Court stated, "it is a well-settled proposition of law that the

15

1 parties to a contract may stipulate therein for a period of
2 limitation, shorter than that fixed by the statute of
3 limitations." *Beeson v. Schloss,* 183 Cal. 618, 622-623 (1920).
4 "Such stipulation violates no principle of public policy,
5 provided the period fixed be not so unreasonable[5] as to show
6 imposition or undue advantage in some way." *Id.* In the context
7 of former employees suing their former employer for breach of
8 employment contract, a contract provision shortening the
9 limitations period to six months is not unreasonable. *See*
10 *Soltani*, 258 F.3d 1038. Here, Plaintiff filed his complaint in
11 state court on November 5, 2003, almost nine months after he
12 received his "right-to-sue" letter from DFEH. Plaintiff did not
13 timely file his non-statutory claims for breach of contract and
14 breach of the covenant of good faith and fair dealing within the
15 required six-month period.

16    **A.  Unconscionability**

17        Plaintiff argues the contractual six-month limitations
18 should not be enforced against any of his claims because the
19 Employment Agreement was unconscionable. Courts can strike down
20 particular contractual clauses as unconscionable. *See Armendariz*
21 *v. Foundation Health Psychcare Services*, Inc., 24 Cal.4th 83
22 (2000). In *Armendariz*, the California Supreme Court set forth a
23 framework for determining if a contractual provision is
24 unconscionable:

25

26        [5]"'Reasonable' in this context means the shortened period
27 nevertheless provides sufficient time to effectively pursue a
   judicial remedy." *Moreno v. Sanchez*, 106 Cal.App.4th 1415, 1430
28 (2003).

16

> [U]nconscionability has both a "procedural"
> and a "substantive" element, the former
> focusing on "oppression" or "surprise" due
> to unequal bargaining power, the latter on
> "overly harsh" or "one-sided" results....
> [B]oth [must] be present in order for a
> court to exercise its discretion to refuse
> to enforce a contract or clause under the
> doctrine of unconscionability.  But they
> need not be present in the same degree.
> Essentially a sliding scale is invoked....
> the more substantively oppresive the
> contract term, the less evidence of
> procedural unconscionability is required to
> come to the conclusion that the term is unenforceable, and vice

*Id.* at 99.

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.  It focuses on factors of <u>oppression</u> and <u>surprise</u>." *Kinney v. United Healthcare Services*, 70 Cal.App.4th 1322 (1999) (emphasis added).

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion.  The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Soltani*, 258 F.3d at 1042 (citing *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 817 (1981)).  "The question is whether [the adhering party] is free to negotiate and alter the terms of the proffered agreement." *Parr v. Superior Court*, 139 Cal.App.3d 440, 444 (1983).  Here, as in *Parr* and *Scissor-Tail*, Plaintiff's Employment Agreement constitutes an adhesion contract.  Defendant, a large corporation of vastly superior

17

1   bargaining strength, imposed the Employment Agreement, a

2   standardized form contract, upon all individuals who sought

3   employment as a FedEx courier.  Even though a contract may be

4   adhesive, however, it may still be enforceable.  "The

5   classification of a contract as a contract of adhesion is the

6   beginning and not the end of the analysis insofar as

7   enforceability of its terms is concerned."  *Graham v. Scissor-*

8   *Tail, Inc.*, 28 Cal. 3d 807, 817 (1981).

9        The focus is on the elements of oppression and surprise.

10  Plaintiff argues he "was not given enough time to read [the

11  agreement]" or "consult an attorney regarding [his] rights."  *Id.*

12  However, because "Plaintiff offers no evidence that Defendant

13  actually took some action or said something to hurry or pressured

14  [him] into signing the agreement, these claims add nothing to

15  plaintiff's showing."  *See Rosenthal v. Great Western Fin.*

16  *Securities Corp.*, 14 Cal.4th 394, 424, n. 12 (1996).  Even if

17  FedEx hypothetically misrepresented the terms of the Agreement,

18  Plaintiff's failure to read the written agreement before signing

19  is insufficient to avoid the terms of the contract.  *See*

20  *Rosenthal*, 14 Cal.4th at 424.

21       Plaintiff also notes, "the clause of the agreement which

22  FedEx relies upon appears in very fine print as the last

23  paragraph, and the mark which precedes the word 'months' is

24  illegible."  Doc. 52 at 6.  However, Plaintiff fails to attach a

25  representative copy of the original Employment Agreement.

26  Instead, Plaintiff refers to Defendant's Exhibit, a <u>faxed</u>, <u>much</u>

27  <u>smaller</u> version of the Employment Agreement.  Doc. 40, Ex. B to

28  David Wilson's declaration.  Despite this miniaturized exhibit,

18

1  the number preceding the word "months" is a single-digit number,
2  and appears to be a "6" or an "8." Plaintiff's argument that the
3  number of months is illegible is without merit.

4      Defendant contends that Plaintiff's attempts to escape
5  contractual liability by arguing unconscionability are
6  "disingenuous." Plaintiff does not offer any evidence to show
7  otherwise. The procedural unconscionability prong favors the
8  Defendant.

9          **2.  Substantive Unconscionability**

10     "The court applies a sliding scale and must also examine the
11  substantive prong." *Id.* at 1043. "Substantive unconscionability
12  relates to the effect of the contract or provision." This prong
13  "focuses on the terms of the agreement and whether those terms
14  are so one-sided as to <u>shock the conscience</u>." *Kinney v. United*
15  *Healthcare Services*, 70 Cal.App.4th 1322, 1330 (1999) (emphasis
16  added).

17     Plaintiff contends that a contractual limitations clause
18  that is unenforceable for statutory claims cannot be "reasonable"
19  to time bar non-statutory claims. However, "the weight of
20  California case law overwhelmingly indicates that the six-month
21  limitation provision is not substantively unconscionable."
22  *Soltani*, 258 F.3d at 1043; *Han v. Mobil Oil Corp.*, 73 F.3d 872,
23  877 (9th Cir. 1995); *West,* 278 Cal.Rptr. At 575-76; *Beeson v.*
24  *Schloss*, 183 Cal. 618 (1920); *Hambrecht & Quist Venture Partners*
25  *v. Am. Med. Int'l, Inc.*, 38 Cal.App.4th 1532 (1995) (citing
26  cases). The Employment Agreement's six-month limitation is not
27  substantively unconscionable under California law.

28     After weighing both procedural and substantive prongs

                              **19**

1   together, the employment agreement's six-month limitation
2   provision is enforceable.  Because Counts II and III are barred
3   by the contractual six-month statute of limitations and the
4   limitation is not unconscionable, Defendant's motion for summary
5   judgment as to Counts II and III is **GRANTED**.

6

7   ## III.  "At-will" Employment

8        Even if the Employment Agreement did not provide a six-month
9   state of limitations, Plaintiff's second and third claims fail
10  because he was an "at-will" employee.

11       "An employment, having no specified term, may be terminated
12  at the will of either party."  Labor Code § 2922.  At-will
13  employment is presumed "if the parties have made no express oral
14  or written agreement specifying the length of employment or the
15  grounds for termination."  *Camp v. Jeffer, Mangels, Butler &*
16  *Marmaro*, 35 Cal. App. 4th 620, 629 (1995).  Employees may also
17  agree to "at-will" employment by signing a written acknowledgment
18  form containing the express term.  *Id.*

19       Here, the Employment Agreement expressly indicates
20  Plaintiff's "at-will" status.  Either party could terminate his
21  employment at any time and for any reason, with or without cause.
22  Paragraph Eleven, one of only four paragraphs of the contract
23  printed in capital letters, states:

24       "I ALSO AGREE THAT MY EMPLOYMENT AND COMPENSATION CAN
        BE TERMINATED <u>WITH OR WITHOUT CAUSE</u> AND WITHOUT NOTICE
25       OR LIABILITY WHATSOEVER, <u>AT ANY TIME</u>, AT EITHER MY OR
        THE COMPANY'S OPTION.  I FURTHER UNDERSTAND THAT NO
26       MANAGER OR REPRESENTATIVE OF THE COMPANY, OTHER THAN
        THE CEO, OR ANY SENIOR VICE PRESIDENT DESIGNATED BY THE
27       CEO, HAS ANY AUTHORITY TO ENTER INTO ANY AGREEMENT FOR
        EMPLOYMENT WITH ME FOR ANY SPECIFIED PERIOD OF TIME OR
28       TO AMEND THIS AGREEMENT IN ANY MANNER.  MOREOVER, ANY

                                    20

SUCH AMENDMENTS SHALL BE IN WRITING.  NOTHING IN THIS AGREEMENT, NOR ANY DOCUMENTATION OR OTHER COMMUNICATION FROM THE COMPANY, SHALL AFFECT MY EMPLOYMENT <u>AT WILL STATUS</u>."

Doc. 40, Ex. B to David Wilson's Declaration. (Emphasis added).

An express at-will agreement precludes the existence of an implied contract requiring good cause for termination.  *Camp*, 35 Cal. App. 4th at 630.  "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results."  *Id*.  "The express term is controlling even if it is not contained in an integrated employment contract."  *Id*.  Here, the Employment Agreement expressly provides for Plaintiff's "at-will" status.  As a matter of law, Plaintiff cannot bring a claim for breach of the implied contract to terminate for good cause.

Plaintiff's "at-will" employment also prevents him from recovering any damages for Count III, breach of the covenant of good faith and fair dealing.  "The covenant of good faith and fair dealing cannot be used to imply an obligation which would completely obliterate a right [to terminate an at-will employee], expressly provided by a written contract."  *Halvorsen v. Aramark Uniform Services, Inc.*, 65 Cal. App. 4th 1383, 1390 (1998).  In *Halvorsen*, the court reasoned that "as a general matter, implied terms should never be read to vary express terms."  *Id*.  Here, the Employment Agreement expressly provides for Plaintiff's termination "at any time," "with or without cause".

//
//

21

## CONCLUSION

For the reasons set forth above,

- As to Count I, Defendants' motion for summary judgment is **DENIED.**

- As to Count I, Plaintiff's motion for summary judgment is **DENIED.**

- As to Counts II and III, Defendants' motion for summary judgment is **GRANTED.**

SO ORDERED.

Dated: April 12, 2005                    /s/ OLIVER W. WANGER

_____

                                         **Oliver W. Wanger**
                                 **UNITED STATES DISTRICT JUDGE**

22

# EXHIBIT F

LEXSEE



Caution
As of: Jun 03, 2014

CHERYL BADGETT, Plaintiff, v. FEDERAL EXPRESS CORPORATION,
Defendant.

1:04CV220

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

378 F. Supp. 2d 613; 2005 U.S. Dist. LEXIS 19307

April 7, 2005, Decided
April 7, 2005, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff former employee filed suit against defendant former employer alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.; 42 U.S.C.S. § 1981; and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C.S. § 2601 et seq. The employee also alleged claims of intentional infliction of emotional distress and negligent infliction of emotional distress. The employer moved for summary judgment.

OVERVIEW: The employer argued that the employee's emotional distress, § 1981, and FMLA claims were time barred because the employee's employment agreement contained a six-month limitations clause for any claims brought against the employer and the employee did not file suit until nearly 22 months after her termination. The court first found that there was no statutory prohibition to contractual limitations clauses. Next, the court found that a North Carolina court would consider the limitations clause at issue reasonable under the circumstances. Regarding the employee's Title VII retaliation claim, the court found that the employee was terminated one week after the conclusion of a trial against her employer based upon alleged Title VII violations. Furthermore, the

employee's participation in the Title VII suit against the employer was referenced in the termination letter several times. Next, the court found that the employee provided evidence that she was wrongfully terminated because her leave was protected under the FMLA. Finally, the court found that a reasonable jury could find that the employee submitted her medical certification within a reasonable time under three theories.

OUTCOME: The employer's motion was granted in part as to the employee's claims for discrimination under § 1981, retaliation under the FMLA, intentional infliction of emotional distress, and negligent infliction of emotional distress. The employer's motion was denied as to the employee's claim for retaliation under Title VII.

CORE TERMS: termination, certification, emotional distress, contractual limitations, retaliation, Mem Law Opp'n Def, statutes of limitations, summary judgment, infliction, protected activity, shorter, reasonable time, limitations period, manager, return to work, prima facie case, documentation, unpaid, notice, sick, nondiscriminatory reasons, terminated, lawsuit, matter of law, last week, genuine issue, reasonable jury, proffered reasons, reasonableness, prepare

LexisNexis(R) Headnotes

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 68 of 165

378 F. Supp. 2d 613, *; 2005 U.S. Dist. LEXIS 19307, **

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > General Overview*

[HN1]Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c). The basic question in a summary judgment inquiry is whether the evidence is so one-sided that one party must prevail as a matter of law. Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented. A court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. Although the court must view the facts in the light most favorable to the nonmovant, bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*

[HN2]On a motion for summary judgment, if the nonmoving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is proper because a complete failure of proof on an essential element renders all other facts immaterial. While the court must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law.

*Contracts Law > Contract Conditions & Provisions*
*Contracts Law > Defenses > Statutes of Limitations*
*Governments > Legislation > Types of Statutes*

[HN3]It is a well-settled principle that parties may agree to a limitations period shorter than that provided by state law. The general rule has been stated, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time

for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period. This rule reflects two axioms. First, it reflects the importance of the parties' freedom of contract absent clear policy to the contrary. Second, it reflects the policy underlying statutes of limitations, namely to encourage promptness in bringing actions so as to avoid a loss of evidence from the death or disappearance of witnesses, destruction of documents, or failure of memory. Thus, because statutes of limitations do not open a window to suit, but instead close a door, there is nothing in the policy or language of statutes of limitations which inhibits parties from stipulating for a shorter period within which to assert their respective claims.

*Contracts Law > Contract Conditions & Provisions*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN4]The United States Court of Appeals for the Fourth Circuit has adhered to the general principle that parties may contract for shorter limitations periods, noting it is well settled that such a provision, if reasonable in extent, is within the power of the parties and is binding upon them, even if the stipulated period is shorter than set up in the statutes of limitations otherwise applicable. It has been applied within the circuit to bar various state and common law claims.

*Contracts Law > Contract Conditions & Provisions*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN5]The Supreme Court of North Carolina has honored limitations provisions to bar state law claims in the absence of a statute explicitly disallowing them. They have been upheld by North Carolina courts in a wide array of factual scenarios.

*Contracts Law > Contract Conditions & Provisions*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN6]The general principle allowing contractual limitations, if reasonable, applies equally to federal causes of action, because there is no principled reason for distinguishing between state and federal statutes of limitations. Thus, federal courts across the country, including those within the United States Court of Appeals for the Fourth Circuit, have upheld contractual limitations

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 69 of 165

378 F. Supp. 2d 613, *; 2005 U.S. Dist. LEXIS 19307, **

to bar claims under numerous federal statutes.

*Contracts Law > Contract Conditions & Provisions > General Overview*
*Contracts Law > Defenses > Statutes of Limitations*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > General Overview*

[HN7]In determining whether the limitations clause contained in an employment agreement is enforceable, the court must first decide, as to each cause of action, whether a statute prohibits the application of the limitations clause. A "controlling statute to the contrary" means a statute that explicitly proscribes a contractual limitations clause. If there is such a statute, the limitations clause cannot be enforced as to that claim. If no such statute exists, however, a court must then determine whether the limitations clause at issue is reasonable under the circumstances. Both the issue of whether a limitations clause is proscribed and whether it is reasonable are matters of law.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > General Overview*

[HN8]In determining whether the limitations clause contained in an employment agreement is enforceable, reasonableness is not subject to well-defined or commonly accepted tests or standards, but usually depends on all the facts and circumstances of a particular case. However, courts have held the reasonableness of limitations clauses depends upon whether they show imposition or undue advantage, and whether they afford a plaintiff sufficient opportunity to investigate claims and prepare for the controversy, so as not to essentially abrogate the right of action.

*Contracts Law > Defenses > Statutes of Limitations*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*

[HN9]Claims for emotional distress in North Carolina fall within the general three-year statute of limitations for injuries or rights not arising out of contract. That statute contains no language disavowing contractual limitations

shorter than the statutory period. N.C. Gen. Stat. § 1-52(5).

*Civil Rights Law > Contractual Relations & Housing > Civil Rights Act of 1866*
*Civil Rights Law > Practice & Procedure > Limitation Periods*
*Contracts Law > Defenses > Statutes of Limitations*

[HN10]The Civil Rights Act of 1866 does not contain its own statute of limitations. A plaintiff's claim under 42 U.S.C.S. § 1981 falls within the general four-year statute of limitations for federal causes of action which was enacted in 1990. 28 U.S.C.S. § 1658. Neither the Civil Rights Act of 1866 nor the applicable statute of limitations disavows or limits the effectiveness of contractual limitations clauses. Several courts have come to the same conclusion.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*

[HN11]A plaintiff's Family and Medical Leave Act of 1993 claim is controlled by an internal statute of limitations of two years for typical violations or three years for willful violations. 29 U.S.C.S. § 2617(c)(1)-(2). Although nothing in the statute expressly prohibits the shortening of the limitations period, one court has found an implied policy against contractual limitations within the supporting federal regulations.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*

[HN12]It seems unquestionable from the underlying policy that statutes of limitations are not "rights" given to claimants and thus protected by the Family and Medical Leave Act of 1993, but more correctly exist for the protection of defendants.

*Commercial Law (UCC) > Sales (Article 2) > Contract Terms > Unconscionable Agreements*
*Commercial Law (UCC) > Sales (Article 2) > Form, Formation & Readjustment > General Overview*
*Contracts Law > Defenses > Unconscionability > General Overview*

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 70 of 165

378 F. Supp. 2d 613, *; 2005 U.S. Dist. LEXIS 19307, **

[HN13]The term "unconscionable" is somewhat broader in North Carolina than "reasonable," as unconscionability encompasses procedural and substantive reasonableness. Therefore, if a contract is reasonable, it cannot as a matter of definition be unconscionable.

*Contracts Law > Contract Conditions & Provisions*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Statutes of Limitations*
[HN14]While it is true that North Carolina courts have not upheld contractual limitations clauses of periods less than one year, neither have they deemed them per se unreasonable. North Carolina courts have not encountered issues of enforceability regarding limitations clauses of this duration. The North Carolina legislature, however, does not oppose six-month limitations periods. North Carolina has several six-month statutes of limitations affecting claims by employees. North Carolina statutes require employees bringing employment discrimination claims under the Persons with Disabilities Protection Act to bring civil actions within 180 days. N.C. Gen. Stat. § 168A-12. Employees believing they have been discriminated against because of their AIDS or HIV status are limited to a 180-day period. N.C. Gen. Stat. § 130A-148(i). So too are employees who are wrongfully discharged for instituting a worker's compensation claim. N.C. Gen. Stat. § 1-55. A similar period limits the time an employee can file complaints of discrimination with the North Carolina Department of Labor. N.C. Gen. Stat. § 95-242.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN15]The very nature of the law is that causes of action carry with them different limitations periods.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN16]See 42 U.S.C.S. § 2000e-3.

*Evidence > Procedural Considerations > Burdens of Production*
*Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion*

*Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof*
[HN17]An employee lacking direct evidence of retaliation may utilize the McDonnell Douglas burden shifting analysis to prove a claim of retaliation. Under the McDonnell Douglas proof scheme, a plaintiff must first establish a prima facie case of retaliation. After the plaintiff sets forth a prima facie case, the burden of production shifts and the employer must respond with evidence that it acted with a legitimate nondiscriminatory reason. If the employer makes this showing, the burden of production shifts back to the plaintiff, who must present evidence to prove that the defendant's articulated reason was only a pretext for unlawful discrimination. Although the burden of production changes, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN18]The beginning step of a court's analysis under the McDonnell Douglas analysis is whether plaintiff has established a prima facie case. To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action by her employer; and (3) a causal connection existed between the protected activity and the adverse action.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN19]In the context of a retaliation claim, the United States Court of Appeals for the Fourth Circuit has held the decisionmaker's knowledge of the protected activity and the timing of the adverse employment action are two factors helpful in determining causation. Typically, a lengthy time lapse between the employer's awareness of the protected activity and the allegedly retaliatory termination eliminates the inference of causation. Where the protected activity is continual in nature, courts should

look to the latest protected activity when determining whether temporal proximity supports causation.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN20]In the context of a retaliation claim, the second step of the McDonnell Douglas proof scheme is whether the employer has proffered a legitimate, nondiscriminatory reason. The employer must only introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN21]The final, and most contested, step of the McDonnell Douglas proof scheme is whether the evidence taken in the light most favorable to plaintiff is sufficient for a reasonable jury to determine that the employer's articulated reason was only a pretext for unlawful discrimination.

*Civil Procedure > Summary Judgment > Evidence*
*Evidence > Relevance > Circumstantial & Direct Evidence*
*Labor & Employment Law > Wrongful Termination > General Overview*
[HN22]A plaintiff can prove pretext by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation. If a plaintiff's prima facie case is strong and is combined with sufficient evidence to find the employer's proffered justification false, summary judgment should be denied. A mere mistake of fact by an employer which leads to a wrongful termination is not itself evidence of falsity or discriminatory motive. Instead, the existence of mendacity is of particular weight. Courts have considered incorrect reasons for termination when coupled with other evidence to show the disingenuousness of the proffered reason for termination.

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Serious Health Conditions*
[HN23]The Family and Medical Leave Act of 1993

(FMLA) entitles a qualified employee to take up to 12 work weeks of unpaid leave per year, for among other reasons, because the employee is suffering from a serious health condition. 29 U.S.C.S. § 2612(a)(1). To ensure employees can take full advantage of the FMLA's leave provisions, the act prohibits employers from interfering with or denying an employee's exercise of her rights under the FMLA and from discharging such an employee. 29 U.S.C.S. § 2615(a)(1), (2).

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Denials & Requests*
[HN24]Employers are obligated to communicate with employees regarding their rights under the Family and Medical Leave Act of 1993 (FMLA). Regulations require that each time the employee requests leave, the employer must provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. 29 C.F.R. § 825.301(b)(1). The employer's written notice must be made within a reasonable time after notice of the need for leave is given by the employee -- within one or two business days if feasible. 29 C.F.R. § 925.301(c). One of the explanations necessary to the notice is any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so. 29 C.F.R. § 825.301(b)(1)(ii). Oral notice of medical certification, however, is also acceptable. Additionally, employers must designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee. 29 C.F.R. § 825.208(a).

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Denials & Requests*
[HN25]Employees have obligations under the Family and Medical Leave Act of 1993 (FMLA). During an FMLA leave period, an employee may be required to report periodically on her status and intent to return to work. 29 C.F.R. § 825.309(a). An employee may also be required to support her FMLA leave for a serious medical condition by a certification issued by a health care provider, but the employer must give individual notice of

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 72 of 165

378 F. Supp. 2d 613, *; 2005 U.S. Dist. LEXIS 19307, **

the need for certification each time it is necessary. 29 C.F.R. § 825.305(a). When an employer requests medical certification, it must also advise the employee of the potential consequences of an employee's failure to provide adequate certification. 29 C.F.R. § 825.305(d). When leave is not foreseeable, an employee must provide certification within the time frame requested by the employer, but not less than 15 days from the employer's request or within a reasonable time under the circumstances. 29 C.F.R. § 825.311(b). If an employee fails to provide a medical certification within a reasonable time, the employer may delay the employee's continuation of FMLA leave. 29 C.F.R. § 825.311(b). If the employee never produces the certification, the leave is not considered FMLA leave. 29 C.F.R. §§ 825.311(b), 825.312(b).

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*

[HN26]In the context of the Family and Medical Leave Act of 1993, anxiety, depression, and sleeplessness have been held to be symptoms of serious medical conditions.

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Denials & Requests*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Remedies*

[HN27]The Family and Medical Leave Act of 1993 (FMLA) regulations provide that if an employee fails to provide a medical certification within a reasonable time, the employer may delay the employee's continuation of FMLA. 29 C.F.R. § 825.311(b). Only if the employee never produces the certification may the employer consider the leave not covered under the FMLA. 29 C.F.R. §§ 825.311(b), 825.312(b).

**COUNSEL:** [**1] For CHERYL BADGETT, Plaintiff: JAMES EDWARD HAIRSTON, JR., LAW OFFICES OF FLORENCE BOWENS, DURHAM, NC.

For FEDERAL EXPRESS CORPORATION, Defendant: EDWARD J. EFKEMAN, KAREN V. MCMANUS, FEDERAL EXPRESS CORP., MEMPHIS, TN.; JILL STRICKLIN COX, JOHN J. DOYLE, JR., CONSTANGY BROOKS & SMITH, LLC, WINSTON-SALEM, NC.

**JUDGES:** William L. Osteen Jr., United States District Judge.

**OPINION BY:** William L. Osteen Jr.

**OPINION**

[*616] *MEMORANDUM OPINION and ORDER*

OSTEEN, District Judge

Plaintiff Cheryl Badgett, a resident of North Carolina, brings this federal question and diversity action against her former employer, Defendant Federal Express Corporation ("FedEx"), a Delaware corporation with its principal place of business in Tennessee. Plaintiff asserts retaliation based on race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.,* as amended; retaliation based on race in violation of Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981; retaliation for and interference with the exercise of her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 [**2] *et seq.;* intentional infliction of emotional distress; and negligent infliction of emotional distress. This matter is now before the court on Defendant's Motion for Summary Judgment.

For the reasons set forth herein, Defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part.

**I. BACKGROUND**

The following facts are presented in the light most favorable to Plaintiff. [1]

> 1   In considering the motion currently before it, the court must construe the facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505, 2513 (1986); *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

Plaintiff Cheryl Badgett, a black female, applied for employment with Defendant FedEx on July 21, 1992, in New York. In conjunction with her application, Plaintiff was presented an Employment Agreement ("Agreement") that contains 15 numbered paragraphs. Below the title, the Agreement instructs in [**3] bold and capitalized letters, **"IMPORTANT - PLEASE READ [*617]**

Page 6

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 73 of 165

378 F. Supp. 2d 613, *617; 2005 U.S. Dist. LEXIS 19307, **3

AND SIGN BELOW." (App. Supp. Def.'s Mot. Summ. J. Ex. 6.) Paragraph 15, located directly above the signature line, provides in part:

> To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

(*Id.*) Plaintiff read and signed the Agreement, acknowledging that she "thoroughly understood its content." (*Id.;* Badgett Dep. July 16, 2002, at 18-19.) Plaintiff was subsequently hired by FedEx in or around October 1992, and continued to work with FedEx in New York until she transferred to the Greensboro, North Carolina, FedEx station in August 1994. Plaintiff worked for FedEx as a senior customer service representative and later as a courier.

In October 2000, Plaintiff brought suit in this court against FedEx and several individual managers, alleging claims under Title VII and various state law causes of action ("Badgett I"). [2] On March 8, 2002, Magistrate Judge Sharp recommended that FedEx be granted summary judgment [**4] on all of Plaintiff's claims, except for racially hostile work environment under Title VII. *See Badgett v. Federal Express Corp.,* No. 1:00-CV-1053 (M.D.N.C. March 8, 2002) (recommendations and order granting partial summary judgment). Trial was set for April 15, 2002.

> 2 In Badgett I, Plaintiff brought claims arising from her allegedly discriminatory and hostile work environment. The matter now before the court is the second lawsuit brought by Plaintiff against FedEx. This matter largely rests upon retaliation and is based on facts and legal theories that arose subsequent to the events covered by Badgett I.

By the middle of March 2002, stress from her job and the upcoming trial in Badgett I began to tax Plaintiff. Plaintiff was "run down," not sleeping more than an hour at night, and mentally and physically tired. (Badgett Dep. Sept. 27, 2004, at 74 ("Badgett Dep.").) In this condition, Plaintiff considered herself "dangerous" while driving a truck for FedEx because her exhaustion resulted in her

"careening [**5] in and out off the road and . . . just kind of wanting to doze." (*Id.* at 89.) Plaintiff told Gregg Taylor, the personnel manager, about her condition and Taylor suggested that Plaintiff "put something in writing" about unpaid personal leave. (*Id.* at 96.)

On Wednesday, March 20, 2002, Plaintiff gave Barry Scales, Plaintiff's boss and local operations manager, a letter requesting an unpaid personal leave of absence beginning that day and continuing up to April 22. Plaintiff did not phrase her request in terms of a medical problem, but wrote:

> As I'm sure you're aware of, I have an upcoming court date that's approximately three weeks away. Because of the intense nature of this legal proceeding, with the company, it would be in the best interest of both myself, as well as FedEx, to grant this leave.
>
> . . . .
>
> This requested time will allow me to gather myself, focus on the immediate future and ultimately return, after this time off, to the quality and level of performance that my records clearly indicate.

(Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 6.) Scales referred the matter to Stan Tolliver, FedEx's compliance officer. (Scales Dep. at 36.)

By Monday, [**6] March 25, Plaintiff "still hadn't gotten any sleep." (Badgett Dep. at 94.) Plaintiff called Scales before her shift started and informed him about her sleeping problems and that she was using [*618] a sick day. (*Id.*) That same day, FedEx denied Plaintiff's request for unpaid personal leave. By letter, Michael Saladino, the district managing director, informed Plaintiff:

> I received your correspondence requesting a Personal Leave to prepare for your upcoming court case. I must deny the leave based on those reasons. I will direct your manager to allow you time off for any court appearances that are necessary. Please submit a list of court dates for your manager's review. The station cannot absorb the number of hours that it would

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 74 of 165

378 F. Supp. 2d 613, *618; 2005 U.S. Dist. LEXIS 19307, **6

take to cover your shift for an entire month. The Personal Leave Policy permits discretion in the granting of leaves if there is no negative impact on the business. Unfortunately in this case additional overtime would result which the station cannot afford.

I have attached a copy of the Personal Leave Policy, P 1-55 for your reference along with a copy of your request.

(Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 7.) Plaintiff called in sick each [**7] day for the remainder of the week of March 25.

On Monday, April 1, 2002, Plaintiff again called in sick to Scales. (Badgett Dep. at 100.) This time, because Plaintiff had exhausted the five days of paid sick leave available to her, Plaintiff told Scales that she wanted to take "family leave." (Id. at 101.) Scales was not familiar with the leave policy and referred her to Tolliver. (Id. at 102.) Plaintiff tried calling Tolliver on April 1, but she could not reach him and left messages on Tolliver's voice mail and with his receptionist. (Id. at 100.) Because Plaintiff could not reach Tolliver, she again called Scales and asked him for the FMLA certification form because she "needed [her] doctor to draft [a] letter so that it reflected the information on the certification." (Id. at 102, 109.) The only form Scales could provide Plaintiff was a sample FMLA certification form contained in FedEx's policy manual. (Id. at 110.) Scales faxed the two-page document to Plaintiff that day. (Scales Dep. at 58.) Tolliver never returned Plaintiff's call of April 1. (Badgett Dep. at 101.)

Sometime between March 20 and April 2, 2002, Plaintiff called James Wells Jr., M.D., and [**8] told him about her sleeping problems. Dr. Wells had seen Plaintiff in August 2000. (Id. at 92-97.) Dr. Wells' notes reflect Plaintiff was "not sleeping, not handling this well," wanted a medication prescription called in to "Village Pharmacy," and "wanted to see [him] for an appointment." (Wells Dep. at 21-22.) Dr. Wells prescribed Plaintiff Ambien, a sleeping aid, "because of the circumstances associated with the situation at work and the impending trial." (Id. at 33-34.) Dr. Wells scheduled an appointment with Plaintiff for April 12, 2002.

During her absence on "family leave," Plaintiff kept

in regular contact with FedEx. Each day the week of April 1, 2002, Plaintiff called Scales, who continued to refer her to Tolliver. (Badgett Dep. at 101.) Plaintiff would then try to call Tolliver, without avail. (Id.) There is no evidence that Tolliver ever returned Plaintiff's calls.

On April 12, 2002, Plaintiff had her appointment with Dr. Wells. Dr. Wells remembers Plaintiff was "very anxious, under a lot of stress, and essentially was in a position of, [he] thought, such stress that work was not an option right then." (Wells Dep. at 13.) He thought "anticipation of the [**9] trial definitely made her situation -- her emotional state more labile. . . . [and] she was a lot more depressed and anxious than she had been prior to that time." (Id. at 33.) Dr. Wells wrote three prescriptions for Plaintiff on April 12 to help her cope with her stress, anxiety, and sleeplessness, one of which was Celexa, an [*619] anti-depressant. (Id. at 23, 25.) Dr. Wells also wrote and signed a letter that day addressed "To Whom It May Concern," stating in its entirety: "Ms. Cheryl Badgett is currently unable to work due to a medical condition." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 10.) Dr. Wells gave the letter to Plaintiff.

That same day, Plaintiff faxed the letter to Scales and Tolliver from her home. (Badgett Dep. at 119.) Plaintiff's copy of the letter reflects it was received by or transmitted from Plaintiff's fax machine, but FedEx denies it was received at that time. Scales does not deny he received the April 12, 2002, letter, but does not recall whether he received it on April 12. (Scales Dep. at 68.) William Topley, Scales' manager, does not recall ever seeing or discussing the letter. (Topley Dep. at 41.)

Plaintiff did not return to work prior to the [**10] beginning of trial in Badgett I. Jury selection began and was completed on Thursday, April 11, 2002. The trial began Monday, April 15, and at the close of Plaintiff's case on April 16, the court entered a verdict in favor of FedEx. See Badgett v. Federal Express Corp., No. 1:00-CV-1053 (M.D.N.C. April 16, 2002) (minute entry granting FedEx's oral motion for directed verdict). Plaintiff did not return to work after the trial.

On Thursday, April 18, 2002, Plaintiff sent a fax to Dr. Wells attaching the two-page FMLA certification form. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 8; Wells Dep. at 30.) On the fax cover sheet, Plaintiff wrote:

Dr. Wells, though I am on an unpaid

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 75 of 165

378 F. Supp. 2d 613, *619; 2005 U.S. Dist. LEXIS 19307, **10

leave, my company, Federal Express is requiring me to submit a Doctor's note regarding my time away from work. My manager, Barry Scales has informed me that unless I do so with urgency, a letter will be placed in my file upon my return to work. It must be dated from the third day I called in sick, that was the 27th of March, 2002. I also need these forms filled out at your earliest convenience. They will allow the unpaid leave not to be held against me under the "Family Leave Act."

(App. [**11] Supp. Def.'s Mot. Summ. J. Ex. 11.)

Plaintiff did not return to work on Monday, April 22, or Tuesday, April 23, 2002, as she was under subpoena to testify in an unrelated criminal trial. (Badgett Dep. at 70.) Scales knew Plaintiff was under subpoena in a criminal case those two days. (Scales Dep. at 50.) On April 23, still not having received the completed FMLA certification form from Plaintiff or her doctor, Scales terminated Plaintiff's employment by letter:

> This letter is sent to inform you of your immediate termination, effective April 23, 2002, for violation of Policy P 1-20 and Policy P 1-8. The specific reasons for the termination are outlined below.

> As you know, you requested a personal leave of absence without pay (PLOA) to prepare for a trial in which you were suing FEDEX. The PLOA was denied. You then represented that you were ill and the company paid you for 5 days of medical absence consistent with policy. You were told, in writing, medical substantiation was needed as provided by Policy P 1-8. It has now been more than 30 days and you have neither returned to work nor provided medical documentation. Moreover, you were not too incapacitated to attend the [**12] trial last week which ended on Tuesday, April 16, 2002. At that time you stated you would return to work Monday, April 22, 2002. You also committed last week to fax or hand deliver the medical documentation. FEDEX still has nothing

but your word to support your medical absence. Your conduct is in violation of the policies [*620] listed above and will no longer be tolerated. You have been given the benefit of doubt and ample opportunity to comply with policy.

> I also need to inform you that it was brought to my attention last week that there is substantial evidence that you violated Policy P 2-5, (Acceptable Conduct Policy) during the course for [sic] your lawsuit. Had you provided suitable medical documentation it would have been necessary to address these issues prior to returning you to work.

(Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 5.)

On Thursday, April 25, 2002, Dr. Wells completed the FMLA certification form on behalf of Plaintiff and faxed it to FedEx. (Wells Dep. at 16, 30.) The FMLA certification form reflects that Dr. Wells considered Plaintiff's condition of "extreme anxiety and depression with significant emotional lability" a "serious health condition." (Pl. [**13] 's Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 8.) Dr. Wells wrote Plaintiff's condition commenced on March 25, 2002, and "she is currently unable to work and may not improve sufficiently for work for several weeks." (Id.) Dr. Wells suggested treatment on a monthly basis for six months, including "psychotherapy and psychotropic medication management." (Id.) Finally, the certification form reflects that Plaintiff was then unable to perform work of any kind. (Id.) There is no evidence Dr. Wells was aware of Plaintiff's termination on April 23, 2002, when he completed and transmitted the FMLA certification form. Dr. Wells continued to treat Plaintiff by medication and office visits after her termination. (Wells Dep. at 25; Compl. P 17.)

After exhausting her internal and administrative remedies, Plaintiff filed suit in the Superior Court of the State of North Carolina, Caswell County, alleging claims under Title VII, § 1981, and the FMLA, and for intentional and negligent infliction of emotional distress. Defendants removed the suit to this court. Now before the court is Defendant's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 76 of 165

378 F. Supp. 2d 613, *620; 2005 U.S. Dist. LEXIS 19307, **13

[HN1]Summary judgment is appropriate [**14] when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548, 2552 (1986). The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505, 2512 (1986). Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented. *McLean v. Patten Cmtys., Inc.,* 332 F.3d 714, 719 (4th Cir. 2003) (citing *Anderson,* 477 U.S. at 247-48, 106 S. Ct. at 2509-10). A court "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir. 2004) (citing *Thompson v. Aluminum Co. of Am.,* 276 F.3d 651, 656 (4th Cir. 2002)). [**15] Although the court must view the facts in the light most favorable to the nonmovant, *see Anderson,* 477 U.S. at 255, 106 S. Ct. at 2513, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." *Solis v. Prince George's County,* 153 F. Supp. 2d 793, 807 (D. Md. 2001).

[*621] [HN2]If the nonmoving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is proper because a "complete failure of proof" on an essential element "renders all other facts immaterial." *Celotex,* 477 U.S. at 322-23, 106 S. Ct. at 2552. While the court "must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958-59 (4th Cir. 1996) (citing *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir. 1987)).

## III. ANALYSIS

Plaintiff brings five causes of action. In [**16] Count I, she claims she was retaliated against on the basis of race and sex for availing herself of her federally protected Title VII rights. In Count II, she claims she was

retaliated against on the basis of race in violation of § 1981. [3] In Count III, she claims retaliation for, and interference with, exercising her rights under the FMLA. In Counts IV and V, Plaintiff claims intentional infliction and negligent infliction of emotional distress, respectively, based upon FedEx's allegedly extreme and outrageous conduct toward her.

> 3 Plaintiff's § 1981 claim is based upon facts not outlined above. Plaintiff alleges that during November 2000, she came into contact with human blood while handling a hazardous FedEx package. (Compl. P 9.) As a result of that exposure, Plaintiff had to submit herself for regular testing for AIDS and hepatitis and she was removed from working with hazardous material. (*Id.* P 10.) Plaintiff later applied to be re-certified as a dangerous goods/spill clean up specialist, but her request was denied. (*Id.* P 28.) The position was given to a white female with no experience in handling dangerous goods. (*Id.*) Plaintiff alleges her denial was designed to retaliate against her for exercising her federal civil rights. (*Id.* P 28.)

[**17] FedEx asserts three arguments in support of its motion for complete summary judgment. First, it argues Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, § 1981, and FMLA claims are time barred by the six-month limitations clause contained in Plaintiff's Employment Agreement. Second, it contends Plaintiff cannot prevail on her Title VII and § 1981 claims because, even if she can establish a prima facie case of retaliatory discharge, she cannot show FedEx's proffered reasons for termination were a pretext for discrimination. Third, FedEx asserts Plaintiff cannot establish essential elements of her emotional distress claims.

## A. The Six-Month Contractual Limitations Clause

FedEx argues that Plaintiff's emotional distress, § 1981, and FMLA claims are time barred because Plaintiff's Employment Agreement contained a six-month limitations clause for any claims brought against FedEx, and Plaintiff did not file suit until nearly 22 months after her termination. (Def.'s Mem. Supp. Mot. Summ. J. at 6-8.) FedEx argues the clause should be enforced because North Carolina and federal law recognize contractual limitations clauses and [**18] the clause is reasonable under the circumstances. (*Id.* at 7.) Plaintiff argues

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 77 of 165

378 F. Supp. 2d 613, *621; 2005 U.S. Dist. LEXIS 19307, **18

against enforcement because none of the contractual limitations upheld by North Carolina courts have been six months or less. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 9-11.) Plaintiff also argues that the six-month contractual limitations clause is unconscionable or unreasonable under the circumstances and would require her to sue on her emotional [*622] distress, § 1981, and FMLA claims separately from her Title VII claim. (Id. at 10-11.)

The parties' arguments raise two issues of law. First, the court must determine whether parties may agree to a shorter limitations period than that provided by statute. Second, if the law allows such an agreement, the court must determine if the contractual limitations clause at issue here is enforceable.

## 1. Whether Parties May Agree to a Shorter Statute of Limitations for State and Federal Claims

[HN3]It is a well-settled principle that parties may agree to a limitations period shorter than that provided by state law. See, e.g., Missouri, Kan. & Tex. Ry. Co. v. Harriman Bros., 227 U.S. 657, 673, 57 L. Ed. 690, 33 S. Ct. 397, 401 (1913). The general rule has [**19] been stated,

> in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 608, 91 L. Ed. 1687, 67 S. Ct. 1355, 1365-66 (1947). This rule reflects two axioms. First, it reflects the importance of the parties' freedom of contract absent clear policy to the contrary. MFS Int'l, Inc. v. International Telecom Ltd., 50 F. Supp. 2d 517, 521 (E.D. Va. 1999). Second, it reflects the policy underlying statutes of limitations, namely to encourage promptness in bringing actions so as to avoid a loss of evidence from the death or disappearance of witnesses, destruction of documents, or failure of memory. Harriman Bros., 227 U.S. at 672, 33 S. Ct. at 401. Thus, because statutes of limitations do not open a window to suit, but instead close a door, there is nothing in the policy or language of

statutes of limitations "which inhibits [**20] parties from stipulating for a shorter period within which to assert their respective claims." Wolfe, 331 U.S. at 608 n.20, 67 S. Ct. at 1365 n.20.

[HN4]The Fourth Circuit has adhered to the general principle that parties may contract for shorter limitations periods based on the same rationale, noting "it is well settled that such a provision, if reasonable in extent, is within the power of the parties and is binding upon them, even if the stipulated period is shorter than set up in the statutes of limitation[s] otherwise applicable." Atlantic Coast Line Ry. Co. v. Pope, 119 F.2d 39, 44 (4th Cir. 1941). It has been applied within the circuit to bar various state and common law claims. See, e.g., The Turret Crown, 284 F. 439, 443 (4th Cir. 1922) (upholding a three-month limitations clause in a carriage contract to bar a claim for breach of the contract); Johnson v. ADY Sec. Sys., Inc., 1999 U.S. Dist. LEXIS 5605, No. 3:96CV434-MCK, 1999 WL 1940046, *4 (W.D.N.C. March 10, 1999) (upholding a one-year limitations clause in a security services contract to bar claims for breach of contract, negligence, and intentional infliction of emotional distress); [**21] Hilton v. Norfolk & W. Ry. Co., 194 F. Supp. 915, 920 (S.D. W. Va. 1961) (upholding a nine-month limitations clause in a collective bargaining agreement to bar a claim for breach of the agreement).

[HN5]The Supreme Court of North Carolina has honored such limitations provisions to bar state law claims in the absence of a statute explicitly disallowing them. See, e.g., Beard v. Sovereign Lodge, W.O.W., 184 N.C. 154, 113 S.E. 661 (1922) (upholding a 90-day limitations clause in a fraternal benefit certificate to bar death benefit claim; noting that it has "conform[ed] its [*623] decisions to the great weight of authority, [and] has uniformly adhered to the doctrine"). They have been upheld by North Carolina courts in a wide array of factual scenarios. See, e.g., Town of Pineville v. Atkinson, Dyer, Watson Architects, P.A., 114 N.C. App. 497, 499, 442 S.E.2d 73, 74 (1994) (upholding a two-year limitations clause in a performance bond); Horne-Wilson, Inc. v. National Sur. Co., 202 N.C. 73, 161 S.E. 726 (1932) (upholding a one-year limitations clause in a contractor bond); Welch v. Phoenix Assurance Co., 192 N.C. 809, 136 S.E. 117 (1926) [**22] (upholding a one-year limitations clause in a fire insurance policy).

It is now clear that [HN6]the general principle

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 78 of 165

378 F. Supp. 2d 613, *623; 2005 U.S. Dist. LEXIS 19307, **22

allowing contractual limitations, if reasonable, applies equally to federal causes of action, because there is no "principled reason" for distinguishing between state and federal statutes of limitations. *MFS Int'l*, 50 F. Supp. 2d at 522. Thus, federal courts across the country, including those within the Fourth Circuit, have upheld contractual limitations to bar claims under numerous federal statutes. *See, e.g., Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357-59, 116 Fed. Appx. 638 (6th Cir. 2004) (§ 1981); *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F. 3d 1301, 1303-04 (11th Cir. 1998) (ERISA); *Taylor v. Western & S. Life Ins. Co.*, 966 F. 2d 1188, 1203-06 (7th Cir. 1992) (§ 1981); *Johnson v. DaimlerChrysler Corp.*, No. C.A.02-69GMS, 2003 WL 1089394, *2-3 (D. Del. March 6, 2003) (Title VII); *MFS Int'l*, 50 F. Supp. 2d at 521 (Federal Communications Act); *Koonan v. Blue Cross & Blue Shield of Va.*, 802 F. Supp. 1424, 1425 (E.D. Va. 1992) (ERISA).

[**23] Therefore, the federal law and North Carolina law allow the parties to contractually agree to shorter limitations periods than those provided by statute.

## 2. Whether the Limitations Clause Contained in the Agreement is Enforceable

The court must now apply the reasoned principles discussed above to [HN7]determine whether the limitations clause contained in the Agreement is enforceable. First the court must decide, as to each cause of action, whether a statute prohibits the application of the limitations clause. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608, 91 L. Ed. 1687, 67 S. Ct. 1355, 1365-66 (1947). A "controlling statute to the contrary" means a statute that explicitly proscribes a contractual limitations clause. *MFS Int'l, Inc. v. International Telcom Ltd.*, 50 F. Supp. 2d 517, 522 (E.D. Va. 1999). If there is such a statute, the limitations clause cannot be enforced as to that claim. If no such statute exists, however, a court must then determine whether the limitations clause at issue is reasonable under the circumstances. *See Wolfe*, 331 U.S. at 586, 608, 67 S. Ct. at 1365-66. Both the issue of whether a limitations [**24] clause is proscribed and whether it is reasonable are matters of law. *See Leigh Ellis & Co. v. Davis*, 260 U.S. 682, 689, 67 L. Ed. 460, 43 S. Ct. 243, 244 (1923) (noting that reasonableness of a limitations clause is a matter of law).

[HN8]Reasonableness is not subject to well-defined

or commonly accepted tests or standards, but usually depends on all the facts and circumstances of a particular case. *See, e.g., Government of Indonesia v. The Gen. San Martin*, 114 F. Supp. 289, 290 (S.D.N.Y. 1953); *see also,* B.H. Glenn, Annotation, *Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action*, 6 A.L.R.3d 1197 § 3 (2004). However, courts have held the reasonableness of limitations clauses depends upon whether they show imposition or undue advantage, *Capehart v. Heady*, 206 Cal. App. 2d 386, 23 Cal. Rptr. 851, 852-53 [*624] (Cal. Dist. Ct. App. 1962); the purpose of the limitations clause, *Cook v. Northern Pac. Ry. Co.*, 32 N.D. 340, 155 N.W. 867, 869 (N.D. 1915); and whether they afford a plaintiff sufficient opportunity to investigate claims and prepare for the controversy, so as not to essentially abrogate the right of action, [**25] *Order of United Commercial Travelers of Am. v. Duncan*, 221 F.2d 703, 705 (6th Cir. 1955).

### a. Statutory Prohibition

Applying the first prong of the *Wolfe* test to Plaintiff's emotional distress, § 1981, and FMLA claims, the court must determine whether a statute prohibits the application of the limitations clause. The court is aware of no statute which, expressly or impliedly, prohibits the application of the limitations clause to these claims.

[HN9]Claims for emotional distress in North Carolina fall within the general three-year statute of limitations for injuries or rights not arising out of contract. *See Holloway v. Wachovia Bank & Trust Co., N.A.*, 339 N.C. 338, 351-54, 452 S.E.2d 233, 241-42 (1994). That statute contains no language disavowing contractual limitations shorter than the statutory period. *See* N.C. Gen. Stat. § 1-52(5). The court notes that at least one other court has implicitly reached a similar conclusion with regard to intentional infliction of emotional distress. *See Johnson v. ADY Sec. Sys., Inc.*, 1999 U.S. Dist. LEXIS 5605, No. 3:96CV434-MCK, 1999 WL 1940046, *4 (W.D.N.C. March 10, 1999) (upholding a one-year limitations clause [**26] to bar claims for breach of contract, negligence, and intentional infliction of emotional distress).

[HN10]The Civil Rights Act of 1866 does not contain its own statute of limitations. *Taylor v. Western & S. Life Ins. Co.*, 966 F. 2d 1188, 1203 (7th Cir. 1992). Plaintiff's claim under § 1981 falls within the general four-year statute of limitations for federal causes of action which was enacted in 1990. *See James v. Circuit*

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 79 of 165

378 F. Supp. 2d 613, *624; 2005 U.S. Dist. LEXIS 19307, **26

*City Stores, Inc.,* 370 F.3d 417 (4th Cir. 2004); 28 U.S.C. § 1658. Neither the Civil Rights Act of 1866 nor the applicable statute of limitations disavows or limits the effectiveness of contractual limitations clauses. Several courts have come to the same conclusion. *See Thurman v. DaimlerChrysler, Inc.,* 397 F.3d 352, 357-59, 116 Fed. Appx. 638 (6th Cir. 2004) (upholding a six-month limitations clause in an employment contract to bar a plaintiff's § 1981 claim); *Taylor,* 966 F. 2d at 1205 (same; holding that by enacting § 1981 without a statute of limitations, "Congress implied that it is willing to live with a wide range of . . . rules governing limitations of action").

[HN11]Plaintiff's FMLA claim [**27] is controlled by an internal statute of limitations of two years for typical violations or three years for willful violations. *See* 29 U.S.C. § 2617(c)(1)-(2). Although nothing in the statute expressly prohibits the shortening of the limitations period, one court has found an implied policy against contractual limitations within the supporting federal regulations. In *Lewis v. Harper Hospital,* the district court examined the language of 29 C.F.R. § 825.220(a)(1), which prohibits employers from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the [FMLA]." 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002). The court also looked to 29 C.F.R. § 825.220(d), which provides that "employees cannot waive, nor may employers induce employees to waive, their rights under [the] FMLA." *Id.* After considering both sections, the court determined that imposing a six-month limitations clause "is an interference with employees' rights under the FMLA" and therefore unenforceable. *Id.* at 772-73.

[*625] The court cannot follow the logic of *Lewis.* [HN12]It seems unquestionable from the underlying [**28] policy that statutes of limitations are not "rights" given to claimants and thus protected by the FMLA, but more correctly exist for the protection of defendants. *See Order of United Commercial Travelers of Am. v. Wolfe,* 331 U.S. 586, 608, 91 L. Ed. 1687, 67 S. Ct. 1355, 1365-66 (1947); *The Turret Crown,* 284 F. 439, 443 (4th Cir. 1922). Therefore, this court cannot find that the FMLA regulations relied upon by the *Lewis* court can be read to imply a prohibition on contractual limitations clauses and joins at least one other court that has upheld contractual limitations of FMLA claims. *See Fink v. Guardsmark, LLC,* 2004 U.S. Dist. LEXIS 16970, No. CV 03-1480-BR, 2004 WL 1857114, *3-4 (D. Or. Aug.

19, 2004).

The court having found no statutory prohibition to contractual limitations clauses, Plaintiff's emotional distress, § 1981, and FMLA claims will be barred as untimely if the limitations clause is reasonable.

**b. Reasonableness of the Limitations Clause**

Applying the second prong of the *Wolfe* test to Plaintiff's emotional distress, § 1981, and FMLA claims, the court must determine whether a North Carolina court would consider the limitations clause at issue reasonable [**29] under the circumstances. [4] The court finds it would.

> 4   Plaintiff claims that the contractual limitations clause is "unconscionable." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 10.) [HN13]The term "unconscionable" is somewhat broader in North Carolina than "reasonable," as unconscionability encompasses procedural and substantive reasonableness. *See Brenner v. Little Red School House, Ltd.,* 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981). Therefore, if a contract is reasonable, it cannot as a matter of definition be unconscionable.

The court finds the limitations clause to be substantively reasonable under the circumstances. [HN14]While it is true that North Carolina courts have not upheld contractual limitations clauses of periods less than one year, neither have they deemed them *per se* unreasonable. North Carolina courts have not encountered issues of enforceability regarding limitations clauses of this duration. The North Carolina legislature, however, does not oppose six-month limitations periods. [**30] North Carolina has several six-month statutes of limitations affecting claims by employees. North Carolina statutes require employees bringing employment discrimination claims under the Persons with Disabilities Protection Act to bring civil actions within 180 days. *See* N.C. Gen. Stat. § 168A-12. Employees believing they have been discriminated against because of their AIDS or HIV status are limited to a 180-day period. *See id.* § 130A-148(i). So too are employees who are wrongfully discharged for instituting a worker's compensation claim. *See id.* § 1-55. A similar period limits the time an employee can file complaints of discrimination with the North Carolina Department of Labor. *See id.* § 95-242. Plaintiff cannot claim there is a policy against limitations

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 80 of 165

378 F. Supp. 2d 613, *625; 2005 U.S. Dist. LEXIS 19307, **30

periods of six months when the state legislature has enacted 180-day statutes of limitations in other employment scenarios.

It is not problematic that Plaintiff's emotional distress, § 1981, and FMLA claims would have a shorter limitations period than her Title VII claim. [HN15]The very nature of the law is that causes of action carry with them different limitations periods. With the widely divergent statutory limitations [**31] in North Carolina, see, e.g., N.C. Gen. Stat. §§ 1-47 to -55 (ten years to six months), the court can conceive of an almost [*626] endless number of claim combinations that would bring about the same result of which Plaintiff complains. Procedural solutions were available to ease any potential burden on Plaintiff. For instance, Plaintiff could have initially filed her emotional distress, § 1981, and FMLA claims in federal court and then added her Title VII claim later. Alternatively, Plaintiff could have filed suit and asked the court for a stay pending the outcome of her EEOC charge. The possibility of an unusually long EEOC investigation or the fact that Plaintiff could not be guaranteed a stay is not sufficient to override the well-established and widely recognized rule of law allowing such contractual limitations clauses.

The court also finds the execution of the limitations clause to be procedurally reasonable. Plaintiff read the Employment Agreement with FedEx, including the bold warning that its contents were important. (See App. Supp. Def.'s Mot. Summ. J. Ex. 6; Badgett Dep. July 16, 2002, at 18-19.) Paragraph 15, containing the limitations clause, was located directly above [**32] Plaintiff's signature. Plaintiff signed the document attesting that she "understood its content." (App. Supp. Def.'s Mot. Summ. J. Ex. 6.) There is no evidence that Plaintiff questioned the limitations clause or did not understand what she was signing. Plaintiff was free to reject the limitations clause and apply for employment elsewhere if she did not agree with the terms of her potential employment.

In the totality of the circumstances, the court can find nothing unreasonable in the contractual limitations clause and forecasts that North Carolina courts would come to a similar conclusion. The clause does not show imposition or create an undue advantage in favor of FedEx as it was clearly marked in the application process and was not forced upon Plaintiff at some time during her employment. The record is absent of any evidence that FedEx used the limitations clause for anything other than

to protect itself against the loss of evidence based on the passage of time, the very rationale of statutes of limitations. The clause afforded Plaintiff an adequate opportunity to investigate her claims and prepare for a controversy, as she was required to investigate and file for administrative action [**33] on her Title VII claims during the same time period, with which she had no trouble. Because of the procedures available to Plaintiff to join or stay her claims, the clause did not create a de facto abrogation of her claims.

The limitations clause contained in the employment contract signed by Plaintiff and FedEx, a valid contract, does not violate North Carolina or federal law and is reasonable under the circumstances. Therefore, Plaintiff's emotional distress, § 1981, and FMLA claims are barred as untimely. Summary judgment will be entered in favor of Defendant as to these claims. As a result, it is unnecessary to determine FedEx's substantive challenges to Plaintiff's emotional distress and § 1981 claims.

## B. Plaintiff's Title VII Claim

In Count I, Plaintiff claims she was retaliated against on the basis of race and sex for availing herself of her federally protected Title VII rights. She asserts she suffered unequal terms and conditions of employment and was terminated because she filed suit in Badgett I. FedEx argues it should be granted summary judgment because Plaintiff's evidence does not rebut FedEx's legitimate, nondiscriminatory reasons for termination. (See [**34] Def.'s Mem. Supp. Mot. Summ. J. at 11-12.)

Section 704 of Title VII provides in relevant part that [HN16]"it shall be an unlawful employment practice for an employer [*627] to discriminate against any of [its] employees . . . because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3. [HN17]An employee lacking direct evidence of retaliation, such as Plaintiff, may utilize the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), to prove a claim of retaliation. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Under the McDonnell Douglas proof scheme, a plaintiff must first establish a prima facie case of retaliation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2747-48 (1993). After the plaintiff sets forth a prima facie case, the burden of production shifts and the employer must respond with evidence that it acted with a legitimate nondiscriminatory reason. Id. at 506-07, 113 S. Ct. at

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 81 of 165

378 F. Supp. 2d 613, *627; 2005 U.S. Dist. LEXIS 19307, **34

2747. If the employer makes this showing, the burden of production shifts back to the plaintiff, who must present [**35] evidence to prove that the defendant's articulated reason was only a pretext for unlawful discrimination. *Id.* at 510-11, 113 S. Ct. at 2749. Although the burden of production changes, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089, 1093 (1981). The court now turns to the application of the *McDonnell Douglas* test.

[HN18]The beginning step of the court's analysis under *McDonnell Douglas* is whether Plaintiff has established a prima facie case. To establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action by her employer; and (3) a causal connection existed between the protected activity and the adverse action. *Mackey v. Shalala*, 360 F. 3d 463, 469 (4th Cir. 2004). There is no dispute that the filing of Badgett I, a lawsuit based upon unlawful employment discrimination, and the resulting trial on the merits are protected activity. *See*, [**36] *e.g.*, *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991). It is also not disputed that Plaintiff's termination on April 23, 2002, was an adverse employment action. *See, e.g., King v. Rumsfeld*, 328 F. 3d 145, 151 (4th Cir. 2003). The element at issue is the alleged causal link between Plaintiff's Title VII suit in Badgett I and her termination.

[HN19]The Fourth Circuit has held the decisionmaker's knowledge of the protected activity and the timing of the adverse employment action are two factors helpful in determining causation. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). Typically, a lengthy time lapse between the employer's awareness of the protected activity and the allegedly retaliatory termination eliminates the inference of causation. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F. 3d 653, 657 (4th Cir. 1998) (holding a three-year lapse too long to establish a causal link); *see, e.g., Causey v. Balog*, 162 F. 3d 795, 803 (4th Cir. 1998) (holding a 13-month lapse too long). Where the protected activity is continual in nature, courts should look to the latest [**37] protected activity when determining whether temporal proximity supports causation. *See, e.g., Brodetski v. Duffey*, 199 F.R.D. 14, 20 (D.D.C. 2001) (considering a plaintiff's continuing

protected activity in determining proximity).

Here, there is no doubt that both Scales and Topley knew of Plaintiff's lawsuit against FedEx at the time of her termination. As to temporal proximity, Plaintiff's termination occurred approximately two years after Plaintiff filed her [*628] EEO complaint and 18 months after she instituted Badgett I. It is important, however, that Plaintiff was terminated one week after the conclusion of trial against her employer based upon alleged Title VII violations. Furthermore, Plaintiff's participation in the Title VII suit against FedEx was referenced in the termination letter several times. The letter stated that Plaintiff was "not too incapacitated to attend the trial last week" and alleged that "substantial evidence" of additional policy violations was uncovered during trial. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 5.) FedEx's knowledge and involvement in defending the Title VII suit, the short time between the end of trial in Badgett I and her [**38] termination, and the references to Plaintiff's protected activity in the termination letter are sufficient to raise an inference that FedEx took the adverse action against Plaintiff at its next available opportunity. *See Price*, 380 F.3d at 213 (finding causation in a retaliation case based upon the defendant's knowledge of the protected activity and the taking of the adverse employment action "at the first opportunity"). Therefore, Plaintiff has made out a strong prima facie case of retaliation.

[HN20]The second step of the *McDonnell Douglas* proof scheme is whether the employer has proffered a legitimate, nondiscriminatory reason. Here, FedEx must only "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*, 509 U.S. at 509, 113 S. Ct. at 2748. FedEx's termination letter of April 23, 2002, drafted by Topley and signed by Scales, contains such a legitimate, nondiscriminatory reason. The letter states that Plaintiff's termination is a result of her failure to return to work after 30 days of absence and to provide medical documentation supporting her absence. [**39] (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 5.) The letter provides these actions are a violation of FedEx's company policy, namely Policy P 1-20 and Policy P 1-8. (*Id.*) Therefore, FedEx's letter of termination provides a legitimate, nondiscriminatory reason for Plaintiff's termination which rebuts the inference of retaliation and shifts the burden of production back to Plaintiff.

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 82 of 165

378 F. Supp. 2d 613, *628; 2005 U.S. Dist. LEXIS 19307, **39

[HN21]The final, and most contested, step of the *McDonnell Douglas* proof scheme is whether the evidence taken in the light most favorable to Plaintiff is sufficient for a reasonable jury to determine that FedEx's articulated reason was only a pretext for unlawful discrimination. Plaintiff argues her termination was wrongful under the FMLA and that circumstances surrounding the drafting of the termination letter and questionable statements contained therein are evidence that FedEx's proffered reason is disingenuous.

[HN22]A plaintiff can prove pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Burdine,* 450 U.S. at 256, 101 S. Ct. at 1095). [**40] If a plaintiff's prima facie case is strong and is combined with sufficient evidence to find the employer's proffered justification false, summary judgment should be denied. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 648 (4th Cir. 2002); *E.E.O.C. v. Sears Roebuck & Co.,* 243 F.3d 846, 857 (4th Cir. 2001). A mere mistake of fact by an employer which leads to a wrongful termination is not itself evidence of falsity or discriminatory motive. *Price,* 380 F.3d at 215 n.1. Instead, the existence of mendacity is of particular weight. *St. Mary's,* 509 U.S. at 511, 113 S. Ct. at 2749. Courts have considered incorrect reasons for termination [*629] when coupled with other evidence to show the disingenuousness of the proffered reason for termination. *See Sears Roebuck & Co.,* 243 F.3d at 857 (finding a strong showing of pretext where evidence showed the proffered nondiscriminatory reasons were inconsistent over time, false, and in some instances based on mistakes of fact on the employer's part).

## 1. Evidence of Wrongful Termination Under the Family and Medical Leave Act

Plaintiff first presents evidence [**41] that she was wrongfully terminated because her leave was protected under the FMLA. [HN23]The FMLA entitles a qualified employee to take up to 12 work weeks of unpaid leave per year, for among other reasons, because the employee is suffering from a serious health condition. 29 U.S.C. § 2612(a)(1). To ensure employees can take full advantage of the FMLA's leave provisions, the act prohibits employers from interfering with or denying an employee's exercise of her rights under the FMLA and from discharging such an employee. *Id.* § 2615(a)(1), (2).

[HN24]Employers are obligated to communicate with employees regarding their rights under the FMLA. Regulations require that each time the employee requests leave, the employer must "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). The employer's written notice must be made "within a reasonable time after notice of the need for leave is given by the employee -- within one or two business days if feasible." *Id.* § 825.301(c). One of the explanations necessary to the [**42] notice is "any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so." *Id.* § 825.301(b)(1)(ii). Oral notice of medical certification, however, is also acceptable. Additionally, employers must "designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." *Id.* § 825.208(a).

[HN25]Employees also have obligations under the FMLA. During an FMLA leave period, an employee may be required to report periodically on her status and intent to return to work. *Id.* § 825.309(a). An employee may also be required to support her FMLA leave for a serious medical condition by a certification issued by a health care provider, but the employer must give individual notice of the need for certification each time it is necessary. *Id.* § 825.305(a). When an employer requests medical certification, it must also advise the employee of the potential consequences of an employee's failure to provide adequate certification. *Id.* § 825.305(d). When leave is not foreseeable, an employee must provide certification within the time frame requested by the employer, but not less [**43] than 15 days from the employer's request or within a reasonable time under the circumstances. *Id.* § 825.311(b). If an employee fails to provide a medical certification within a reasonable time, the employer may delay the employee's continuation of FMLA leave. *Id.* § 825.311(b). If the employee never produces the certification, the leave is not considered FMLA leave. *Id.* §§ 825.311(b), .312(b).

Applying the FMLA and regulations to Plaintiff's leave, the court finds that Plaintiff's absence from work was protected by the FMLA beginning April 1, 2002. [5] It is [*630] clear that Plaintiff made a proper request for FMLA leave as both Scales and Topley understood Plaintiff's request for "family leave" to refer to the

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 83 of 165

378 F. Supp. 2d 613, *630; 2005 U.S. Dist. LEXIS 19307, **43

FMLA. (Scales Dep. at 58; Topley Dep. at 31.) Furthermore, Plaintiff's request was for treatment of a serious health condition because she had a period of incapacity that required absence from work for more than three consecutive days and she received continuing treatment by a health care provider. [6] *See* 29 U.S.C. § 2611(11); 29 C.F.R. § 825.114(a)(2).

> 5 Any time Plaintiff was absent prior to April 1, 2002, was not FMLA leave. When Plaintiff initially requested unpaid personal leave on March 20, 2002, she did not cite medical problems, but requested the leave to prepare for the upcoming trial in Badgett I. (Pls.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 6.) Because her request met neither FMLA nor FedEx's Personal Leave Policy requirements, the leave request was properly denied. *See* 29 U.S.C. § 2612(a)(1). The next week Plaintiff took five days of sick leave, which was part of her earned employee benefits. (Badgett Dep. at 94.) There does not appear to be any controversy regarding the taking of the five days of sick leave.

[**44]

> 6 [HN26]Anxiety, depression, and sleeplessness have been held to be symptoms of serious medical conditions. *See Scamihorn v. General Truck Drivers,* 282 F.3d 1078 (9th Cir. 2002) (depression); *Vasconcellos v. Cybex Int'l, Inc.,* 962 F. Supp. 701 (D. Md. 1997) (insomnia and nervousness); *Seidle v. Provident Mut. Life Ins. Co.,* 871 F. Supp. 238 (E.D. Pa. 1994) (nervous disorder).

Having invoked her "family leave" for a serious medical condition, Plaintiff had to medically certify her leave within the time frame requested by FedEx, but not less than 15 days from the date of the request, or within a reasonable time under the circumstances. *See* 29 C.F.R. § 825.311(b). A reasonable jury could find that Plaintiff submitted her medical certification within a reasonable time under three theories. First, there is a genuine issue about whether FedEx received Dr. Wells' letter that Plaintiff was unable to work. (*See* Pl.'s Mem. Law Opp'n Def.'s Mot. Summ J. Ex. 10.) Both Scales and Topley admit the letter would have been some medical documentation to support [**45] her claim if it had been received. (*See* Scales Dep. at 72; Topley Dep. at 41.) Second, assuming Dr. Wells' letter was never sent to FedEx, there is a genuine issue as to whether Plaintiff

was fired before the statutory minimum of 15 days had expired. It is certain FedEx requested, at some time, that Plaintiff medically substantiate her FMLA leave, but there is a factual dispute about when the request occurred.

Third, there is a genuine issue as to whether Plaintiff returned her FMLA certification within a reasonable time under the circumstances. Plaintiff did not receive individualized notice of her FMLA rights and as a result did not appear to know that she could be fired for failing to submit the certification. (*See* App. Supp. Def.'s Mot. Summ. J. Ex. 11 ("Unless I do so with urgency, a letter will be placed in my file upon my return to work.").) Plaintiff spent three days in court during her FMLA leave period on Badgett I and two days under subpoena to testify in an unrelated criminal matter, both of which would have made it difficult to acquire certification during those periods. There is evidence that Dr. Wells was out of town for some period of time between Plaintiff's [**46] visit on April 12 and the receipt of the FMLA certification form on April 18. (Wells Dep. at 30.) Lastly, it took Dr. Wells seven days to return the FMLA certification form despite Plaintiff's notification that its return was urgent. (*See* App. Supp. Def.'s Mot. Summ. J. Ex. 11.) Taking all the facts and circumstances into consideration, there is a genuine issue as to whether Plaintiff returned the form within a reasonable time.

[*631] Even if Plaintiff did not return the form within the 15-day period or a reasonable time, FedEx's remedy was not termination. [HN27]The FMLA regulations provide that if an employee fails to provide a medical certification within a reasonable time, the employer may *delay* the employee's continuation of FMLA. 29 C.F.R. § 825.311(b). Only if the employee never produces the certification may the employer consider the leave not covered under the FMLA. *Id.* §§ 825.311(b), .312(b). Here, Topley believed an employee's leave to be unexcused if the employee did not provide medical documentation in a "couple of days." (Topley Dep. at 42.) As a result, FedEx did not delay the continuation of Plaintiff's FMLA when Plaintiff had not submitted her certification by April 23, 2002. Instead, [**47] FedEx treated Plaintiff's leave as not covered by the FMLA and then terminated her based upon a violation of company policy. This remedy was not available to FedEx.

Plaintiff's absence was protected by the FMLA. A genuine issue exists as to whether Plaintiff was fired

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 84 of 165

378 F. Supp. 2d 613, *631; 2005 U.S. Dist. LEXIS 19307, **47

before her medical documentation was required. As a result, a reasonable jury could find Plaintiff's termination was wrongful.

## 2. Evidence of the Disingenuousness of the Termination Letter

Plaintiff argues that circumstances surrounding the drafting of the termination letter and questionable statements contained therein are evidence that FedEx attempted to mask the identity of the actual decisionmaker and the real motivation behind Plaintiff's termination. Plaintiff argues despite her being an "exceptional" employee (Scales Dep. at 72) and Scales having terminated only one other employee besides Plaintiff (*id.* at 110-11), Scales lacks critical knowledge of the underlying facts to give credence to the termination letter. Scales, a black male, testified he made the decision to terminate Plaintiff, not his white managers. (*Id.* at 52, 66, 110, 122.) Scales testified that Topley merely drafted the termination [**48] letter as the two discussed Plaintiff's termination. (*Id.* at 52, 69.)

Plaintiff points out that her termination is premised upon her failure to bring in medical substantiation even though Scales admitted he had no idea whether Plaintiff actually needed to substantiate her leave. (*Id.* at 52.) In fact, Scales continued to refer Plaintiff to Tolliver when they discussed FMLA leave because Scales knew nothing about the leave policy. (Badgett Dep. at 101-02.) The termination letter also states Plaintiff had been notified in writing about the need for medical certification and had committed to bringing it in during the trial. Scales' testified he had no knowledge of whether written notification was ever given to Plaintiff, and there is some indication that Topley admitted he did not send notification. (Scales Dep. at 52.) Neither Scales nor Topley was present at trial. Furthermore, the letter states Plaintiff committed at trial to returning to work on Monday, April 22, 2002, even though the drafter, Topley, had no idea where the information came from. (Topley Dep. at 40.) The letter states there was substantial evidence of further violations of FedEx policy by Plaintiff although [**49] Scales could not identify what that further evidence was or even explain the basis for the statement in the termination letter. (Scales Dep. at 111-12.) Lastly, Scales did not know whether the decision to terminate Plaintiff was made on April 23, 2002, or was made some time before and was simply memorialized on April 23. (*Id.* at 113.)

Plaintiff presents additional evidence that, if believed, would tend to make the termination letter disingenuous. The letter [*632] implies that Plaintiff had been inexcusably absent for 30 days without medical documentation. (*See* Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 5.) Plaintiff, however, has presented evidence that she faxed Dr. Wells' letter to Scales and Tolliver on April 12, 2002, which, if true, would show the falsity of the termination letter. Additionally, Plaintiff's "unexcused" FMLA leave was much less than the 30 days alleged in the letter. The five days of leave taken prior to April 1, 2002, were sick leave provided by the company. Furthermore, Saladino's letter denying Plaintiff personal leave provides that he would direct Plaintiff's manager to give her time off necessary to attend Badgett I, which excuses three days of absence. [**50] (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 7.) Scales was fully aware Plaintiff was under subpoena to testify as a witness in an unrelated criminal trial on April 22 and 23, 2002. (Badgett Dep. at 70; Scales Dep. at 50.) When the approved absences are considered, Plaintiff's allegedly undocumented leave accounts for approximately two weeks, much less than the 30 days alleged.

The termination letter references directly Plaintiff's protected activity: "Moreover, you were not too incapacitated to attend the trial last week which ended on Tuesday[,] April 16, 2002." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 5.) Considering Saladino's promise to give Plaintiff time off for the trial, this statement appears disingenuous. Additionally, the "substantial evidence" of further violations of FedEx policy allegedly arose during the Badgett I trial. The multiple references to the trial could be interpreted as linking FedEx's proffered reason for termination, undocumented leave, to its actual motivation, retaliation for Plaintiff's lawsuit.

Plaintiff's strong prima facie case when combined with her evidence tending to show both Plaintiff's termination was wrongful and Plaintiff's termination [**51] letter contained inconsistencies and was disingenuous, raises a question about FedEx's motivation for terminating Plaintiff. A reasonable jury could find FedEx was attempting to generate justification for her termination, which undermines FedEx's proffered reason. Summary judgment will be denied as to Plaintiff's retaliation claim.

## IV. CONCLUSION

378 F. Supp. 2d 613, *632; 2005 U.S. Dist. LEXIS 19307, **51

For the reasons set forth herein,

IT IS ORDERED that Defendant's Motion for Summary Judgment [14] is GRANTED in part and DENIED in part. The motion is GRANTED as to Plaintiff's claims for discrimination under § 1981 (Count Two), retaliation under the FMLA (Count Three), intentional infliction of emotional distress (Count Four), and negligent infliction of emotional distress (Count Five). The motion is DENIED as to Plaintiff's claim for retaliation under Title VII (Count One).

This the 7 day of April 2005.

William L. Osteen Jr.

United States District Judge

EXHIBIT G

LEXSEE



Caution
As of: Jun 03, 2014

**LEONIA ALLEN, Plaintiff, v. FEDERAL EXPRESS CORPORATION, Defendant.**

1:09CV17

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

2009 U.S. Dist. LEXIS 91775

September 30, 2009, Decided
September 30, 2009, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by, Judgment entered by Allen v. Fed. Express Corp., 2011 U.S. Dist. LEXIS 34812 (M.D.N.C., Mar. 31, 2011)

**CORE TERMS:** retaliation, right-to-sue, wrongful termination, emotional distress, infliction, summons, employment agreement, limitations period, extending, lawsuit, race discrimination, contractual, persuasive, notice, reply, work environment, dispatcher, federal law, parties agreed, summary judgment, emotional distress, citation omitted, civil action, properly filed, converting, disability, permission, favorable, equitable, issuance

**COUNSEL:** [*1] For LEONIA ALLEN, Plaintiff: JAMES EDWARD HAIRSTON, JR., LEAD ATTORNEY, LAW OFFICES OF JAMES E. HAIRSTON, JR., RALEIGH, NC.

For FEDERAL EXPRESS CORPORATION, Defendant: JILL STRICKLIN COX, LEAD ATTORNEY, KILPATRICK STOCKTON LLP, WINSTON-SALEM, NC; RICHARD S. MCCONNELL, PRO HAC VICE, FEDERAL EXPRESS CORP., MEMPHIS, TN.

**JUDGES:** William L. Osteen, Jr., United States District Judge.

**OPINION BY:** William L. Osteen, Jr.

**OPINION**

*MEMORANDUM OPINION AND ORDER*

OSTEEN, JR., District Judge.

Presently before the court is Defendant Federal Express Corporation's Motion to Dismiss Plaintiff Leonia Allen's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 9.) Plaintiff filed a Memorandum of Law in Opposition of Defendant's Motion to Dismiss (Doc. 14), and Defendant filed a Reply Memorandum (Doc. 16). On September 3, 2009, the parties appeared in front of this court for a hearing. At the hearing, both parties agreed that the affidavit and exhibits (Doc. 10-2) submitted by Defendant in support of its Motion to Dismiss could be considered by this court without converting the motion into one for summary judgment.

For the reasons set forth below, Defendant's Motion to Dismiss will be granted in part and denied in part. [*2] Plaintiff's claims for Title VII discrimination, violation of the FMLA, wrongful termination, and negligent infliction of emotional distress will be dismissed, but Plaintiff's claim for Title VII retaliation will not be dismissed.

**I. Background**

The following facts are presented in the light most favorable to Plaintiff Leonia Allen. Plaintiff is an African American female with Grave's Disease. She applied for employment with Defendant Federal Express Corporation ("FedEx") on July 25, 1997, and, in conjunction with her employment application, signed a two-page Employment Agreement. (Decl. of F. Douglas (Doc. 10) Ex. A at 8-9.) Paragraph 15 of that agreement, located above the signature line, provides in part: "To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." (*Id.* at 9.)

Plaintiff was hired as a courier by FedEx in August 1997. (Compl. (Doc. 1-5) P 5.) She later worked as a dispatcher in the Research Triangle Park office, where she experienced some friction with a fellow dispatcher, [*3] John Carr. According to her complaint, Mr. Carr "sabotage[d] Mrs. Allen's work as a dispatcher including but not limited to phone calls, courier decisions, assigning pick-ups, and deliveries." (*Id.* P 20.) Plaintiff alleges that she complained to several managers about Mr. Carr's behavior, but contends that nothing was done to correct Mr. Carr's actions. (*Id.* PP 21-32.) Even after complaining to a new manager in 2004, Plaintiff "would cry on her way to work and not want to go to work. She was also having anxiety attacks with heart palpitations and nervousness." (*Id.* P 39.) Although Plaintiff continued to complain about a hostile and stressful work environment, she alleges that she "did not see any differences in her work environment." (*Id.* PP 42-48.)

Eventually, Plaintiff left work under the Family Medical Leave Act (FMLA) "due to the stress of her work environment exacerbating the condition of her Grave's Disease." (*Id.* P 49.) Upon her return, Plaintiff was given "all the late shifts with no rotation and her hours were cut." (*Id.* P 53.) In April 2006, Plaintiff "suffered an assault from Mr. Carr because she went to human resources and filed a complaint against him." (*Id.* P 56.) Plaintiff [*4] alleges that FedEx did nothing to correct the situation and even that FedEx discouraged two witnesses to the assault from coming forward. Plaintiff filed her first discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2006, alleging discrimination based on race and disability from February 1, 2006 until the time of the EEOC charge filing. (Def.'s Mem. in Support of Mot. to Dismiss (Doc. 10) Ex. B.)

On April 3, 2007, FedEx terminated Plaintiff for making threatening gestures, although Plaintiff alleges that she merely "held her hand up to her head and put her finder [sic] to her temple in a vertical motion showing [a coworker] that Ms. Wojick was driving her crazy." (Compl. (Doc. 1-5) P 59-61.) Plaintiff filed a second EEOC charge on May 7, 2007, alleging that she was discharged in retaliation for filing a previous charge of employment discrimination against FedEx. (Def.'s Mem. in Support of Mot. to Dismiss (Doc. 10) Ex. D.)

On September 25, 2008, Plaintiff filed this lawsuit in the General Court of Justice, Superior Court Division, Durham County. Defendant subsequently removed the case to the United States District Court for the Middle District of [*5] North Carolina. Plaintiff's Complaint alleges Title VII race discrimination and retaliation, wrongful termination, negligent infliction of emotional distress, and violation of the FMLA. Defendant now seeks dismissal of Plaintiff's claims. [1]

> 1  Defendant's actual motion to dismiss (Doc. 9) "requests that the Court dismiss four out of five claims, including Title VII race discrimination, FMLA, wrongful termination in violation of public policy, and negligent infliction of emotional distress." (Def.'s Mot. to Dismiss 2.) However, in its memorandum (Doc. 10), Defendant argues that Plaintiff's Title VII retaliation claim should also be dismissed. (Def.'s Mem. in Support of Mot. to Dismiss 8-9.) Likewise, in its reply memorandum (Doc. 16), "FedEx requests that the court dismiss all Plaintiff's claims *in their entirety.*" (Reply Mem. 5 (emphasis added).) As this court will not dismiss Plaintiff's retaliation claim, it is unnecessary to further discuss Defendant's intention.

## II. Legal Standard

Defendant moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Attached to its Motion to Dismiss, Defendant has submitted six exhibits as well as an affidavit authenticating [*6] the exhibits. (Decl. of F. Douglas and Exhibits 1-6 (Doc. 10-2).) Specifically, Exhibit A is a copy of the Application for Employment completed and signed by Plaintiff in July 1997. Exhibits B and D are copies of Plaintiff's Charges of Discrimination to the

EEOC, and Exhibits C and E are copies of the Notices of Right to Sue issued by the EEOC. Exhibit F is a copy of Plaintiff's Application and Order Extending Time to File Complaint. At the September 3, 2009 hearing, both parties agreed that all of these documents could be considered by this court without converting the motion into one for summary judgment, and this court agrees.

When analyzing a Rule 12(b)(6) motion, the pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969). A court should not grant the motion if the plaintiff can show "any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).

A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant [*7] fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

### III. Analysis

Defendant seeks dismissal of Plaintiff's Title VII claim of race discrimination because Plaintiff failed to file a civil action within ninety days after a right-to-sue letter on the race claim was issued. In its memorandum, Defendant also suggests that Plaintiff's Title VII retaliation claim should be dismissed because the lawsuit was also not filed within ninety days of receipt of a right-to-sue letter, even though Plaintiff secured an extension under Rule 3 of the North Carolina Rules of Civil Procedure. [*8] Defendant further argues that Plaintiff's FMLA, wrongful termination, and negligent infliction of emotional distress claims are barred by the six-month contractual limitations period contained in Plaintiff's employment agreement with FedEx.

### A. Title VII Claims

Defendant first argues that Plaintiff failed to bring a civil action under Title VII within ninety days of when her right-to-sue letters were issued. As mentioned above, Plaintiff filed her first EEOC complaint on July 19, 2006, alleging discrimination based on race and disability. (Def.'s Mem. in Support of Mot. to Dismiss (Doc. 10) Ex. B.) Plaintiff was mailed a right-to-sue letter on August 28, 2007. (*Id.* at Ex. C.) Plaintiff filed a second EEOC charge on May 7, 2007, alleging retaliation. (*Id.* at Ex. D.) She was issued her second right-to-sue letter on June 9, 2008. (*Id.* at Ex. E.) On September 5, 2008, Plaintiff filed an application and order, under Rule 3 of the North Carolina Rules of Civil Procedure, extending by twenty days the time she had to file her complaint. Plaintiff filed this lawsuit on September 25, 2008.

It is undisputed that Plaintiff did not file suit within ninety days of receipt of her first right-to-sue letter. [*9] Plaintiff's memorandum does not cite any legal authority for its assertion that the discrimination claim should not be dismissed. [2] (Pl.'s Mem. in Opp'n of Def.'s Mot. to Dismiss (Doc. 14) at 3.) An EEOC charge defines the scope of a plaintiff's right to institute a civil suit. Even assuming that Plaintiff's second EEOC charge was properly filed, it does not include any allegations of discrimination. Only retaliation is alleged, and therefore Plaintiff can only litigate her retaliation claim. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("[t]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002) (Title VII retaliation claims barred when EEOC charge only alleged discrimination based on race). For these reasons, the claim of Title VII discrimination alleged in Plaintiff's first EEOC charge should be dismissed.

> 2   Plaintiff's counsel essentially conceded these points at the September 3, 2009 hearing and did not object to dismissal of this claim.

Defendant further argues that Plaintiff's Complaint was also filed more than ninety days after issuance [*10] of her second right-to-sue letter, and thus her retaliation claim should also be dismissed. As discussed above, Plaintiff was issued her second right-to-sue letter on June 9, 2008. On September 5, 2008, Plaintiff filed an application and order extending by twenty days her time to file her complaint under Rule 3 of the North Carolina

Rules of Civil Procedure. Plaintiff claims that she then had until September 25, 2008 to file her complaint, and on that date she properly filed her complaint. Defendant recognizes the existence of Rule 3, but argues that "no explanation of justification for failing to file within 90-days was provided" and suggests that Plaintiff "failed to issue a summons before the expiration of the 90-day period" as is required by Rule 3. (Def.'s Mem. in Support of Mot. to Dismiss (Doc. 10) 8.)

Rule 3 of the North Carolina Rules of Civil Procedure provides that an action may be commenced by the issuance of a summons when "[a] person makes an application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days" and "[t]he court makes an order stating the nature and purpose of the action and granting the requested [*11] permission." N.C. R. Civ. P. 3(a). "Merely filing an application for extension of time is insufficient; a plaintiff must have a summons issued within the relevant statutory period to sustain his claims." *Lassiter v. LabCorp Occupational Testing Servs., Inc.,* 337 F. Supp. 2d 746, 751-52 (M.D.N.C. 2004); *see also Beall v. Beall,* 156 N.C. App. 542, 547, 577 S.E. 2d 356, 360 (2003) (affirming dismissal of claims because even though plaintiff filed a Rule 3 extension, summons was not issued until after the relevant statute of limitations expired).

A review of the record reveals that a "Civil Summons to be Served with Order Extending Time to File Complaint" was issued in the General Court of Justice, Superior Court Division, Durham County, on September 5, 2008, within the ninety-day period after Plaintiff's second right-to-sue letter was issued. (Notice of Removal (Doc. 1) Ex. A.) Therefore, Plaintiff's retaliation claim will not be dismissed, since the extension order was granted and a summons was issued within the ninety-day period after Plaintiff's second right-to-sue letter was issued.

Defendant further contends that Plaintiff should not be given the benefit of Rule 3, as it "is contrary [*12] to the clear language and intent of Title VII." (Def.'s Mem. in Supp. of Mot. to Dismiss (Doc. 10) 8.) However, a court in this district has previously held that a plaintiff may initiate a Title VII action in a North Carolina state court utilizing either means set forth in Rule 3 of the North Carolina Rules of Civil Procedure, as 42 U.S.C. § 2000e-5(f)(1) does not specify that the filing of a

complaint is necessary to commence an action. *Lassiter,* 337 F. Supp. 2d at 752 (M.D.N.C. 2004). *See also Sheaffer v. County of Chatham,* 337 F. Supp. 2d 709, 725 (M.D.N.C. 2004) (Rule 3 procedure can properly be used in North Carolina state courts to extend the time in which to file claims under the ADA). This court finds these cases persuasive and concludes that Plaintiff brought the current Title VII retaliation action in a timely manner, and this claim will not be dismissed.

### B. FMLA, Wrongful Termination, and Emotional Distress Claims

Defendant next argues that Plaintiff's FMLA, wrongful termination, and negligent infliction of emotional distress claims are barred by the six-month contractual limitations period contained in the Employment Agreement signed by Plaintiff on July 25, 1997. Defendant [*13] points to *Badgett v. Federal Express Corp.,* 378 F. Supp. 2d 613 (M.D.N.C. 2005), where another court in this district upheld the six-month contractual statute of limitation contained in the same FedEx employment agreement. Indeed, in *Badgett,* the court held that "the federal law and North Carolina law allow the parties to contractually agree to shorter limitations periods than those provided by statute." *Badgett,* 378 F. Supp. 2d at 623. Furthermore, the court held that the limitations clause did not violate North Carolina or federal law and was reasonable under the circumstances present in that case. *Id.* at 626.

This court finds the reasoning set forth in *Badgett* to also be persuasive on the facts of this case. This court further finds unpersuasive Plaintiff's argument that the court should set aside the limitations period by applying the doctrine of equitable tolling or equitable estoppel. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss (Doc. 14) 6.) Plaintiff's Complaint does not sufficiently allege facts that, even if proven true, would cause this court to not apply the limitations period under either theory. Finally, at the September 3, 2009 hearing, Plaintiff's counsel essentially [*14] conceded that *Badgett* is persuasive on these facts and did not object to dismissal of the FMLA and state law claims. For these reasons, this court will enforce the six month limitations clause in the Employment Agreement. Accordingly, Plaintiff's FMLA, emotional distress, and wrongful termination claims will be dismissed as untimely.

### IV. Conclusion

Page 4

For the reasons set forth above, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. 9) will be GRANTED in part and DENIED in part. Plaintiff's claims of Title VII discrimination, violation of the FMLA, negligent infliction of emotional distress, and wrongful termination are DISMISSED. The motion is DENIED as to Plaintiff's claim for retaliation under Title

VII.

This the 30th day of September 2009.

/s/ William L. Osteen, Jr.

United States District Judge

# EXHIBIT H

LEXSEE



Positive
As of: Jun 04, 2014

**BARRY TOMPKINS, Plaintiff, vs. FEDERAL EXPRESS CORP., Defendant.**

**No. 2:09-cv-02073-JPM-dkv**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION**

**2010 U.S. Dist. LEXIS 42593**

**April 30, 2010, Decided**
**April 30, 2010, Filed**

**CORE TERMS:** limitations period, summary judgment, contractual, termination, limitations provision, genuine issue, economic duress, illusory, material fact, nonmoving party, terminated, rescind, duress, lasted, Rights Act, matter of law, discrimination claim, argument fails, financial circumstances, subsequent contracts, subject matter, equitable tolling, comprehensively, retaliation, investigate, promotion, discovery, movant, tolled, played

**COUNSEL:** [*1] Dewun R. Settle, Miscellaneous, Pro se, Memphis, TN.

For Barry Tompkins, Plaintiff: Travis Edgar Davison, III, LEAD ATTORNEY, DAVISON LAW FIRM, Memphis, TN.

For Fedex Express, Defendant: Terrence O. Reed, LEAD ATTORNEY, FEDERAL EXPRESS CORPORATION-Hacks Cross Rd, Memphis, TN.

**JUDGES:** JON P. McCALLA, CHIEF U.S. DISTRICT JUDGE.

**OPINION BY:** JON P. McCALLA

**OPINION**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Federal Express Corp.'s Motion for Summary Judgment (Docket Entry ("D.E.") 25, filed October 7, 2009. Plaintiff responded

in opposition on November 9, 2009. (D.E. 27.) Defendant filed its reply with leave of Court on November 17, 2009. (D.E. 30.) For the following reasons, Defendant's motion is GRANTED.

*I. Background*

This matter arises out of Plaintiff's employment with Defendant. Plaintiff signed an Employment Agreement in connection with his application to work for Defendant on March 26, 1996. (*See* Def.'s Mot. for Summ. J. (D.E. 25) Ex 1, Pl.'s Answers to Def.'s First Set of Reqs. for Admis. ("Pl.'s Answers") 2, 9-10.) The Employment Agreement contained a clause stating, "To the extent the law allows an employee to bring legal action against [Defendant], [Plaintiff] agree[s] [*2] to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." (*Id.* at 10.) On April 1, 1996 Plaintiff accepted a job offer with Defendant. (*Id.* at 18-19.) Plaintiff subsequently received an offer of promotion, and on August 15, 2000 signed an acceptance letter that expressly incorporated by reference his employment application. (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") Ex. 4.) On November 9, 2007 Defendant terminated Plaintiff's employment, citing violations of a computer use policy. (Pl.'s Answers 20.) Plaintiff appealed his termination through Defendant's internal review process. (Pl.'s Resp. Ex. 2, Aff. of Barry Tompkins ("Tompkins Aff.") PP 11-12.) This process lasted "over two months," but the termination decision was not reversed. (*See id.*)

On November 7, 2008 Plaintiff filed a complaint in the Chancery Court of Shelby County, Tennessee,

Page 1

which Defendant removed to this Court on February 12, 2009. (*See generally* Notice of Removal (D.E. 1) 1.) Plaintiff's complaint asserted a claim under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* [*3] ("USERRA"), and claims for retaliation and age discrimination under the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-101 *et seq.* ("THRA"). Plaintiff voluntarily dismissed his THRA retaliation claim with prejudice, and the Court dismissed with prejudice his USERRA claim. (Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss and Allowing Limited Disc. 1-2.) Defendant now moves for summary judgment on Plaintiff's THRA age discrimination claim.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, [*4] however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must -- by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Abeita v. TransAm. Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir. 1998). However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" *Street v. J.C. Bradford & Co., Inc.,* 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury

or [*5] whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III. Analysis

As noted above, Plaintiff was terminated on November 9, 2007, and initiated this suit on November 7, 2008. Defendant argues that it is entitled to summary judgment because Plaintiff failed to bring this action within the six-month contractual limitations period. Plaintiff does not deny that he filed this suit nearly a year after his termination, but makes a series of arguments against the enforceability and application of the contractual limitations period. The Court will address each of Plaintiff's arguments in turn.

### A. Reasonableness of the Six-Month Limitation Period

A contractual limitations period must be reasonable in order to restrict a statutory limitations period. *Myers v. W.-S. Life Ins. Co.,* 849 F.2d 259, 262 (6th Cir. 1988). A six-month limitations period is not inherently unreasonable. *Id.; see also Badgett v. Federal Express Corp.,* 378 F. Supp. 2d 613, 626 (M.D.N.C. 2005) (finding a six-month contractual limitations period reasonable). The Court finds that the limitations period is reasonable under the circumstances of this case because six months was enough time for Plaintiff [*6] to learn of his discharge, investigate the circumstances of that event, and file a complaint. *See Badgett,* 378 F. Supp. 2d at 626.

### B. Lack of Awareness of the Contractual Limitations Period

Plaintiff argues that the six-month limitations period should be replaced with a one-year period because he did not remember that he had agreed to the shorter time limit. [1] The Court rejects this argument because Plaintiff has offered no support for the assertion that an employer must remind an employee of the employee's contractual obligations. "It is not [a court's] job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief." *Yeomalakis v. FDIC,* 562 F.3d 56, 61 (1st Cir. 2009); *see also Keylon v. City of Albuquerque,* 535 F.3d 1210, 1217 n.2 (10th Cir. 2008) (same); *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1006-07 (7th Cir. 2004) (same).

1 Plaintiff's brief also makes the contradictory argument that he did not understand the limitations provision. This contention does not overcome Defendant's motion for summary judgment. *See Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998) [*7] (unsworn allegations in a brief are insufficient to create a factual dispute on a motion for summary judgment).

## C. Economic Duress

Plaintiff argues that the contractual limitations provision is unenforceable because he was under economic duress when he agreed to it. [2] Economic duress is "the imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another." *Crocker v. Schneider,* 683 S.W.2d 335, 338 (Tenn. Ct. App. 1984). "The pressure of financial circumstances is insufficient to establish economic duress which will allow a party to avoid an agreement when the other party to the agreement is not responsible for the financial circumstances of the party." *Moman v. Walden,* 719 S.W.2d 531, 534 (Tenn. Ct. App. 1986). Plaintiff argues that he was under duress because he had no other opportunities for employment when he signed the Employment Agreement, but Plaintiff has alleged no facts suggesting that Defendant was responsible for these circumstances. Plaintiff's duress argument fails. *See id.*

> 2    Although Plaintiff styles this argument with regard to unconscionability, the substance of his argument is made   [*8] in terms of economic duress. To the extent that Plaintiff argues that the limitations provision is unconscionable, the Court rejects this argument for the same reasons that the Court finds the limitations provision not unreasonable.

## D. Illusoriness of the Contract

"A promise is illusory when it fails to bind the promisor, who retains the option of not performing; an illusory promise is not consideration for a return promise, and so cannot be the basis for finding a contract." *German v. Ford,* 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009) (citation omitted). Plaintiff agreed to the terms of the Employment Agreement in exchange for employment with Defendant. (*See* Pl.'s Answers 9-10.) He appears to argue that the Employment Agreement is an illusory contract because he signed the contract prior to receiving and accepting an offer to work for Defendant. It is true, as Plaintiff contends, that Defendant would not be bound by the Employment Agreement if it did not hire Plaintiff, but Plaintiff would not be bound under those circumstances either. This does not make the contract illusory once the parties entered into the employment relationship. The Court rejects Plaintiff's argument.

## E. Subsequent   [*9] Agreement

Plaintiff contends that the Employment Agreement containing the six-month limitation was superseded when Plaintiff accepted a promotion on August 15,

2000. "A contract may be . . . abrogated by a new contract . . . ." *Robert J. Young Co. v. Nashville Hockey Club Ltd. P'ship,* No. M2006-2511-COA-R3-CV, 2008 Tenn. App. LEXIS 182, 2008 WL 820488, at *5 (Tenn. Ct. App. March 26, 2008) (*quoting* 17B C.J.S. Contracts § 434). "However, making subsequent contracts that deal with the same subject matter as the earlier contracts does not abrogate the previous instruments unless the subsequent contract either explicitly rescinds the earlier instruments or deals with the subject matter of those instruments so comprehensively as to be complete within itself," or the two agreements are so inconsistent that they cannot be reconciled. *Id.* (*quoting* 17B C.J.S. Contracts §§ 434, 435).

The 2000 acceptance letter does not explicitly rescind the Employment Agreement. (*See* Pl.'s Resp. Ex. 4.) Nor does it deal with the terms of Plaintiff's employment so comprehensively that it implicitly rescinds the Employment Agreement, or create an irreconcilable inconsistency with the earlier contract. (*See id.*) Plaintiff's argument fails.

## F.   [*10] *The Impact of the Internal Appeals Process on the Limitations Period*

Plaintiff appears to argue either that the limitations period should not have begun to run until he completed the internal appeals process, or that the limitations period should be tolled for the period in which he engaged in that process. Even if the Court were to adopt one or both of Plaintiff's positions, it would not change the result in this case. Plaintiff averred that the appeals process lasted "over two months." (Tompkins Aff. P 12.) Drawing all reasonable inferences in Plaintiff's favor, the Court will assume for purposes of decision that the process lasted no more than three months. Plaintiff's complaint was untimely by six months. A three-month extension of the limitations period would not render his suit timely filed. The Court rejects Plaintiff's arguments. [3]

> 3    To the extent that Plaintiff is arguing that the six-month period is unreasonable because of the presence of the internal appeals process, the Court rejects this argument because Plaintiff has not shown how the process hampered his ability to investigate the circumstances of his termination and prepare to file suit after the process was completed.

## G.   [*11] *The Impact of Plaintiff's Alleged Discovery of Discrimination on the Limitations Period*

Plaintiff also seems to argue either that the limitations period should not have begun to run or should have been tolled until he discovered that discrimination

played a role in his termination. The Court rejects both contentions. First, the limitations period began to run when Plaintiff discovered that he was terminated, not when he allegedly discovered that discrimination played a role in that termination. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 499-500 (6th Cir. 2001). Second, this is not a case for equitable tolling. That relief may be granted "only sparingly," *id.* at 500, and Plaintiff has made little discernible attempt to address the factors that guide the equitable tolling inquiry. *See Yeomalakis,* 562 F.3d at 61.

### IV. Conclusion

The six-month limitations provision to which Plaintiff agreed is enforceable. Plaintiff did not timely file this suit. Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's THRA age discrimination claim is DISMISSED with prejudice.

IT IS SO ORDERED this 30th day of April, 2010.

/s/ Jon P. McCalla

JON P. McCALLA

CHIEF U.S. DISTRICT JUDGE

EXHIBIT I

LEXSEE



Cited
As of: Jun 04, 2014

**Darnell Wilkerson, Plaintiff, v. Federal Express, Defendant.**

**Civil Action No. 8:10-CV-01855-AW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

**2011 U.S. Dist. LEXIS 59708; 112 Fair Empl. Prac. Cas. (BNA) 805**

**June 2, 2011, Decided
June 2, 2011, Filed**

**COUNSEL:** [*1] Darnell Wilkerson, Plaintiff, Pro se, Bowie, MD.

For Fedex Express, Defendant: Edward John Efkeman, FedEx Corporation, Legal Dept, Memphis, TN; Kathy Laughter Laizure, PRO HAC VICE, Federal Express Legal Department, Memphis, TN.

**JUDGES:** Alexander Williams, Jr., United States District Judge.

**OPINION BY:** Alexander Williams, Jr.

**OPINION**

**MEMORANDUM OPINION**

On July 9, 2010, the plaintiff, Darnell Wilkerson, filed his complaint alleging that the defendant, Federal Express, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981 ("§1981"). Defendant has filed the instant Motion to Dismiss, or, in the alternative, a Motion for Summary Judgment arguing that Plaintiff's claims are time barred. The parties have fully briefed the issues and deem that no hearing is necessary. For the reasons stated below, the Motion for Summary Judgment is **GRANTED.**

**I. Statement of Facts**

On March 19, 1992, Plaintiff completed an employment application with Defendant. (Doc. No. 6-3, at 9). The application included a contractual limitation clause where Plaintiff agreed to bring any legal action against Defendant "within the time prescribed by law or six months from the [*2] date of the event forming the basis for the law suit, whichever expires first." *Id.* On December 3, 1992, Plaintiff began his employment with Defendant, Federal Express. (Doc. No. 6-4). On January 7, 2009, Defendant fired Plaintiff for "falsification/fraudulent activity" in violation of company policies. (Doc. No. 6-5). On June 12, 2009, Plaintiff filed a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and retaliation. (Doc. No. 1, at ¶3(u)). Defendant claims that on February 24, 2010 Plaintiff received a "Right to Sue" letter from the EEOC informing Plaintiff that, if he intended to sue Defendant, he "must file [his lawsuit] in a federal or state court within 90 days of [his] receipt of [the] notice," giving Plaintiff until May 25, 2010 to bring his claim. (Doc. No. 6-1, at 3). Plaintiff alleges that he received the Right to Sue letter on April 8, 2009. (Doc. No. 1, at ¶3(t)). On July 9, 2010, Plaintiff filed his complaint, alleging violations of Title VII, 42 U.S.C. § 1981, and ADEA. (Doc. No. 1).

Page 1

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 99 of 165

2011 U.S. Dist. LEXIS 59708, *2; 112 Fair Empl. Prac. Cas. (BNA) 805

On September 14, 2010, Defendant filed a Motion to Dismiss, or, in the alternative, a Motion for Summary Judgment [*3] stating that 1) Plaintiff did not file his race discrimination claim under Title VII within 90 days of receiving his right to sue letter; 2) Plaintiff did not file in a timely manner a charge with the EEOC for age discrimination and therefore this claim is time barred; 3) Plaintiff filed his claims over nineteen months after his termination, and not within the required six months prescribed in the contractual limitation clause; and 4) Plaintiff failed to state any facts or allegations to support a claim under Title VII, ADEA, or § 1981. Plaintiff has filed no response to the instant motion.

## II. Standards of Review

### a. 12(b)(6) Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United [*4] States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986), or conclusory factual allegations devoid of

any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should [*5] first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### b. Motion for Summary Judgment

Where a motion for dismissal pursuant to Rule 12(b)(6) relies on matters outside the pleadings, the Court treats it as a motion for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including [*6] questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Since the Defendant provides evidence outside of the pleadings to support this motion, the Court will treat it as a Motion

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 100 of 165

2011 U.S. Dist. LEXIS 59708, *6; 112 Fair Empl. Prac. Cas. (BNA) 805

for Summary Judgment.

### III. Discussion

### A. Timeliness of Title [*7] VII Claim

Defendant argues that Plaintiff's Title VII claims of discrimination based on race and retaliation are time barred because of Plaintiff's failure to bring an action within ninety days of his receipt of the Right to Sue letter.

Under Title VII, if a charge, properly filed with the EEOC, is dismissed, the Commission must thereafter notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge. 42 U.S.C. § 2000e-5(f)(1). "The ninety day notice period itself is clear evidence that Congress intended to require claimants to act expeditiously, without unnecessary delay." *Harvey v. City of New Bern Police Dept.* 813 F.2d 652, 654. (4th Cir. 1987). Moreover, "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed. 2d 532 (1980) (overruling a judgment permitting the filing of an EEOC claim outside of the three hundred day statute of limitations). Lastly, if there is a dispute as to when a notice of a right to sue letter is received, [*8] then the court follows the presumption that the notice was received three days after it was mailed. *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975).

In this case, Defendant's exhibits show that Plaintiff's EEOC charge was dismissed on February 24, 2010. (Doc. No. 6-7). The exhibit submitted to support Defendant's motion shows that the EEOC mailed Plaintiff a Right to Sue letter on February 24, 2010. *Id.* However, Plaintiff alleges that he received the Right to Sue letter from the EEOC on April 8, 2009. In either event, Plaintiff has exceeded the ninety day period for filing a timely Title VII claim because he filed his complaint on July 9, 2010- well after ninety days of either alleged date [1]. Here, there is no genuine issue of material fact because taking either date as the accurate date of receipt will preclude Plaintiff from bringing his claim. If Plaintiff received the dismissal on April 8, 2009, as he alleges, the ninety day filing period would have ended on July 7, 2009. If Plaintiff received the dismissal on February 24, 2010, as

Defendant alleges, the ninety day filing period would have ended on May 25, 2010 and Plaintiff filed on July 9, 2010. Therefore, Summary [*9] Judgment is **GRANTED** on Plaintiff's Title VII claim, as this claim is time barred.

> 1   Although Defendant alleges in its motion that Plaintiff's complaint was filed on August 25, 2010, the clerk's certified stamp shows that Plaintiff filed his complaint on July, 9 2010. However, this discrepancy has no effect on the outcome of the case.

### B. Timeliness of ADEA charge

Defendant argues that Plaintiff's alleged ADEA claim is time barred because he failed to file a timely charge with the EEOC. According to Defendant, Plaintiff's injury occurred when Defendant terminated his employment; therefore, Plaintiff had 300 days from January 7, 2009 to file his ADEA claim with the EEOC, which Defendant alleges Plaintiff failed to do.

A plaintiff bringing a suit under the ADEA must file a charge with the EEOC before bringing suit in court. 29 U.S.C.A. § 626 (d)(1). In deferral states, such as Maryland, Plaintiff is given 300 days from the date of which the injury occurred to file a charge with the EEOC. *Id.* No action may commence without first filing a claim with the EEOC within the time periods prescribed. *Id.*

In the case at bar, Plaintiff's alleged injury occurred on January 7, 2009 when Defendant terminated [*10] Plaintiff's employment. Thereafter, he had until November 3, 2009 to file his charge with the EEOC. However, Plaintiff's initial EEOC charge did not include an ADEA claim, nor is there any evidence of Plaintiff making an ADEA claim before filing with the court. (Doc. No. 6-6, at 2). Therefore, there is no genuine issue of material fact as to whether Plaintiff actually filed his ADEA claim with the EEOC in a timely manner, as the undisputed evidence clearly shows that he failed to timely file his ADEA claim with the EEOC. Therefore, Summary Judgment is **GRANTED** to Defendant on Plaintiff's ADEA claim.

### C. Timeliness of Title VII, ADEA, and §1981 under the Contract Provision.

According to Defendant, Plaintiff entered into an employment contract with Federal Express on December

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 101 of 165

2011 U.S. Dist. LEXIS 59708, *10; 112 Fair Empl. Prac. Cas. (BNA) 805

3, 1992, which included a "contractual limitation clause" stating Plaintiff would bring any claims against Defendant "within the time prescribed by law or six months from the date of the event forming the basis of [the] lawsuit, whichever came first." (Doc. No. 6-3, at 9). Defendant argues that Plaintiff's failure to bring his claims within six months of the alleged injury, as prescribed by the limitation clause in [*11] the employment contract, bars all three of Plaintiff's claims.

The Maryland Court of Special Appeals has held that "there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short." *Md. Inc. v. Morabito Consultants Inc.*, 132 Md. App. 158, 172, 752 A.2d 265 (Md. Ct. Spec. App. 2000). The court in *Morabito* outlines a test for determining the validity of a contractual provision shortening the legislatively prescribed statute of limitations, stating:

> In light of these well-settled holdings recognizing that parties' freedom to contract should be given effect absent clear policy considerations to the contrary, we conclude that parties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation. *Id.* at 174.

Furthermore, the Supreme Court has held "since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under [42 U.S.C § 1981], the controlling [*12] period would ordinarily be the most appropriate one provided by state law. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 462, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975). The District Court of Maryland has held that the most appropriate state law period of limitations applicable to a claim under 42 U.S.C § 1981 is three years. *Evans v. Chesapeake and Potomac Tel. Co.*, 535 F.Supp. 499, 500 (D. Md. 1982).

In this case, Plaintiff, through an employment contract, agreed to bring any legal action against Defendant "within the time prescribed by law or six months from the date of the event forming the basis of [the] lawsuit, whichever came first." (Doc. No. 6-3, at 9). Although, the language was not written in "bold" and "capitalized" letters as Defendant alleges, the provision was clearly a part of the contract and was not hidden in any way. Furthermore, there are no apparent statutes preventing Plaintiff and Defendant from entering into this contractual limitation agreement curtailing the legally prescribed time period to file a claim. Nothing on the facts of this case give the court reason to believe that this contractually prescribed limitations period is unreasonable. Although the three year statute of limitations, as [*13] provided by Maryland law, would not bar Plaintiff's 1981 claim, the contractual provision in Plaintiff's employment application does. Finally, there was no mention of contract defenses that would prevent the enforcement of the provision. Defendant terminated Plaintiff on January 7, 2009 and Plaintiff brought his claim on July 9, 2010, nineteen months after the alleged injury. Therefore, since it is undisputed that Plaintiff voluntarily agreed to the six month contractual limitation period for bringing claims against Defendant and Plaintiff actually filed his claim twenty months later, there is no genuine issue of material fact as to whether Plaintiff failed to bring his claim in a timely manner. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the lack of timeliness of Plaintiff's § 1981 claim.

## IV. Conclusion

Plaintiff's claims under Title VII, the ADEA, and §1981 are time barred, because 1) Plaintiff failed to file his Title VII claim within 90 days of the EEOC issuing him a Right to Sue letter; 2) Plaintiff failed to file his ADEA charge with the EEOC within the 300 days of his alleged injury; and 3) Plaintiff failed to comply with the contractual provision [*14] in his employment contract requiring suit against Defendant to be brought within six months of the injury. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED.**

Date: June 2, 2011

/s/

Alexander Williams, Jr.

United States District Judge

EXHIBIT J

LEXSEE



Caution
As of: Jun 04, 2014

JOE M. RAY, JR., Plaintiff, v. FEDEX CORPORATE SERVICES, INC.,
Defendant.

No. 07-2598 JPM-dkv

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
TENNESSEE, WESTERN DIVISION

668 F. Supp. 2d 1063; 2009 U.S. Dist. LEXIS 93517

August 31, 2009, Decided
August 31, 2009, Filed

**SUBSEQUENT HISTORY:** Reconsideration denied by
Ray v. FedEx Corporate Servs., 668 F. Supp. 2d 1063,
2009 U.S. Dist. LEXIS 126110 (W.D. Tenn., 2009)

**PRIOR HISTORY:** Ray v. Fed. Express, 2008 U.S.
Dist. LEXIS 60398 (W.D. Tenn., July 24, 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a case brought under
the Age Discrimination in Employment Act (ADEA), 29
U.S.C.S. § 621 et seq., plaintiff former employee sued
defendant former employer, alleging that the decision to
terminate him was motivated by age discrimination rather
than by a legitimate non-discriminatory reason. The
employer moved for summary judgment, asserting three
claims.

**OVERVIEW:** While the employer asserted that it was
entitled to summary judgment for three reasons, its first
assertion that the employee's case was time-barred was
determinative. The employer argued that the ADEA
claim was time-barred pursuant to the six-month
limitations provision in an employment agreement
(agreement) and that the provision should bar the
employee's claim because the statute of limitations
defense was adequately pled to give him notice and the

agreement was enforceable. There was no dispute that the
employer raised a statute of limitations defense in its
answer. The employee argued unsuccessfully that since
the employer failed to specify that the agreement and not
a statute governed the time period, he was not given
adequate notice. The employee also argued
unsuccessfully that the agreement was unenforceable
because there was no consideration. By accepting
employment, the employee accepted the terms of the
agreement, thereby agreeing to exchange his services for
a salary and other employment benefits. Additionally, the
Old Worker's Benefit Protection Act did not apply since
the employee had waived a procedural right, not a
substantive right, under the agreement.

**OUTCOME:** The employer's motion for summary
judgment was granted, and all other pending motions
were denied as moot.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards >
Appropriateness*
*Civil Procedure > Summary Judgment > Standards >
Genuine Disputes*

Page 1

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 104 of 165

668 F. Supp. 2d 1063, *; 2009 U.S. Dist. LEXIS 93517, **

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*

*Civil Procedure > Summary Judgment > Standards > Materiality*

[HN1]Under Fed. R. Civ. P. 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

*Civil Procedure > Summary Judgment > Standards > Appropriateness*

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*

*Civil Procedure > Summary Judgment > Standards > Materiality*

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*

[HN2]So long as the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact and the nonmoving party is unable to make such a showing, summary judgment is appropriate.

*Civil Procedure > Summary Judgment > Evidence*

*Evidence > Inferences & Presumptions > Inferences*

[HN3]In considering a motion for summary judgment, the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*

[HN4]When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*

*Civil Procedure > Summary Judgment > Standards >*

*Materiality*

[HN5]In the context of a motion for summary judgment, a genuine issue of material fact exists for trial if the evidence presented by the nonmoving party is such that a reasonable jury could return a verdict for the nonmoving party. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > Statutes of Limitations > General Overview*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > Statutes of Limitations > Waiver*

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN6]Fed. R. Civ. P. 8 provides that a party must affirmatively state a statute of limitations defense in its responsive pleading. Fed. R. Civ. P. 8(c). A statute of limitations defense may be waived if not asserted in a responsive pleading and if the plaintiff can show that he was prejudiced as a result of the omission. An affirmative defense may be pled in general terms provided the plaintiff has fair notice of the defense.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > Statutes of Limitations > General Overview*

*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN7]Fed. R. Civ. P. 8 does not create a distinction between a statute of limitations defense and a defendant's assertion that a plaintiff's complaint is contractually time-barred. Moreover, federal courts in the United States Sixth Circuit have routinely referred to contractual limitations periods as statute of limitation periods.

*Contracts Law > Consideration > Adequate Consideration*

[HN8]The general rule is that courts will not inquire into the adequacy of the consideration of a contract.

*Labor & Employment Law > Discrimination > Age*

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 105 of 165

668 F. Supp. 2d 1063, *; 2009 U.S. Dist. LEXIS 93517, **

*Discrimination > Waivers*
[HN9]The Old Worker's Benefit Protection Act (OWBPA), which amends the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq., was enacted to clarify restrictions on employers seeking to have discharged employees waive their rights to file ADEA claims. 29 U.S.C.S. § 626(f)(1). The OWBPA sets out minimum requirements that must be met in order for an ADEA waiver to be valid. 29 U.S.C.S. § 626(f)(1). Before determining whether such requirements were met, however, a court must first be satisfied that the OWBPA is applicable to the case at the bar.

*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*
[HN10]The Old Worker's Benefit Protection Act waiver provision states in pertinent part that an individual may not waive any right or claim under the chapter unless the waiver is knowing and voluntary. 29 U.S.C.S. § 626(f)(1).

*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*
[HN11]Most courts that have considered the rights and claims referred to in the Old Worker's Benefit Protection Act (OWBPA) waiver provision have determined that the provision applies to substantive rights, but not procedural rights. Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN12]It is well-established that statutes of limitations are procedural in nature.

*Contracts Law > Contract Interpretation > General Overview*
[HN13]Contracts may not be interpreted in a manner that would frustrate the intentions of the parties.

*Contracts Law > Breach > Active Breach*
*Contracts Law > Contract Conditions & Provisions > General Overview*
*Contracts Law > Contract Interpretation > General Overview*

[HN14]Like an arbitration agreement or a forum selection clause, an agreement to reduce a statute of limitations period is a structural provision. If unilateral claims of material breach of contract nullified statute of limitations provisions in the contracts, such provisions would be futile.

COUNSEL:  [**1] For Joe M. Ray, Jr., Plaintiff: Maureen T. Holland, HOLLAND & ASSOCIATES, PLLC, Memphis, TN.

For Fedex Services, Defendant: John W. Campbell, LEAD ATTORNEY, FED EX EXPRESS, Memphis, Tn; Terrence O. Reed, LEAD ATTORNEY, FEDERAL EXPRESS CORPORATION, Memphis, TN.

JUDGES: JON PHIPPS McCALLA, CHIEF UNITED STATES DISTRICT JUDGE.

OPINION BY: JON PHIPPS McCALLA

OPINION

[*1064]  **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is FedEx Corporate Services, Inc.'s ("Defendant" or "FedEx Services") Motion for Summary Judgment (Doc. 67), filed March 13, 2009. Joe M. Ray, Jr. ("Plaintiff") responded in opposition on April 13, 2009 (Doc. 70). With leave of Court, Defendant filed a reply brief (Doc. 84) on May 4, 2009. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

**I. RELEVANT FACTS**

This cause of action arises out of Plaintiff's employment with Defendant. On August 2, 2002, Plaintiff applied for employment with FedEx Services. (Def.'s Mot. for Summ. J. Ex. 2, Decl. of Lynn Diebold (hereinafter "Diebold Decl.") P 12.) At that time, Plaintiff executed an "Employment Agreement," which contained terms and conditions of employment with Defendant. (*Id.*) The Employment Agreement contained a  [**2] provision stating that if Plaintiff wishes to bring legal action against FedEx Services, he is required to do so "within the time prescribed by law or 6 months from the date of the event forming the basis of the lawsuit, whichever expires first." (*Id.,* Ex. C thereto at 18.)

Plaintiff signed the Employment Agreement, indicating that he had read its contents and understood its terms. (Def.'s Mot. for Summ. J. Ex. 1, Excerpts of Joe M. Ray, Jr. Dep. (hereinafter "Ray Dep.") 23:10-24:15.) On September 24, 2002, FedEx Services hired Plaintiff as a Business Development Analyst. (*Id.* 12:11-18.)

On February 24, 2006, Defendant terminated Plaintiff's employment, citing a good-faith belief that he had engaged in illegal activity and violated FedEx Service's discipline policy as reasons for his termination. (Def.'s Mot. for Summ. J. Ex 8, Decl. of Allan Carmack P 8; Diebold Decl. PP 7-9.) At the time Plaintiff was terminated, he was forty-six years old. (Ray Dep. 21:3-4.) On September 19, 2007, Plaintiff brought this cause of action under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), alleging that Defendant's decision to terminate him was motivated by age discrimination [**3] rather than by a legitimate non-discriminatory reason.

## [*1065] II. STANDARD OF REVIEW

[HN1]Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). [HN2]So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). [HN3]In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[HN4]When confronted with a properly-supported motion for summary judgment, the nonmoving party "must [**4] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998). [HN5]A genuine issue of material fact

exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. ANALYSIS

In the instant Motion, Defendant argues that it is entitled to summary judgment because: (1) Plaintiff's case is time-barred; (2) Defendant has identified legitimate non-discriminatory reasons for terminating Plaintiff; and (3) Plaintiff cannot establish that Defendant's reasons were pretextual. [1]

> 1 For purposes of this Motion, Defendant does not dispute that Plaintiff can establish a prima facie case for age discrimination under the ADEA. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (establishing the burden of proof for employment [**5] discrimination cases); *see also Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (applying the *McDonnell Douglas* framework to age discrimination cases brought under the ADEA).

Having reviewed the parties' briefs and supporting evidence, the Court finds that Defendant's first ground for summary judgment is determinative. The Court will therefore limit its discussion to whether Plaintiff's claim was timely filed.

Defendant argues that Plaintiff's ADEA claim is time-barred pursuant to the six-month limitations provision in the Employment Agreement. Defendant asserts that the provision should bar Plaintiff's claim because: (A) the statute of limitations defense was adequately pled to give Plaintiff notice and (B) the Employment Agreement is enforceable.

### A. Notice Pleading

As an initial matter, Plaintiff argues that notwithstanding the enforceability of the Employment Agreement, Defendant failed to assert a "contractual shortening of a limitations period" as an affirmative

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 107 of 165

668 F. Supp. 2d 1063, *1065; 2009 U.S. Dist. LEXIS 93517, **5

defense. As a result, Plaintiff [*1066] argues, Defendant has waived its right to raise the defense in its summary judgment motion.

[HN6]Rule 8 of the Federal Rules of Civil Procedure provides that a party must affirmatively [**6] state a statute of limitations defense in its responsive pleading. FED. R. CIV. P. 8(c). A statute of limitations defense may be waived if not asserted in a responsive pleading and if the plaintiff can show that he was prejudiced as a result of the omission. *See Stupak-Thrall v. Glickman,* 346 F.3d 579, 585 (6th Cir. 2003) (finding that the government did not waive its statute of limitations defense because plaintiff had a fair opportunity to respond to the defense and, as a result, was not prejudiced). An affirmative defense may be pled in general terms provided the plaintiff has fair notice of the defense. *Davis v. Sun Oil Co.,* 148 F.3d 606, 614 (6th Cir. 1998) ("[A]n affirmative defense may be pleaded [sic] in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives plaintiff fair notice of the nature of the defense.") (*quoting* 5 Charles Alan Wright & Arthur R. Miller, 5 *Federal Practice and Procedure* § 1274 (3d ed. 2009)).

There is no dispute that Defendant raised a "statute of limitations" defense in its Answer. Defendant's Answer states in pertinent part that "[s]ome or all of Plaintiff's claims are barred by the applicable [**7] statute of limitations." (Def.'s Answer to Pl.'s Compl. (Doc. 9) P 7.) Plaintiff argues, however, that because Defendant failed to specify that a "contract" and not a "statute" governed the time in which he could bring his claim, Plaintiff was not given adequate notice of the defense. The Court is not persuaded.

[HN7]Rule 8 does not create a distinction between a statute of limitations defense and a defendant's assertion that a plaintiff's complaint is contractually time-barred. Moreover, federal courts in this circuit have routinely referred to contractual limitations periods as "statute of limitations" periods. *See e.g., Austral-Pac. Fertilizers, Ltd. v. Cooper Indus., Inc.,* 1997 U.S. App. LEXIS 5383, 1997 WL 124097 at *6 (6th Cir. Mar. 18, 1997) ("Austral-Pacific and Cooper Industries included implied warranties . . . not subject to any contractual violation of limitations."); *Laborers' Pension Trust Fund v. Rocwall Co.,* 2008 U.S. Dist. LEXIS 16722, 2008 WL 619206 at *1 (E.D. Mich. Feb. 28, 2008) ("In essence, the Clause is

a contractual statute of limitations that requires the Union to timely file a complaint . . . ."); *Burton v. Nationwide Ins. Co.,* 2007 U.S. Dist. LEXIS 82501, 2007 WL 3309076 at *3 (E.D. Tenn. Nov. 6, 2007) ("'[T]he contractual statute of limitations [**8] begins to run upon denial of liability . . . .'").

Plaintiff cites no case law where a court has distinguished a statute of limitations affirmative defense from a contractual limitations defense for purposes of Rule 8 notice pleading. Furthermore, assuming *arguendo,* that a distinction exists, a "contractual" limitations defense is not one of the affirmative defenses enumerated in Rule 8(c), and thus, is not subject to waiver under the rule. For these reasons, the Court finds that Defendant has not waived its contractual statute of limitations defense.

**B. Enforceability**

Defendant argues that the Employment Agreement is enforceable because: (1) there was consideration; (2) a contractual limitations provision is consistent with public policy; and (3) a breach of good faith and fair dealing, if one exists, does not affect Plaintiff's obligation to comply with the six-month limitations provision.

**1. Consideration**

It is undisputed that when Plaintiff applied for employment at FedEx Services, he executed an Employment Agreement containing the terms and conditions of employment. [*1067] The Employment Agreement provided in relevant part that:

> To the extent the law allows an employee to bring legal action [**9] against FedEx Corporate Services, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

(Diebold Decl., Ex. C at 18.)

While Plaintiff does not dispute that he signed the Employment Agreement, he asserts that the contract is unenforceable because there was no consideration. Specifically, Plaintiff argues that the agreement was signed before he was employed with FedEx Services, and that he "received no extra benefit by agreeing to the six

Case 1:13-cv-01711-SKO   Document 23   Filed 06/04/14   Page 108 of 165

668 F. Supp. 2d 1063, *1067; 2009 U.S. Dist. LEXIS 93517, **9

month period . . . ." (Pl.'s Resp. to Def.'s Mot. for Summ. J. 19.) The Court disagrees.

At the time Plaintiff accepted the position at FedEx Services, he had already executed the Employment Agreement indicating that he understood the terms of employment with Defendant. FedEx Service's subsequent promise to hire Plaintiff was a valid offer of employment based on the terms of the agreement. By accepting employment with FedEx Services, Plaintiff accepted the terms of the Employment Agreement, thereby agreeing to exchange his services for a salary and other employment benefits. That Plaintiff was not yet an employee of FedEx Services is not determinative [**10] since Plaintiff knew the terms of his employment before he accepted the offer. The Court finds that Plaintiff received consideration for entering into the Employment Agreement.

While Plaintiff asserts that he received "no extra benefit by agreeing to the six month period," he does not offer evidence to support the proposition that an "extra benefit" was necessary. Moreover, to the extent Plaintiff argues that consideration was inadequate, the Court declines to make such a determination. *See Cleveland-Cliffs Iron Co. v. Chicago N.W. Transp.*, 581 F. Supp. 1144, 1150 (D.C. Mich. 1984) ([HN8]"[T]he general rule is that courts will not inquire into the adequacy of the consideration of a contract."); 3 Richard A. Lord, *Williston on Contracts* § 7:21 (4th ed. 2009) ("It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration as long as the consideration is otherwise valid or sufficient to support a promise.").

## 2. Public Policy Regarding Modified Limitation Periods

Defendant argues that "[i]t is a well-settled principle that parties may agree to a limitations period shorter than that provided by federal or state law." (Def.'s Mot. for Summ. J. 19.) [**11] Defendant cites *Order of United Commercial Travelers Am. v. Wolfe*, to support the proposition that a contractual modification of a statute of limitations period is consistent with policies supporting parties' freedom to contract. 331 U.S. 586, 608, 67 S. Ct. 1355, 91 L. Ed. 1687 (1947) ("It is well established that . . . a provision in a contract may validly limit, between the parties, the time for bringing an action . . . less than that prescribed in the general statute of limitations, provided the shorter period itself shall be a reasonable period."). While Plaintiff does not dispute that parties may

generally contract to abbreviate a statute of limitations period, he asserts that, in age discrimination cases brought under the ADEA, such a contract must comport with the requirements of the Old Worker's Benefit Protection Act ("OWBPA").

[HN9]The OWBPA, which amends the ADEA, was enacted to clarify restrictions on employers seeking to have discharged employees waive their rights to file ADEA claims. 29 U.S.C. § 626(f)(1). The OWBPA sets out minimum requirements that [*1068] must be met in order for an ADEA waiver to be valid. *Id.* Before determining whether such requirements were met, however, the Court must first be satisfied [**12] that the OWBPA is applicable to the case at bar.

[HN10]The OWBPA waiver provision states in pertinent part that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." *Id.* Thus, for the OWBPA to apply, Plaintiff must establish that by signing the Employment Agreement, he waived a "right or claim" under the ADEA.

[HN11]Most courts that have considered the rights and claims referred to in the OWBPA waiver provision have determined that the provision applies to substantive rights, but not procedural rights. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 13 (1st Cir. 1999) (finding that the OWBPA's reference to "any right" applies to substantive rights, and not the right to a jury trial, a procedural right); *see also Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) ("We recognize that Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under ADEA . . . ."). Plaintiff does not cite any case law where a court has found that the OWBPA waiver provision applies to both substantive and procedural rights.

[HN12]It is well-established that statutes of limitations [**13] are procedural in nature. *See Manning v. Fort Deposit Bank*, 619 F. Supp. 1327, 1331 (D.C. Tenn. 1985) ("The statute of limitations is a remedial device only and does not affect the substantive rights of the parties."); *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 461 (N.D. Ohio 2008) ("The idea that statutes of limitation affect procedural rights and not substantive rights can be traced back at least as far as the United States Supreme Court decision in *Campbell v. Holt*, 115 U.S. 620, 6 S. Ct. 209, 29 L. Ed. 483 (1885).").

Having found that the OWBPA waiver provision applies to substantive and not procedural rights, and having also found that a statute of limitation is procedural in nature, the Court concludes that the OWBPA is inapplicable in the instant case.

### C. Effect of Alleged Breach

Plaintiff argues that even if the Court were to determine that the Employment Agreement is an enforceable contract, Defendant materially breached the implied covenant of good faith and fair dealing by discriminating against Plaintiff, thereby extinguishing Plaintiff's obligation to comply with its terms. The Court disagrees.

Courts have long held that [HN13]contracts may not be interpreted in a manner that would frustrate the intentions [**14] of the parties. *See Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.* 78 S.W.3d 885, 889 (Tenn. 2002); *Datron, Inc. v. CRA Holdings, Inc.,* 42 F. Supp. 2d 736, 741 (W.D. Mich. 1999); *Bense v. Interstate Battery Sys. of Am.,* 683 F.2d 718, 722 (2d Cir. 1982). [HN14]Like an arbitration agreement or a forum selection clause, an agreement to reduce a statute of limitations period is a structural provision. If unilateral claims of material breach of contract nullified statute of limitations provisions in the contracts, such provisions would be futile. *See Org. Comm. for 1998 Goodwill Games, Inc. v. Goodwill Games, Inc.,* 919 F. Supp. 21, 24-25 (D.D.C. 1995) (finding that if an agreement to arbitrate disputes could be voided by a unilateral claim of material breach, arbitration provisions would be meaningless); *CK DFW Partners Ltd. v. City Kitchens, Inc.,* 2007 U.S. Dist. LEXIS 60934, 2007 WL 2381259 at *6 n.2 (N.D. Tex. Aug. 17, 2007) ("If a material breach of a contract were deemed to excuse further performance of the contract's forum selection clause, forum selection [*1069] clauses could essentially be rendered meaningless in actions for breach of contract."). The Court finds that the six-month statute of limitation provision [**15] in the Employment Agreement is enforceable.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Accordingly, all other pending Motions are DENIED AS MOOT.

SO ORDERED this 31st day of August, 2009.

/s/ JON PHIPPS McCALLA

CHIEF UNITED STATES DISTRICT JUDGE

# End Of LexisNexis® Get & Print Report

**Session Name:**      **GP540604**

**Date:**      **June 04, 2014**

**Client:**      default

# EXHIBIT K

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL M. DUMAS,

        Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

        Defendant.

_____/

Case No. 03-72402

Honorable Nancy G. Edmunds

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]

This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff, Darryl Dumas, filed this action against his former employer, Federal Express Corporation ("FedEx"), alleging that FedEx discriminated against him because of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under the Michigan Elliot-Larsen Civil Rights Act ("MELCRA"), M.C.L. § 37.2101 *et seq.* He also alleges that FedEx retaliated against him for a prior race discrimination lawsuit he brought against FedEx. For the reasons more fully explained below, the Court GRANTS Defendant's motion as to Plaintiff's state law claims because they are untimely, and also GRANTS Defendant's motion as to Plaintiff's federal claims.

## I. Facts

Dumas began working for FedEx on March 1, 1993. (Dumas Dep. at 10, attached as Def. Ex. A.) In the course of applying for a position with FedEx, Dumas completed and signed an Application for Employment. (Application for Employment, Def. Ex. B.) The last

paragraph of the application, directly above Dumas' signature, states: "To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first."

Dumas' first position was a Handler, and then he became a Courier. A Courier is a driving position. (Dumas Dep. at 22.) On November 5, 1999, Dumas filed a Complaint in Washtenaw County Circuit Court alleging that his manager discriminated against him based on his race by not approving a transfer from FedEx's Romulus location to a location in Ann Arbor. (Dumas Dep. at 47-48.) The parties settled the case within one year for $30,000. (Dumas Dep. at 48.)

On July 7, 2002, the Van Buren Township Police Department issued Dumas citations for operating a vehicle under the influence of alcohol, open intoxication, and speeding. (Uniform Law Citation, attached as Def. Ex. E; Dumas Dep. at 53.) According to FedEx's *People Manual*, if an employee in a driving position receives a citation for driving a motor vehicle under the influence of alcohol, whether while working or not, FedEx removes the employee from his driving position. (*People Manual* at 213-14, attached as Def. Ex. F.) In accordance with this policy, Dumas' manager, Sam Minnis, suspended Dumas with pay on July 9, 2002, pending an internal investigation. (Letter dated July 9, 2002, attached as Def. Ex. H.; Dumas Dep. at 57.)

Dumas returned to work a week later, on July 15, 2002, but he was not permitted to drive. He still earned pay as a Courier but he acted as a "jumper." (Dumas Dep. at 58, 75-76.) A jumper rides as a passenger in a FedEx delivery truck and helps the Courier navigate or unload/load the truck. (Minnis Dep. at 32; Bill Dep. at 33, 38; Dumas Dep. at

2

79.) FedEx does not recognize a jumper as a separate position like a Courier or Handler; rather, persons with other job titles from time to time act as jumpers. (Minnis Dep at 31.)

According to FedEx's Driving Qualifications policy, an employee in a driving position who has been convicted of his first driving while intoxicated offense can either be placed in an open non-driving position within his location, if one is available, or he has a 90-day leave of absence to apply for other non-driving positions within FedEx. If the employee cannot locate another non-driving position within 90 days, he is terminated. (*People Manual* at 214; Dumas Dep. at 61.)

On July 19, 2002, Senior Safety Specialist Michael Bill noticed that Dumas was still a Courier. (Bill Dep. at 27; email dated July 19, 2002, attached as Def. Ex. K.) In an e-mail from Bill to Minnis, Bill instructed Minnis that Dumas should not still be a Courier even if he was not actually driving. Rather, Minnis should place Dumas on a personal leave of absence or placed in a non-driving position. (Def. Ex. K.) Bill also wrote: "Please refrain from creating work for him. This creates problems and Darryl has a propensity for lawyers . . . ." *Id.*

On August 23, 2002, Dumas was still a Courier, and Bill reminded Dumas' supervisors to place Dumas in a non-driving position, and to prohibit Dumas from driving FedEx vehicles. (Email dated Aug. 23, 2002, attached as Def. Ex. L.) A week later, on August 29, 2002, Bill again reminded the supervisors that Dumas had to be placed in a non-driving position. *Id.* He also wrote: "it's going to blow up if you don't do it soon. This guy is magnetic when it comes to making trouble." *Id.*

There were no open full-time non-driving positions in Dumas' location at the time. (Minnis Dep. at 48.) The only available position was a part-time Handler position. *Id.* at

47. Minnis offered Dumas the position on September 5, 2002. (Minnis Dep. at 45; Letter dated September 5, 2002, attached as Def. Ex. M.) Part of the letter stated: "As a condition of acceptance you will be ineligible to apply for other positions outside the DTWA Station for a period of 12 months from your start date." *Id.* Dumas accepted the part-time position on September 6, 2002. Three other employees incurred drunk driving infractions during this same general time frame, but the Court will recite their specific circumstances in the analysis section of this Opinion.

Within several months of working in this part-time position, FedEx reduced his hours so significantly that he took a second job. (Dumas Aff., attached as Pl. Ex. A.) He ultimately quit his job at Federal Express. *Id.*

On June 20, 2003, Dumas filed a six count complaint against FedEx alleging violations of :

    (1) Title VII (Intentional Discrimination);

    (2) Title VII (Disparate Treatment);

    (3) Title VII (Retaliation);

    (4) MELCRA (Intentional Discrimination);

    (5) MELCRA (Disparate Treatment);

    (6) MELCRA (Retaliatory Discharge).

## II.   Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

4

a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

### A. Timeliness of the Complaint

All of the events that give rise to Plaintiff's suit occurred between August and October of 2002. FedEx switched Plaintiff from the full-time Courier position to a part-time Handler position with a lesser rate of pay on August 25, 2002. (Ex. M.) On September 6, 2002, he accepted that position. *Id.* FedEx then reduced his hours further to about 3 hours a day sometime before October 4, 2002. (Dumas Dep. at 10, 97.) Plaintiff filed this suit on June 20, 2003, more than six months beyond any of these events. Therefore, Defendant argues

5

that the six month limitation on actions in his employment application requires this Court to dismiss his state law and federal law claims.  Plaintiff responds that as to his federal claims, a court cannot enforce an employment contract to reduce the time to bring legal action where such a contract would prevent a Plaintiff from bringing a Title VII claim, and that is the case here.  As to his state claims, he argues that any contractual limitation on the timing of claims must be reasonable, and this one is not.

### 1. Federal Claims

Filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtaining a right to sue letter from the EEOC are prerequisites to filing a Title VII suit in federal court. *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031-32 (6th Cir. 1998).  Pursuant to 42 U.S.C. § 2000e-5(e)(1), an individual must file a charge within the statutory time period (180 days from the allegedly unlawful practice) and serve notice upon the person against whom the charge is made. *Amtrak v. Morgan*, 536 U.S. 101 (2002). After receiving the charge, if the EEOC chooses not to file suit on behalf of the government, then it issues a right to sue letter to the complainant. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999).  The complainant may request a right to sue letter from the EEOC if the EEOC fails to make a determination after 180 days. *Id.* at 456.

In this case, Plaintiff switched to a part-time position on September 6, 2002, and his hours were significantly reduced sometime before October 4, 2002[1].  Plaintiff filed a charge

---

[1]The evidence presented to this Court does not establish the date.  Plaintiff testified that he had to take a second job at St. Joseph Mercy Hospital because of the cut in hours, and he started that second job on October 4, 2002.  (Dumas Dep. at 10, 97.)  The only reasonable inference, therefore, is that FedEx cut his part-time hours before October 4, 2002.

6

of race discrimination and retaliation against Defendant with the EEOC on October 30, 2002. Plaintiff received his Right to Sue letter from the EEOC on March 25, 2003, just ten days before the six-month limitation on actions expired. The Court will not enforce the six month limitation as to Plaintiff's federal causes of action because in this case, the EEOC did not issue Plaintiff a right to sue letter until the six months had nearly passed.[2] The Court does not offer an opinion as to whether a six month limitation clause is invalid *per se* as applied to Title VII causes of action, but holds that in this particular case, the prerequisites for filing a Title VII suit effectively prevented Plaintiff from bringing his federal causes of action within the six month period. Therefore, it would be unreasonable to enforce the six month limitation.

### 2. State Claims

As to Plaintiff's state law discrimination claims, the above analysis is inapplicable because Plaintiff is not required to wait for administrative approval before filing suit. Michigan courts allow parties to contract for a period of limitation shorter than that provided by statute. *Camelot Excavating Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 301 N.W.2d 275, 276 (Mich. 1981). However, the limitation must be reasonable. *Id.* at 277. A limitation must pass the following three prong test to be reasonable:

(1) the claimant had sufficient opportunity to investigate and file the action;

(2) the time is not so short as to work a practical abrogation of the right of action; and

---

[2]Defendant cites *Wright v. DaimlerChrysler Corp.*, 220 F. Supp. 2d 832 (E.D.Mich. 2002), wherein this Court held a six month contractual limitation on lawsuits by employees against DaimlerChrysler was enforceable against the employee. That case is distinguishable on the facts because there, the plaintiff did not argue (nor do the facts support the inference) that waiting for her right to sue letter prevented her from filing her federal lawsuit within the six months.

(3) the action is not barred before the loss or damage can be ascertained. *Id.*

Employment contracts in particular may include a limitation on lawsuits shorter than the statutory limitation. *See Herweyer v. Clark Highway Services, Inc.*, 564 N.W.2d 857 (Mich. 1997); *Timko v. Oakwood Custom Coating, Inc.*, 625 N.W.2d 101 (Mich. Ct. App. 2001). However, the Michigan Supreme Court has cautioned that limitations in employment contracts deserve close scrutiny because of the unequal bargaining power of the parties. *Herweyer*, 564 N.W.2d at 860.[3] Therefore, the question for the court is whether the six month limitation is reasonable.

The *Timko* court held that a six month limitation in an employment contract was reasonable. In that case, plaintiff Ernest Timko signed an application for employment with defendant Oakwood Custom Coating ("Oakwood") that included a clause limiting actions or suits arising out of his employment to 180 days after the event giving rise to the claim. *Timko*, 625 N.W.2d at 102-3. Oakwood discharged Timko on February 7, 1997. Timko, in turn, sued Oakwood on March 3, 1998, for unlawful age discrimination. Oakwood moved for summary disposition based on the six month limitation. Timko replied that the limitation should not be enforced because there was no consideration to support the contract, or, alternatively, it was a contract of adhesion. *Id.* at 103. The trial court rejected Timko's arguments, granted Oakwood's motion, and Timko appealed. *Id.*

The Michigan Court of Appeals analyzed the case by first deciding if the limitation was reasonable. The court adopted the reasoning of the Sixth Circuit, which held in *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (1988), that "[t]here is nothing inherently

---

[3]Terms contained in an employment application become part of the contract for employment. *Timko*, 625 N.W.2d at 106.

8

unreasonable about a six month limitations period." *Id.* at 105. The court reasoned that "[b]oth Michigan law and federal law provide for six-month or even shorter periods of limitation in the context of various employment actions."[4] *Id.* Because a six month limitation was not inherently unreasonable, and Timko failed to provide any evidence that the specific limitation in his contract was unreasonable, the court concluded that the limitation was reasonable and enforceable. *Id.* at 106.[5] Therefore, under Michigan law, six month limitations in employment contracts are not inherently unreasonable. Rather, each limitation must be evaluated pursuant to the *Camelot* three-prong reasonableness test.

In *Wright v. DaimerChrysler Corp.*, 220 F. Supp. 2d 832 (E.D. Mich. 2002), this Court applied the analysis above to find that a six month limitation was reasonable. In this case, the six month limitation is not inherently unreasonable, and Plaintiff has not shown why it is unreasonable in this particular case. *See. e.g., Krusinksi v. DaimlerChrysler Corp.*, No. 239873, 2004 Mich. App. LEXIS 507, at \*2 (Mich. Ct. APP. Feb. 19, 2004) (holding that a six month limitation was a reasonable length of time); *Komejan v. Federal Express Corp.*, No. 1:02-CV-747 (E.D. Mich. April 27, 2004). Therefore, the Court GRANTS Defendant's motion for summary judgment as to the state law claims.

### B. Racial Discrimination Counts

Plaintiff seeks to show there is a genuine issue of material fact as to Defendant's intentional racial discrimination by direct evidence of racial discrimination and indirect

---

[4]The court cited M.C.L. 423.216(a) (unfair labor practices), M.C.L. 15.363(1) (Whistleblowers' Protection Act), and 9 U.S.C. 160(b) (unfair labor practices).

[5]The court went on to hold that the employment contract was valid and enforceable since it did not lack consideration nor was it a contract of adhesion.

9

evidence of racial discrimination. If there is direct evidence of discriminatory intent, the employer then has the burden of persuasion and production to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination. *Johnson v. Kroger Co.*, No. 01-3432, slip op. at 9 (6th Cir. 2003).

> This court has explained that "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.

*Id.*

If there is no direct evidence, Plaintiff may attempt to prove discrimination through circumstantial evidence, or put another way, Plaintiff can show discrimination through Defendant's disparate treatment of him compared to other employees. To establish a prima facie case of disparate treatment race discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) Defendant treated similarly-situated employees not in his protected class more favorably or replaced him by a member outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Reisman v. Regents of Wayne State Univ.*, 470 N.W.2d 678, 685 (Mich. Ct. App. 1991); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). A prima facie case raises a presumption of discrimination. *Hazle v. Ford Motor Co.*, 68 N.W.2d 515, 521 (Mich. 2001).

If Plaintiff establishes a prima facie case of race discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for its employment decision to rebut the presumption of discrimination. *Id.* If Defendant produces evidence of a nondiscriminatory

10

reason, in order to survive summary judgment, Plaintiff must demonstrate that "the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id.* at 522 (quoting *Lytle v. Malady (On Rehearing)*, 579 N.W.2d 906 (Mich. 1998)).

### 1. Direct Evidence

The Sixth Circuit defines direct evidence in an employment discrimination claim as "that evidence, which if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Plaintiff argues that Bill's e-mails are direct evidence of intentional race discrimination because (a) Bill was meaningfully involved in an adverse employment decision against Plaintiff; (b) Bill wrote e-mails that could support the inference that Plaintiff's prior lawsuit was the reason Bill insisted on changing Plaintiff's employment status this time; (c) Bill knew Plaintiff was Black when he wrote the e-mails; (d) there is no dispute that Plaintiff's prior lawsuit was based on allegations of race discrimination; and therefore (e) Plaintiff has enough evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.

Bill's e-mails are not direct evidence of racial discrimination because they do not require a factfinder to conclude that race was a motivating factor. A reasonable factfinder could infer that the e-mail meant Plaintiff should not be afforded special treatment because providing treatment outside of official policy can create legal liability. Therefore, the e-mail does not require the conclusion that race was a motivating factor.

11

## 2. Circumstantial Evidence/Disparate Treatment

In this case, it is undisputed that Plaintiff is a member of a protected class, was subject to an adverse employment action (demoted from Courier to part-time Handler, and then having his part-time hours reduced), and that he was qualified for the position. In addition to those elements, Plaintiff still must show that for the same or similar conduct he was treated differently from similarly-situated non-minority employees. *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir. 1988). To qualify as "similarly situated" in the disciplinary context, "the plaintiff and the colleagues to whom he seeks to compare himself 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff claims that Defendant treated the following three other similarly situated employees more favorably: Nancy Yackel, Walt Beauchamp, and Steve Langley. Nancy Yackel was a Courier for FedEx when she received a DUI in October 1998. (Yackel Dep. at 16, attached as Def. Ex. O.) Her supervisor was Dennis Hollingsworth. *Id.* at 10. Yackel immediately notified FedEx of her offense, and FedEx suspended her with pay pending investigation. She was then removed from her driving position. *Id.* at 17, 25. According to FedEx policy, Yackel had 90 days to find a non-driving position within the company. *Id.* at 18. At the time, there were two part-time Handler positions open - one for the morning shift and one for the evening shift. *Id.* Yackel took both positions, working in the morning and then coming back in the evening. *Id.* at 19, 21. FedEx paid her less as

12

a Handler than as a Courier. *Id.* at 23. The offer letter Yackel signed contained a time-in-department requirement of 24 months. *Id.* at 27-28. Three years later, after Yackel was again qualified for a driving position, she had to bid on a Courier position. She was third in the ranking for that position, but the first two applicants declined the offer, and Yackel accepted it. *Id.* at 31-33.

Walt Beauchamp was a Courier for FedEx in 2002. In March or April of 2002, Beauchamp had his fourth accident within 18 months. (Beauchamp Dep. at 7, attached as Def. Ex. J.) His supervisor was Angela Wolfgang. *Id.* at 10. FedEx suspended him with pay pending an investigation, and removed him from his driving position. *Id.* at 10-12. Beauchamp knew he had to look for a new position, and he asked whether anything was available at that location. He was told there was a Handler position open. *Id.* at 12. He accepted the position the same day. *Id.* at 14.

Steve Langley was a Courier from 1992 until he was charged with operating a vehicle under the influence of alcohol in March 1999. (Langley Decl. ¶ 2-3.) At the time, his supervisor was Martin Guzzetta. FedEx suspended him with pay pending investigation, and removed him from his driving position. *Id.* at ¶ 3. Langley bid on a Dispatch position, but was not offered the position. *Id.* at ¶ 4. Later, Langley bid on a part-time Customer Service Agent position, and obtained that position in June, 1999. *Id.* at ¶ 5.

Plaintiff claims that FedEx treated each of these three co-workers better because Bill did not notify any of their supervisors that they were not to work as jumpers or not to create work for them. (Bill Dep. at 62-64, 66, 68-73.) Furthermore, two of the three co-workers were offered full-time work following their drunk driving citations.

13

The fact that Defendant offered two of the other employees full-time positions is not evidence of discrimination where each was suspended with pay pending an investigation; each was removed from a driving position; each had the options of taking an available position at that location or take 90 days to find a position elsewhere in the company; and one of the three ended up with a part-time position, just like Plaintiff. Even the full-time employees took lower paying positions than the employees' former Courier positions. That two of the other employees received full-time positions is evidence of lucky timing, but not of discrimination.

The fact that Bill did not send e-mails to those three employees' supervisors does not indicate disparate treatment; rather, it is only a reflection of the fact that those employees were more quickly removed from their Courier (driver) positions and therefore their supervisors needed no such reminders.

Likewise, the fact that his hours were cut to an unsustainable level after he began the part-time position likewise does not represent different treatment because Plaintiff has not shown that FedEx did not reduce the hours of the other part-time Handlers during the same time frame.

Even if Plaintiff did articulate a *prima facie* case of discrimination, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the employee's treatment. *See McDonnell Douglas*, 411 U.S. at 802.

Defendant claims that the reduction in Plaintiff's hours was a product of Plaintiff's new part-time position and that he was not offered a full-time position because none were available at his location. Once Defendant articulates a legitimate, non-discriminatory reason, Plaintiff must demonstrate that Defendant's proffered reasons are merely

14

pretextual for illegal discrimination. *Id.* at 804-805. Plaintiff must show "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 729 (6th Cir. 1999). A plaintiff does not meet this burden of persuasion by merely denying the defendant's proffered reason without producing substantiation. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Plaintiff has not presented any evidence showing that the articulated reason has no basis in fact, that it did not in fact motivate the discharge, or that they were insufficient to motivate the discharge. Defendant's undisputed evidence shows that there was not a full time position available when Plaintiff was removed from his Courier position. Therefore, even if Plaintiff has a *prima facie* case of discrimination, Defendant had a non-discriminatory reason for placing Plaintiff in a part time position, and Plaintiff has not come forward with any evidence demonstrating that the reason is merely pretext for discrimination.

### C. Retaliation

42 U.S.C. § 2000e-3(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Like his race discrimination claim, Plaintiff may prove unlawful retaliation by direct evidence or circumstantial evidence. "Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action."

*Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis in original).

Plaintiff argues that the e-mails from Bill to Plaintiff's immediate supervisors is direct evidence of retaliation. Bill testified that he knew Plaintiff had made a complaint of race discrimination within the last few years. (Bill Dep. at 15, 18.) A plain reading of the e-mails does not require the conclusion that the adverse action demanded was punishment for Plaintiff's prior lawsuit. As mentioned above, a reasonable reading could be that providing more favorable treatment than policy required to some employees could create legal liability for FedEx.

In the absence of direct evidence, Plaintiff must establish a *prima facie* case of retaliation. To do so, he must show that: (1) he previously engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by Defendant; (3) that, thereafter, Defendant took an employment action adverse to Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Abbott*, 348 F.3d at 542. If Plaintiff succeeds, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The burden then shifts back to Plaintiff to demonstrate that the articulated reason has no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action. *Id.*

As for Plaintiff's *prima facie* case, the parties dispute only the fourth prong:[6] Defendant claims there is no causal connection between the protected activity and the adverse employment actions. "To establish the causal connection that the fourth prong requires,

---

[6]Bill admitted at his deposition that he knew Plaintiff had previously filed a discrimination complaint against Defendant. (Bill Dep. at 14-15, 18.)

16

the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Id.* at 543. The causal connection can be established by a close temporal proximity between the protected activity and the adverse action, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004), but a longer time separating the two events will not necessarily destroy an inference of causation if there is other evidence of causation. *Abbott*, 348 F.3d at 544.

Bill's e-mail, the only evidence that could create a question of fact as to causation, does not. The only reasonable inference from the e-mail is that Defendant was concerned about legal liability if it treated some employees according to policy and some outside of policy. As to Defendant's reduction of Plaintiff's hours once he was a part-time handler, Plaintiff has not come forward with any evidence showing any causal connection between his past lawsuit and that adverse action. Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's federal retaliation claim.

### D. Defendant's Motion to Strike

After Plaintiff filed his response to the motion for summary judgment, Defendant filed a motion to strike two of his exhibits: his affidavit and the EEOC right to sue letter.

### 1. Plaintiff's Affidavit

Defendant argues that Plaintiff's affidavit does not satisfy the personal knowledge requirement of Fed. R. Civ. P. 56(e), and the Court must therefore disregard it. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (holding that a court should disregard documents in support of a motion for summary judgment that do not satisfy Rule 56(e)). Specifically, Defendant objects to the following two paragraphs:

17

16. Three other white couriers, Nancy Yackel, Walt Beauchamp, and Steve Langley were also taken off the road for driving violations, but Ms. Yackel and Mr. Beauchamp were immediately placed in full-time non-driving positions.

17. Neither Ms. Yackel nor Mr. Beauchamp were denied hours or asked to sign a contract agreeing to not resume driving activities for a period of time longer than required by Federal Express policy.

(Pl. Aff., Pl. Ex. A. ¶ ¶ 16, 17.)

Summary judgment is appropriate even considering Plaintiff's entire affidavit, so the Court need not rule on whether the affidavit is proper. Simply, the affidavit does not affect the outcome of this case.

### 2. The EEOC Right to Sue Letter

Defendant also moves to strike Plaintiff's Exhibit F, the EEOC right to sue letter, because it is hearsay. The Court disagrees. The letter is not hearsay for the purpose it is offered, that is to show the procedural fact that the EEOC issued the letter on a certain day. It is not offered to show the truth of the matter asserted in the letter. Therefore, the Court DENIES Defendant's motion to strike the letter.

### IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Defendant's Motion for Summary Judgment is GRANTED; and

this case is DISMISSED.

18

s/NANCY G. EDMUNDS
Nancy G. Edmunds
United States District Judge

Dated: July 8, 2004

# EXHIBIT L

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HEATHER LINSEMAN,
an individual,

                Plaintiff,

                                          Case Number: 05-71022

v.

                                          JUDGE PAUL D. BORMAN

FEDERAL EXPRESS CORPORATION,              UNITED STATES DISTRICT COURT
a foreign corporation,

                Defendants.

_____ /

## OPINION AND ORDER GRANTING DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

        Now before the Court is Defendant Federal Express Corporation's ("Defendant" or "FedEx") Motion for Summary Judgment. The Court held a motion hearing on March 1, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.    FACTS

        In the instant action, Plaintiff Heather Linseman ("Plaintiff") brought suit on March 16, 2005, alleging a single claim of retaliation under Mich. Comp. Law section 37.1101 et seq. Plaintiff is an individual and a resident of Michigan. (Compl. ¶ 1). Defendant is both incorporated and has its principal place of business outside of Michigan. (Compl. ¶ 2).

1

Plaintiff completed an application for employment with Defendant on February 10, 1999.

The employment application included an "Employment Agreement" which stated:

> This Agreement constitutes the entire and final agreement between the parties and all other prior agreement, arrangements or understands, oral or written are merged into and superceded by the terms of this agreement.  I understand that should any part of this agreement be held unenforceable, the enforceability of the remaining provisions shall not be impaired.  *To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within a time prescribed by law or 6 months from the date that event forming the basis of my lawsuit, whichever expires first.*

(Def.'s Br. Ex. A, Employment Agreement ¶ 15) (emphasis added).

Plaintiff began working for Defendant on March 19, 1999 and held the position of Operations Agent in FedEx's Genesee County facility.  (Pl.'s Dep. 5: 10-12; Compl. ¶ 10).  On December 3, 2003, Plaintiff filed a disability discrimination charge with the Michigan Department of Civil Rights ("MDCR") for failure to accommodate her pregnancy.  (Pl.'s Dep. 53:24-54:16).  The specifics of the alleged complaint, filed with the MDCR, are not at issue in this case, as Plaintiff withdrew her charge of discrimination.  (Pl.'s Dep. 57: 1-10).

Plaintiff was discharged on August 17, 2004.  (Compl. ¶ 2).  Defendant cited Plaintiff's falsification of a timecard as the reason for her dismissal.  (Pl.'s Dep. 42: 7-10).

Plaintiff alleges that she always performed her duties and responsibilities in a satisfactory manner and that the withdrawn MDCR complaint was a motivating factor in Defendant's decision to discharge her.  (Compl. ¶¶ 12, 13).  Plaintiff challenged her termination through Defendant's Guaranteed Fair Treatment Procedure ("GFTP").[1]  (Pl.'s Dep. 44:2-17).  On

---

[1] The GFTP is a three step process where employees can have employment decisions reviewed.  The GFTP "requires specific individuals to perform specific actions within a designated time frame.  The steps of the GFTP process for non-discrimination issues are: Management Review, Officer Review, Appeals Board."  (Gempler Decl. ¶ 9).  The Appeals

2

October 27, 2004, Plaintiff's final step in the GFTP process was denied. (Def's Br. Ex. B.2, Notification of Appeals Board Decision).

Defendant filed the instant Motion for Summary Judgment on January 16, 2006. On February 2, 2006, Plaintiff filed her response, and Defendant filed its reply a week later.

Defendant argues that: (1) Plaintiff's claim is barred by the contractual provision in Plaintiff's employment application which only allows a lawsuit to be brought against Defendant within six months of the event forming the basis for the suit; (2) more than six months elapsed between Plaintiffs termination in August 2004 and the initiation of this action in March 2005; (3) the provision in the employment application is unambiguous and does not violate law or public policy; and (4) Plaintiff can not establish a traditional contract defense to avoid dismissal.

Plaintiff responds that a party must knowingly and voluntarily enter into an agreement with another party. Plaintiff argues that the employment agreement does not contain any waiver language and thus Plaintiff could not knowingly and voluntarily waive the longer statute of limitations for the shortened period.

## III.    ANALYSIS

### A.    Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R.

---

Board consists of FedEx's Chief Executive Officer, Executive Vice President and Chief Operating Officer, and the Chief Human Resources Officer. (Def's Br. Ex. B.1, GFTP Process). The Appeals Board also includes rotating members of one senior vice president and one vice president. (*Id.*).

3

CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary

4

judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.  Discussion

Prior to the Michigan Supreme Court's 2005 decision in *Rory v. Continental Ins. Co.*, 473 Mich. 457 (2005), contract terms which limited the time to bring a suit were upheld only if found to be reasonable. *Herweyer v. Clark Hwy. Services, Inc.*, 455 Mich. 14, 20 (1997). However, in *Rory*, the court abandoned the "reasonableness test." The *Rory* court held that "[w]hen a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' [it] undermines the parties' freedom to contract." 473 Mich. at 468-69. "[F]undamental principles of contract law preclude [] subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provision." *Id.* at 461. Thus, "unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id.*

Defendant argues that following *Rory*, the contract provision at issue should be upheld. To support its argument, Defendant cites *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138 (2005), and *Mayes v. Daimler Chrysler*, 2005 WL 2562780 (E.D. Mich. Oct. 12, 2005)

5

(unpublished), an opinion rendered by this Court.

The *Clark* court was asked to decide whether an employee's contract provision, which barred employee lawsuits filed more than six months after the date of the challenged employment action, was enforceable. The provision in *Clark* stated:

> I agree that any claim or lawsuit relating to my service with [the defendant] or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary.

268 Mich. App. at 141. The court found that the provision did not violate public policy and was not unconscionable. *Id.* at 142, 144. In holding that the provision was enforceable, the court ruled that the plaintiff knowingly waived the statute of limitations period because "[t]he law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Id.* at 144-45.

Similarly, in *Mayes*, this Court was asked whether the following employment agreement provision was enforceable:

> In consideration of Chrysler's review of my application, I agree that any claim or lawsuit arising out of my employment with or my application for employment with, Chrysler corporation, or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

2005 WL 2562780 at *2 (emphasis in original). In holding that the provision was enforceable, this Court found the six-month limitation provision unambiguous, and noted that the plaintiff "alleged none of the usual contract defenses to support why the six-month limitation as applied

6

to her should be deemed unreasonable." *Id.* at *22.

Courts have found similar provisions to be enforceable under the "reasonableness test." In *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259 (6th Cir. 1988), the court analyzed the enforceability of a limitations provision under Michigan law. The provision stated:

> You agree . . . not to commence any action or suit relation to your employment . . . more than six months after the date of termination of such employment, and to waive any statute of limitations to the contrary.

*Id.* at 260. In finding that the provision was enforceable, the Sixth Circuit held that the waiver was knowing and voluntary. *Id* at 262. The court found that the language of the contract was clear, and that if the plaintiff felt that the provision was unreasonable, he could have opted not to sign the agreement. *Id.* The court also held that there was nothing inherently unreasonable about a limitations period of six months. *Id.*

In *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234 (2001), the court was asked whether a provision limiting claims brought under state or federal civil rights statutes was reasonable and enforceable. The provision read, in relevant part:

> I agree that any action or suit against the firm arising out of my employment or termination of employment, including, but not limited to, claims arising under State or Federal civil rights statues, must be brought within 180 days of the event giving rise to the claims or be forever barred. I waive any limitation periods to the contrary.

*Id.* at 237. The court found that the 180 day limitation was not inherently unreasonable and affirmed the circuit court's ruling that the limitation provision was enforceable. *Id.* at 245. In so holding, the court quoted Judge Newblatt in *Perez v. Western-Southern Life Ins Co.*, Case No. 86-40394, 1987 WL 16355 (E.D. Mich. Jan. 23, 1987) (unpublished), who stated that there was "nothing in . . . the Elliot Larsen Act . . . which prohibits a shorter reasonable period agreed upon

7

by the parties nor which evinces any state public policy to the contrary." *Id.* at 242.

Plaintiff responds that a traditional defense to the enforceability of a contract applies - the lack of a knowing and voluntary waiver. A "[w]aiver of a statutory period of limitations for a civil rights claim is subject to heightened judicial scrutiny that asks if the waiver was knowing, intelligent, and voluntary." *Hicks v. EPI Printers, Inc.*, 267 Mich. App. 79, 91 (2005) (citing *Bobo v. Thorn Apple Valley, Inc.*, 459 Mich. 892 (1998)); see also *Myers*, 849 F.2d at 261-62. A waiver "must be clear and unmistakable." *Wright v. Universal Maritime Srv. Corp.*, 525 U.S. 70, 80 (1998). "A valid waiver requires an intentional relinquishment of a known right." *Elgammal v. Macomb County Intermediate Sch. Dist. Bd. of Educ.*, 83 Mich. App. 444, 451 (1978) (citing *Book Furniture Co. v. Chance*, 352 Mich. 521, 526 (1958)).

Plaintiff argues that *Timko* and its progeny show that an agreement to shorten the statute of limitations must include language that: (1) the employee is waiving his right to the longer statute of limitations, (2) the employee understands that there is a longer statue of limitations, and (3) the employee waives this right.

Plaintiff contends that the absence of this waiver language in Defendant's limitation provision is fatal to Defendant's argument. Plaintiff cites *Krusinski v. DaimlerChrysler*, Case No. 239873, 2004 WL 315171 (Mich. App. Feb 19, 2004) (unpublished) and *Underwood v. Daimler Chrysler*, Case No. 240208, 2002 WL 31953849 (Mich. App. Dec. 13, 2002) (unpublished), to support her position. In *Krusinski* and *Underwood*, the courts looked at the reasonableness of identical limitation provision. That provisions stated, in pertinent part:

> While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

8

*Underwood*, 2002 WL 31953849 at \*2; *Krusinski*, 2004 WL 315171 at \*1. In both cases, the

courts followed *Timko*, *supra*, which found that a limitation period is reasonable if: "(1) the

claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as

to work a practical abrogation of the right of action, and (3) the action is not barred before the

loss or damage can be ascertained." *Underwood*, 2002 WL 31953849 at \*2 (citing *Timko*, 244

Mich. App. at 242-44); *see also Krusinski*, 2004 WL 315171 at \*1. The *Krusinski* and

*Underwood* courts found the limitation to be reasonable.[2]

   Contrary to Plaintiff's argument, the Court finds that limitation provisions do not need

the express language that is stated in *Krusinski* and *Underwood*. The *Clark* court enforced a

limitation provision in which the only reference to any statute of limitations period was "I waive

any statute of limitations to the contrary." In the instant case, the provision states that the

employee agrees to bring their complaint "within a time prescribed by law *or* 6 months from the

date of the event forming the basis of my lawsuit, whichever expires first." Both the *Clark* and

FedEx's provisions put employees on notice that there might be a longer provision prescribed by

law, and both inform the employees that the shorter one will apply.

   Plaintiff does not argue that she was forced to sign the agreement - in fact, she had the

option of not signing the agreement, if she so desired. Plaintiff simply argues that the provision

implies, rather than expressly states, the "waiver" of a longer statute of limitations, and

consequently, Plaintiff did not know that she was waiving her right to a longer statute of

_____

   [2] Plaintiff also cites *Fagin v. Detroit Regional Chamber of Commerce*, Case No. 234631,
2003 WL 245845 (Mich. App. Feb. 4, 2003) (unpublished), which involved a provision that
limited the plaintiff from filing suits related to his employment more than a year after his
termination. The *Fagin* court used the three prong analysis from *Timko* to find that the limitation
period was reasonable.

9

limitations time period.

While it is true that the contract's provision does not specifically state that the employee waives the statute of limitations, the contractual language in the provision is clear. Nonetheless, the provision conveys to the employee that she is waiving any statute of limitations period provided by law that is longer than six months. The wording of the provision is unmistakable, unambiguous, and there is no other construction of the provision which makes sense other than that the employee waived the longer limitations period. As a result of the unmistakable language in the provision, Plaintiff's contract defense does not support that the provision at issue is unreasonable. Further, Plaintiff signed the agreement in the absence of coercion, mistake, or fraud and is presumed to know the nature of the documents and understand its contents. Therefore, the Court finds that Plaintiff knowingly and voluntarily waived her right to a longer statute of limitations period.

Viewing the provision in a light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Plaintiff voluntarily and knowingly waived her statute of limitations period under the Elliot-Larsen Civil Rights Act. The provision Plaintiff agreed to stated a six month period for bringing suit, Plaintiff brought her complaint outside of six months, therefore she waived the longer period and her complaint is time barred. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

**IV.     CONCLUSION**

For the reasons stated, the Court GRANTS Defendant's Motion for Summary Judgment.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 20, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 20, 2006.

s/Jonie Parker
Case Manager

11

EXHIBIT M

# THE STATE OF NEW HAMPSHIRE

**ROCKINGHAM COUNTY**                    **SUPERIOR COURT**

Mark Klemm

v.

Federal Express Corporation, et al

Docket No: 07-C-0891

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## ON THE PLEADINGS

The plaintiff has brought a six count Writ against the defendants essentially alleging

wrongful termination.  The defendants have filed a Motion for Summary Judgment on the

Pleadings arguing that for various legal reasons all of the plaintiff's claims must be

dismissed.  A review of the defendants' motion suggests that the underlying issue is one of

jurisdiction.  The defendants claim that on or about November 8, 2002 the plaintiff signed a

one page Employment Agreement with Federal Express Corporation which defines the

rights and obligations of both parties.  The Agreement contains the following language:

"To the extent the law allows an employee to bring legal action against Fed Ex, I agree to

bring that complaint within the time prescribed by law or six months from the date of the

event forming the basis of my lawsuit, which ever expires first."

The defendants allege, and the plaintiff does not appear to dispute, the fact that he

was terminated on March 21, 2007.  Under the terms of the employment agreement, he

would have had to have brought his lawsuit against Federal Express Corporation on or

before September 21, 2007.  The plaintiff served his Writ on the defendants on September

27, 2007 with a November 1, 2007 return day.  The defendants therefore argue that

because the complaint was filed outside of the agreed upon six month statute of limitations

contained in the Employment Agreement it must be dismissed.  Defendants Stephen

Rourke and Alexander Kapinos argue that although they are not technically the plaintiff's employer, they get the benefit of the six month statute contained in the Employment Agreement by virtue of the fact that they are other employees of Federal Express Corporation. The Court accepts that argument as a correct statement of the law.

The plaintiff suggests that there may be several reasons as to why the six month time frame cannot be made applicable to this lawsuit. However the plaintiff does not deny signing the Employment Agreement and the Agreement itself indicates that it is for an indefinite period of time. As the defendants correctly point out, two individuals to a contract may waive various rights that either has, which would include the right to agree to a shorter statute of limitations then what the law of a particular state provides. When there is no ambiguity in a written document, the Court cannot consider equitable defenses. None of the claimed "problems" with the Employment Agreement rise to the level of legal defenses. Consequently the Court, based upon the clear language of the Employment Agreement, finds and rules that the defendants' Motion for Summary Judgment on the Pleadings must be and is granted.

Note that the Court's ruling herein is based solely on the statute of limitations argument raised by the defendants in their Motion. Because that argument takes precedence over all other claims contained in the plaintiff's Writ, the Court elects not to address the specifics of the defendants' defenses as to those other claims.

So Ordered.

DATED: _March 12, 2008_

_Kenneth R. McHugh_
**Kenneth R. McHugh**
**Presiding Justice**

EXHIBIT N

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

Temika McGahee,

        Plaintiff,               Case No. 06-83537-NO

vs                                Judge Richard B. Yuille

Federal Express Corp.,
Steven Fritsch, and
Ken Kranz,

        Defendants.



A TRUE COPY
Michael J. Carr, Clerk

_____

### ORDER GRANTING IN PART AND DENYING IN PART DEFEDANTS' MOTIONS FOR SUMMARY DISPOSITION

        At a session of said Court held in Flint, Michigan, June 8, 2007.

        PRESENT:  Richard B. Yuille, Circuit Judge.

        Pending before this Court are defendants' motions for summary disposition.  For the reasons stated in the oral opinion placed on the record, a copy of which is attached hereto, defendant Federal Express Corporation's motion for summary disposition is **GRANTED** in its entirety as to all claims and defendant Fritsch's and Kranz' motions for summary disposition are **GRANTED** except as to counts I and III of plaintiff's amended complaint.

                      Richard B. Yuille, Circuit Judge

        June 14, 2007

# TABLE OF CONTENTS

<u>EXHIBITS</u>:

None

<u>WITNESSES</u>:

None

STATE OF MICHIGAN

IN THE 7TH CIRCUIT COURT (COUNTY OF GENESEE)

TEMIKA MCGAHEE,

     Plaintiff,

     vs                         Case No. 06-83537-NO

FEDERAL EXPRESS CORPORATION, et al.,

     Defendants.

_____/

RULING OF HONORABLE RICHARD B. YUILLE ON
DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

BEFORE THE HONORABLE RICHARD B. YUILLE, CIRCUIT JUDGE

FLINT, MICHIGAN - FRIDAY, JUNE 8, 2007

APPEARANCES:

For the Plaintiff:    BARBARA A. ROULO P29353
                       Attorney at Law
                       660 Woodward Avenue, Suite 700
                       Detroit, Michigan 48226
                       (313) 962-5909

For the Defendants:   REGINALD M. TURNER JR. P40543
                       Attorney at Law
                       500 Woodward Avenue, Suite 3500
                       Detroit, Michigan 48226
                       (313) 965-8318

Recorded by:       Via Video Recorder

Transcribed by:     Shelie Robinson CER 6913
                       Certified Electronic Recorder
                       (810) 424-4454

1

```
1              Flint, Michigan
2              Friday, June 8, 2007 - 7:14 p.m.
3              (Court present, in the absence of parties
4              and counsel)
5              THE COURT:  I am back on the record in
6    McGahee versus Federal Express.
7              As is typical in most employment
8    discrimination claims the facts are vigorously
9    disputed and issues of intent and motive complicate
10   the analysis.  Rather than try to reconcile two
11   irreconcilable versions, I will attempt to fairly
12   summarize each side's position.
13             Defendants view this case as a simple
14   illustration of time card fraud and the necessary
15   consequences that befall those who practice this
16   craft.  Defendants painstakingly detail the minute by
17   minute whereabouts of plaintiff on the morning of July
18   26, 2005.  As a result of what they compute to be a
19   two to six minute discrepancy between the time card
20   and the company's investigation, the plaintiff was
21   fired.
22             Plaintiff's recitation of the facts depicts
23   a work environment punctuated with racial and sexual
24   harassment.  Plaintiff claims she was constantly the
25   focal point for inappropriate conduct on the part of
```

3

1    the employees at Federal Express.  Plaintiff contends

2    she complained on numerous occasions about the

3    conduct.  She asserts her termination was due to

4    defendant's retaliation for her speaking out on this

5    issue.

6         The issue of most significant interest and

7    impact is defendants' claim that plaintiffs' lawsuit

8    is subject to a six month limitation period contained

9    within the employment agreement entered into in

10   February of 1999 between plaintiff and Federal

11   Express.  The pertinent part of the agreement, which

12   is located just above the signature line, reads as

13   follows.

14        "To the extent the law allows an

15        employee to bring legal action against Federal

16        Express Corporation, I agree to bring that

17        complaint within the time prescribed by law or

18        six months from the date of the event forming the

19        basis of my lawsuit whichever expires first."

20   Plaintiff signed this agreement on February 19, 1999

21   confirming that she had read the agreement and

22   thoroughly understood its content.  Plaintiff

23   acknowledges in her deposition that she did not have

24   any questions or concerns about the terms and

25   conditions of the agreement.  Plaintiff was terminated

4

1    from Federal Express on August 3, 2005.  This lawsuit

2    was filed March 23, 2006 which is outside the six

3    month limitation.

4          Defendants argue that pursuant to *Rory*

5    versus *Continental Insurance Company,* 473 Mich 457, a

6    2005 decision, unambiguous contractual limitations

7    will be enforced unless the limitation violates law or

8    public policy.  The Michigan Supreme Court set forth

9    the parameters of what would constitute a violation of

10   law or public policy at pages 471 and 472 of the

11   opinion.  The Court stated:

12          "This Court has previously held that

13          Michigan has no general policy or statutory

14          enactment which would prohibit private parties

15          from contracting for shorter limitation periods

16          than those specified by general statutes.  This

17          is consistent with our case law which had held

18          that contractually shortened periods of

19          limitations were valid and were to be disregarded

20          only where the insured could establish estoppel

21          or prove that the insured waived the contractual

22          provision.  Likewise, there is no Michigan

23          statute explicitly prohibiting contractual

24          provisions that reduce the limitations period in

25          uninsured motorist policies.  The legislature has

5

1      proscribed shortened limitation periods in only

2      one specific context, that is life insurance

3      policies."

4         Plaintiff cannot and does not dispute the

5 applicability of the *Rory* decision.  Plaintiff rather

6 raises the following defenses against the application

7 of the contractual limitation.  First, plaintiff notes

8 that she filed a complaint with the Michigan

9 Department of Civil Rights after her termination and

10 it is her position that that action constitutes

11 compliance with the employment agreement or in the

12 alternative that action should toll the limitation.  I

13 do not find this argument persuasive.  First, the

14 filing of a complaint with the Civil Rights Department

15 is not a prerequisite to the filing of a lawsuit in

16 Circuit Court, and, second, the language of the

17 contractual provision is rather clear and it talks

18 about a legal action against Federal Express, it talks

19 about a lawsuit and I think it is clear that the

20 meaning of that language requires this suit to be

21 brought within six months.

22         In a second attempt to avoid the

23 consequences of the contractual limitation Plaintiff

24 claims that the defendants withheld the employment

25 agreement from the plaintiff after she was terminated

6

1    and that such action on the part of the defendants

2    constituted a fraudulent concealment of plaintiff's

3    claim.  I am not persuaded that this argument can act

4    to nullify the limitation period contained in the

5    contract.  First, plaintiff acknowledged that she had

6    read and understood the agreement when she signed it

7    in February of 1999.  Second, when plaintiff was

8    terminated she requested portions of her file.  The

9    portions she requested were from August of 1999 to the

10   date of her termination.  She alleges that she

11   requested her entire file but she did not do so.  She

12   was provided with the information that she did

13   request.  She just did not request the time period

14   which would have included the signing of the

15   employment agreement in February, 1999.

16          Finally, I am persuaded by defendants'

17   response to the fraudulent concealment claim set forth

18   at pages four and five of their reply brief.  I quote

19   directly from the brief.

20          "Furthermore, the law does not require

21       a party to provide a copy of a contract to a

22       party that has signed it.  In the remarkably

23       similar case of *Toolanen* versus *Ler Corporation*,

24       2007 Mich App Lexis 132, decided January 25,

25       2007, the employee sent his former employer a

7

1    written request for his personnel file and later

2    claimed that the file he received did not include

3    his employment application which contained a one

4    year contractual limitations period.  He later

5    sued for age discrimination more than one year

6    after his discharge and claimed that the contract

7    was unenforceable because the employer did not

8    provide a copy with the personnel file and that

9    the failure to do so was unconscionable.  The

10    Court of Appeals rejected these arguments stating

11    that the fact that the employee may not have

12    received a copy of the agreement to which he was

13    a party is not relevant to the statute of

14    limitations claim for age discrimination and that

15    the key issue was the fact that he admitted

16    signing the application, not whether he received

17    a copy of it.  The Court held that the employee

18    could not challenge the contract terms regardless

19    of the existence and presentation of a copy to

20    him.  Similarly, plaintiff admitted reading and

21    signing the application containing the

22    limitations provision, having signed the

23    agreement and acknowledging she understood its

24    content, plaintiff cannot now argue that she was

25    unaware of its terms or that FedEx hid it from

1     her.  As such, the Court should enforce the

2     limitations provision."

3    I agree.

4         In a final attempt to defeat the six month

5    contractual limitation plaintiff argues that

6    defendants have waived the defense by engaging in

7    discovery over the course of this lawsuit which was

8    initially started in March of 2006.  I find

9    plaintiff's argument to be without merit.  The defense

10   was raised in the pleadings.  The current motion is a

11   (C)(10) motion which motions usually come at the close

12   of discovery and plaintiff cannot demonstrate any

13   enforceable waiver of the limitations provision.

14        In defendants' reply brief the defendants

15   argued for the first time that the six month

16   limitation period also applies to the individual

17   defendants in this case because they are agents under

18   the control of Federal Express.  I find this argument

19   without merit.  I would note that Federal Express

20   drafted the provision at issue.  The only entity

21   protected by this limitation is Federal Express

22   Corporation.  Federal Express could have included

23   servants, agents, members of management, etcetera.

24   Federal Express did not do so.  The provision says

25   what it says and it does not cover the individual

9

1    defendants.

2         Since summary disposition motions are

3    reviewed de novo on appeal, I am not going to treat

4    this motion as a non-jury trial and make specific

5    findings of fact.  I have often asked myself that

6    since these motions are reviewed de novo on appeal why

7    do I spend so much time agonizing over these

8    decisions.  I have no answer to that.  With respect to

9    the remaining issues, I am merely going to indicate

10   whose analysis on that issue I accept.

11        With respect to the race and sex

12   discrimination and hostile work environment claims in

13   counts one and three, I adopt plaintiff's analysis.  I

14   do believe that at the very least on those claims

15   there are genuine issues of material fact that

16   preclude this Court granting summary disposition in

17   favor of defendants.

18        With respect to the remaining counts, I find

19   that the defendant's analysis is correct and that

20   plaintiff cannot establish one or more of the elements

21   necessary for those counts as analyzed by the

22   defendants and that there is no genuine issue of

23   material fact on those counts and defendants are

24   entitled to judgment as a matter of law on those

25   counts.

```
 1              Defendants shall prepare the appropriate

 2    judgment.

 3              (At 7:29 p.m., proceedings concluded)

 4    Tape No. 06/08/07   7:29 p.m.

 5

 6

 7

 8

 9

10         STATE OF MICHIGAN     )

11         COUNTY OF GENESEE     )

12         I, Shelie Robinson, do hereby certify that this

13    transcript, consisting of 11 pages, is a complete,

14    true and correct transcript to the best of my ability

15    of the videotaped proceedings taken in this case on

16    Friday, June 8, 2007, before the Honorable Richard B.

17    Yuille, Circuit Judge.

18

19    June 13, 2007              _____

20                               SHELIE ROBINSON CER 6913

21                               Circuit Courthouse

22                               900 S. Saginaw Street

23                               Flint, Michigan 48502

24                               (810) 424-4454

25
```

11

| STATE OF MICHIGAN<br>7TH JUDICIAL CIRCUIT | PARTY NOTIFICATION | CASE NO.<br>06-083537-NO |
|---|---|---|

Court Address  **GENESEE COUNTY<br>COUNTY CLERK<br>900 S. SAGINAW<br>FLINT MI  48502**

Court Telephone No.<br>**810-257-3260**

Mailing Date: 6/11/07

Mail To:

DANON D. GOODRUM-GARLAND<br>500 WOODWARD AVE STE 3500<br>DETROIT MI  48226

Judge: RICHARD B. YUILLE

| Plaintiff<br>TEMIKA MCGAHEE | V | Defendant<br>FEDERAL EXPRESS CORP. |
|---|---|---|

ENCLOSED IS A TRUE COPY OF THE COURT'S ORDER, WITH ATTACHED TRANSCRIPT, IN THIS MATTER.

THIS NOTICE HAS ALSO BEEN SENT TO:
BARBARA A. ROULO
REGINALD M. TURNER JR.
MARY H BEARD
KEITH R THOMAS

# EXHIBIT O

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2014 Session

## ALVIN EVANS v. FEDEX EXPRESS

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-12-1385-3      Kenny W. Armstrong, Chancellor**

---

**No. W2013-01717-COA-R3-CV - Filed January 29, 2014**

---

Plaintiff filed an action against his employer alleging discrimination in violation of the Tennessee Human Rights Act. The trial court awarded summary judgment to Defendant employer on the basis that the action was barred by the contractual limitations period contained in the employment agreement executed by the parties. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Travis Edgar Davison, III, Memphis, Tennessee, for the appellant, Alvin Evans.

Terrence O'Neal Reed, Memphis, Tennessee, for the appellee, FedEx Express.

### MEMORANDUM OPINION[1]

This action arises from a complaint alleging employment discrimination in violation of the Tennessee Human Rights Act ("THRA") filed by Alvin Evans (Mr. Evans) against FedEx Express ("FedEx") in the Chancery Court for Shelby County on September 4, 2012. In his complaint, Mr.

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.)

Evans alleged that he was an African-American employee of FedEx for more than 20 years and that he "was terminated for supposedly failing to report an incident with an aircraft." He further alleged that he was more than 40 years of age and that he was terminated so that FedEx could employ a person younger than 40 years of age. Mr. Evans alleged that Fed Ex intentionally and deliberately discriminated against him due to his age and asserted a claim of age discrimination in violation of the THRA. He also alleged that FedEx "intimidated [him] in response to his efforts to properly train an individual and counseling them on what they needed to improve on and such counseling being reported to management[,]" and asserted a claim of hostile work environment. Mr. Evans also asserted claims of retaliation in violation of Tennessee Code Annotated § 4-21-301 and race discrimination. He prayed for compensatory damages in an amount to be determined at trial, punitive damages, cost and attorneys fees, and injunctive relief.

FedEx answered in October 2012, generally denying any allegation of wrongdoing and averring that Mr. Evans was terminated for causing damage to a fuel hose nozzle by moving a fuel truck away from an aircraft before disconnecting the fuel hose and for failing to notify management of the incident. FedEx also asserted that it issued a termination letter to Mr. Evans on September 2, 2011, and that Mr. Evans was notified that he was terminated before that date. FedEx asserted 14 affirmative defenses, including the statute of limitations applicable to the THRA,[2] and the contractual limitations period contained in the employment agreement executed by the parties. Mr. Evans filed his response to FedEx's first set of requests for admissions on January 3, 2013, and on January 22 FedEx moved for summary judgment on the basis of the contractual limitations period contained in the employment agreement that Mr. Evans undisputedly signed in 1994. Following a hearing on April 10, 2013, the trial court awarded summary judgment to FedEx by order entered May 15, 2013. Mr. Evans filed a timely notice of appeal to this Court.

### Issue Presented

The only issue presented for our review is whether the trial court erred by awarding summary judgment to FedEx on the basis that Mr. Evans' action was barred by the six-month contractual limitations period.

### Standard of Review

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). We review an award of summary judgment *de novo*, with no presumption of correctness for the determination of the trial court. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

---

[2]Tennessee Code Annotated § 4-21-311(d) provides: A civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases, and any such action shall supersede any complaint or hearing before the commission concerning the same alleged violations, and any such administrative action shall be closed upon such filing).

*Discussion*

The employment agreement executed by the parties contains the following provision:

> To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

It is undisputed that Mr. Evans did not bring his action within the proscribed six-month period. In his brief to this Court, however, Mr. Evans asserts that the contractual limitations period is unenforceable where it is overly broad and constitutes an unknowing waiver of his statutory rights under the THRA; because it is against public policy where it abridges the one-year limitations period contained in the THRA; because it is unconscionable as a contract of adhesion; and where "the employment agreement that [he] signed is in tiny print and full of jargon and legalese." FedEx, on the other hand, asserts that Mr. Evans did not argue that the contract provision is overly broad or ambiguous in the trial court, and that he cannot raise it for the first time on appeal. FedEx also asserts that Mr. Evans' did not allege that he did not understand the provision or that he was compelled to sign it until after FedEx filed its motion for summary judgment, and that Mr. Evans' discovery responses contradict these assertions. It asserts the provision is not unconscionable, and that it is valid and enforceable. Mr. Evans did not file a reply brief in this Court.

Upon review of the record, we observe that, in his memorandum in response to FedEx's motion for summary judgment, Mr. Evans asserted,

> Fed Ex will not deny that the employment agreement was a form and that Evans had to either accept it or be denied the job opportunity at FedEx. FedEx is a very large corporation and Mr. Evans was a lower level employee, without the assistance of an attorney at the time he signed the contract. Furthermore, the print pertaining to the statute of limitations is very small and well hidden in the contract. Evans had no choice but to sign the contract and did not understand that he was signing a right away at the time.

He also asserted that the contract provision was against public policy where it "prevented [him] from taking advantage of statutory rights provided for in the [THRA]." Mr. Evans' argument in the trial court, as we perceive it, is that the contractual limitations period is not enforceable because the contract is an unconscionable contract of adhesion; that it violates public policy where it decreases the limitations period contained in the THRA; and that it should not be enforced where Mr. Evans did not understand that he was "signing away" the right to file suit within one year under the THRA.

The limitations period contained in FedEx's employment agreement has been litigated previously, and Mr. Evans' arguments are not novel. In *Skaan v. Federal Express Corp.*, we recently held that the plaintiff's assertion that he did not understand the importance of the identical provision

contained in the plaintiff's employment agreement with FedEx did not preclude summary judgment in that case. *Skaan v. Federal Express Corp.*, No. W2011–01807–COA–R3–CV, 2012 WL 6212891, at *8 (Tenn. Ct. App. Dec. 13, 2012). We noted that, although whether the plaintiff understood the provision constituted a disputed issue of fact, the issue was not material to whether the contractual limitations period was enforceable. *Id.* We stated in *Skaan*, "it is well established in Tennessee that a person who signs a contract is presumed to understand the terms of the agreement that he has signed[,]" and ignorance or a lack of understanding of the language or contents of a voluntarily executed contract will not, absent fraud or duress, excuse a party from its terms. *Id.* (citations omitted).   We observed in *Skaan* that Tennessee's "'strong public policy in favor of upholding contracts'" is "a bedrock principle of Tennessee law[.]" *Id.* (quoting *Mathews Partners, LLC v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *7 (Tenn. Ct. App. Oct. 2, 2009) (citations omitted)). We further observed, "'[w]ritten contracts would be worthless if the law allowed a party to enter into a contract and then seek to avoid performance because he or she did not read the agreement or know its contents.'" *Id.* (quoting *id.*)

We additionally held in *Skaan* that FedEx's six-month contractual limitations period is not unconscionable as a matter of law, and that the provision, "simply put, . . . was part of the terms on which FedEx would consider hiring [the plaintiff]." *Id.* at *9. Mr. Evans, like the plaintiff in *Skaan*, "agreed to the terms in order to be considered for a position at FedEx, and FedEx hired [him] based on his execution of the Employment Agreement. Overall, we see nothing in these facts that are either oppressive or shocking." *Id.* As we stated in *Skaan*:

> Moreover, it is well established that a contractual provision setting a time limitation for bringing a legal action arising out of that contract is not inherently unconscionable. The United States Supreme Court has explained: "[A] provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *Harris v. Provident Life and Accident Ins. Co.*, No. E2007–00157–COAR3–CV, 2008 WL 1901110, at *9 (Tenn. Ct. App. Apr. 30, 2008) (stating that "[p]arties are free ... to contract for a *shorter* [limitation] period, unless a statute specifically forbids them from doing so").
>
> . . . Indeed, this Court has held that a contractual limitation period of less than six months is enforceable. *See Morgan v. Town of Tellico Plains*, No. E2001–02733–COA–R3–CV, 2002 WL 31429084, at *5 (Tenn. Ct. App. Oct. 30, 2002) (upholding a 60–day contractual limitation period).

*Id.*

We next turn to Mr. Evans' assertions that the contract is one of adhesion and that he signed it under duress. A contract of adhesion is a standardized contract that is offered on a "take it or leave it" basis without a realistic opportunity to bargain and under circumstances such that the desired

product or services cannot be obtained absent acquiescence to the form contract. *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004); Black's Law Dictionary 40 (6th ed. 1990). Whether a contract of adhesion is enforceable "generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Id.* "Duress is defined as "'a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure.'"" *Barnes v. Barnes*, 193 S.W.3d 495, 500 (Tenn. 2006) (quoting *Rainey v. Rainey*, 795 S.W.2d 139, 147 (Tenn. Ct. App.1990) (quoting *Simpson v. Harper*, 21 Tenn. App. 431, 111 S.W.2d 882, 886 (1937))).

Even if we assume that a position with FedEx is sufficiently unique so as to render the employment agreement a contract of adhesion, we previously have held that the contractual limitations provision contained in FedEx's standard employment agreement is neither unconscionable nor oppressive so as to render it unenforceable as a matter of law. *Skaan*, 2012 WL 6212891, at *9. Mr. Evans' assertion that he signed it under "duress," moreover, rests on the contention that, had he refused to sign the employment agreement, he would not have been employed by FedEx. Although there can be little doubt that FedEx was in a superior bargaining position in this case, Mr. Evans offers no evidence to suggest that FedEx exerted wrongful pressure on him such that he did not sign the employment agreement on his own volition. There is no dispute that Mr. Evans commenced this action beyond the applicable six-month contractual limitations period contained in the employment agreement. We accordingly affirm summary judgment in favor of FedEx.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Alvin Evans, and his surety, for which execution may issue in necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____

DAVID R. FARMER, JUDGE