1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| KELLY L. HALL, RICHARD ARP, ISRAEL FLORES, ROBERT MARKOWITZ, ROY TAYLOR, and RICHARD RODRIGUEZ, | Case No.  1:13-cv-01711 -SKO **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | (Doc. 13) |
| v. | |
| FEDEX FREIGHT, INC., an Arkansas Corporation, and DOES 1 through 25, inclusive. | |
| Defendants. | |
| _____/ | |

12
13
14
15
16
17
18
19
20
21

## I.   INTRODUCTION

22

On May 2, 2014, Defendant FedEx Freight, Inc. ("FedEx") filed a motion for summary

23
judgment as to the claims of Plaintiffs Kelly Hall, Robert Markowitz, and Richard Rodriguez

24
(collectively, "Plaintiffs").[1]  (Doc. 13.)  On May 28, 2014, Plaintiffs filed an opposition to FedEx's

25
motion.  On June 4, 2014, FedEx filed a reply brief as well as a request for judicial notice.  On

26
June 10, 2014, the Court found FedEx's motion suitable for decision without argument and

27
28

---

[1] The claims of Plaintiffs Israel Flores, Roy Taylor, and Richard Arp are not at issue for purposes of this motion.

1   vacated the June 11, 2014, hearing.  (Doc. 24.)  For the reasons set forth below, FedEx's motion

2   for summary judgment is GRANTED.

3                                    **II.    BACKGROUND**

4   **A.       FedEx's Operations Background and Allegations**

5            Plaintiffs are employed as line-haul drivers for FedEx.  Line-haul drivers transport freight

6   using  tractor-trailers  between  various  FedEx  facilities  called  Service  Centers.  (Doc. 15,

7   Declaration of Katyna Naylor ("Naylor Decl."), ¶ 12.)  Generally, drivers report to their home

8   Service Center and transport freight to another Service Center.  (Doc. 15, Naylor Decl., ¶ 12.)

9   When drivers arrive at a destination Service Center, FedEx employees unload the freight from the

10  trailer, and the drivers then drive a loaded trailer back to their home Service Center.  (Doc. 15,

11  Naylor Decl., ¶ 12.)  The round-trip is referred to as a "run."  (Doc. 15, Naylor Decl., ¶ 12.)

12          FedEx assigns runs to drivers within each Service Center using a bidding process that is

13  seniority-based.  (Doc. 15, Naylor Decl., ¶ 13.)  Approximately twice a year the Service Centers

14  conduct a "rebid," when drivers, in order of seniority, are eligible to select new runs.  (Doc. 15,

15  Naylor Decl., ¶ 12.)

16          According to FedEx, it uses a seniority system that considers the employee's time with the

17  company, as well as the amount of time the employee held a particular position.  (Doc. 15, Naylor

18  Decl., ¶ 14.)  The first type of seniority is called "Company Seniority," and the second type is

19  called "Job Class Seniority."  (Doc. 15, Naylor Decl., ¶ 14.)  Both types of seniority may be

20  relevant to employment decisions at FedEx.  (Doc. 15, Naylor Decl., ¶ 14.)  For employees who

21  transfer to different Service Centers, FedEx's seniority-bases system also accounts for whether the

22  employee transferred voluntarily or involuntarily.  (Doc. 15, Naylor Decl., ¶ 16.)  If the employee

23  transferred voluntarily, that employee receives an updated job class seniority date, reflecting the

24  date of transfer.  (Doc. 15, Naylor Decl., ¶ 16.)  If the employee was transferred involuntarily, that

25  employee retains his or her existing job class seniority date upon transfer.  (Doc. 15, Naylor Decl.,

26  ¶ 16.)

27          The freight business is unpredictable and can change based on shipper needs and the time

28  of year; thus, it is impossible to be certain whether a particular run will remain assigned to the

same Service Center for an extended period of time, or to the same driver.  FedEx maintains that, to meet these changing needs, it must periodically engage in what it calls a "Change of Operations," whereby certain runs are moved from one Service Center to another to better serve FedEx customers and to streamline movement of freight.  (Doc. 15, Naylor Decl., ¶ 17.)  When a Change of Operations occurs, FedEx follows certain written internal procedures and guidelines to ensure that employees are treated fairly and consistently.  (Doc. 15, Naylor Decl., ¶ 17.)

According to FedEx, Plaintiffs' lawsuits involve claims for fraud and breach of contract based on FedEx's long-held procedures that were applied to a Change of Operations undertaken shortly after Plaintiffs transferred, on a voluntary basis, to the Kettleman City Service Center in 2012. FedEx claims that Plaintiffs are upset that FedEx followed its standard policies during a Change of Operations in 2012 at the Kettleman City Service Center and, as a result, employees who involuntarily transferred to Kettleman City shortly after Plaintiffs transferred on a voluntary basis, ended up with higher job class seniority ranking when it came time to bid for runs.

**B.      Plaintiffs' Allegations Against FedEx**

In 2011, FedEx built a new Service Center in Kettleman City, California ("Kettleman"). (Cmplt., ¶ 18.)  When the new Service Center was announced, FedEx solicited line-haul drivers from other service centers to relocate.  (Cmplt., ¶ 19.)  When few drivers volunteered to relocate, FedEx made promises to drivers regarding the number and length of bids that would be available upon transfer. (Cmplt., ¶ 19.)  Specifically, Plaintiffs allege that FedEx promised that as the Service Center at Kettleman City expanded, drivers who transferred early would have higher seniority and would receive better bids for runs.  (Cmplt., ¶ 19.)  According to Plaintiffs, because FedEx line-haul drivers are paid per mile driven, the longer the run, the more a driver earns. Senior drivers can earn more than $80,000 per year, while junior drivers will often make half that. (Cmplt. ¶ 15.)

Plaintiffs assert that, based on these representations, they volunteered to relocate for the promise of more income.  (Cmplt. ¶ 19.)  Plaintiffs maintain they were specifically told where they would rank on the seniority list of line-haul drivers before they moved to Kettleman and they chose to relocate based on those statements made by FedEx management.  (Cmplt., ¶ 19.)

1    Plaintiffs all agreed to relocate in June 2012, and began working in Kettleman in July
2   2012. (Cmplt., ¶ 20.)  When Plaintiffs began working at Kettleman, they discovered they would
3   not be bidding on runs; rather, they were assigned runs. (Cmplt., ¶ 20.)  They were told that it was
4   the middle of the year and these runs would be assigned for a few months, and that a formal
5   bidding process would take place at the end of the year.  (Cmplt., ¶ 20.)  Although unusual,
6   Plaintiffs were generally satisfied with their runs and did not object since the runs were to be
7   assigned only for a few months.

8    During this time, FedEx downsized its Fresno Service Center and moved personnel from
9   Fresno to Kettleman.  When they were transferred to Kettleman, the Fresno drivers were allowed
10   to transfer their seniority. (Cmplt., ¶ 21.)  As a result, instead of being at the top of the seniority
11   board, Plaintiffs were all placed below Fresno drivers. (Cmplt., ¶ 21.)  As operations continued to
12   change throughout 2013, additional drivers transferred from other Service Centers with each of
13   them being able to transfer his/her seniority. (Cmplt., ¶ 21.)

14    Fresno drivers informed Plaintiffs that FedEx represented to them a year earlier they would
15   be allowed to transfer to Kettleman and keep their seniority. (Cmplt., ¶ 22.)  Plaintiffs allege that
16   FedEx therefore knew in June 2012, at the time its management was enticing Plaintiffs to transfer,
17   that Plaintiffs were not going to have the seniority they were promised. (Cmplt., ¶ 22.)

18                          **II.     LEGAL STANDARD**

19    Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and
20   any affidavits provided establish that "there is no genuine dispute as to any material fact and the
21   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one
22   that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby,*
23   *Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury
24   could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation
25   omitted)

26    The party seeking summary judgment "always bears the initial responsibility of informing
27   the district court of the basis for its motion, and identifying those portions of the pleadings,
28   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

1   which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

2   *Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   The exact nature of this

3   responsibility, however, varies depending on whether the issue on which summary judgment is

4   sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.

5   *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*,

6   532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007).   If the movant will have the burden of proof at trial, it

7   must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than

8   for the moving party." *Soremekun*, 509 F.3d at 984.   In contrast, if the nomoving party will have

9   the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence

10   of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

11          If the movant satisfies its initial burden, the nonmoving party must go beyond the

12   allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative*

13   *evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th

14   Cir. 2009).   "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.*

15   at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

16   (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do

17   more than simply show that there is some metaphysical doubt as to the material facts.").   "Where

18   the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

19   there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

20          In resolving a summary judgment motion, "the court does not make credibility

21   determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.   That remains the

22   province of the jury or fact finder. *See Anderson*, 477 U.S. at 255.   Instead, "[t]he evidence of the

23   [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."

24   *Id.*   Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual

25   predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight*

26   *Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

27

28

## III.   DISCUSSION

**A.     The Parties' Arguments[2]**

### 1.     FedEx's Motion for Summary Judgment

FedEx argues the claims of Plaintiffs Hall, Rodriguez, and Markowitz are time-barred because they signed employment applications that contained a 6-month limitation period for bringing suit arising out of employment with FedEx.   FedEx maintains that California law routinely enforces reasonable contractual limitation periods, even significantly shorter than those contained in the applicable statute of limitations.   Thus, the only question is whether the 6-month period for filing suit to which these Plaintiffs agreed is reasonable as a matter of law.   FedEx contends that a shortened limitation period is reasonable so long as it provides sufficient time to adequately pursue a judicial remedy, and limitation periods of six months or less have been routinely upheld as reasonably providing time to pursue a judicial remedy.

According to FedEx, Plaintiffs Hall, Rodriguez, and Markowitz all failed to bring their lawsuits within six months.   Rodriguez and Markowitz both admitted they first discovered they would be impacted by FedEx's changing operations in July 2012; Hall testified that he first discovered the changes sometime before December 2012.   To be timely under the limitation period, Rodriguez and Markowitz should have filed their lawsuit by January 2013, and Hall should have filed his lawsuit by June 2013.   Plaintiffs, however, did not file suit until September 19, 2013.   FedEx asserts their claims are thus time-barred and subject to summary dismissal.

### 2.     Plaintiffs' Opposition to the Motion for Summary Judgment

The causes of action alleged by all Plaintiffs have statutes of limitations ranging from two to four years.   Plaintiffs argue the applications for employment they signed do not constitute enforceable contracts, and thus the 6-month term of limitation to bring claims arising out of employment is not binding.   There is also no evidence the 6-month limitation provision was

---

[2]The parties each made objections, which the Court has carefully reviewed.  To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on admissible evidence and, therefore, the objection is OVERRULED.  It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted.  This is particularly true when the evidentiary objections consist of general objections such as "irrelevant" or "vague."  *See Capital Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 2000 n.1 (C.D. Cal. 2010).

1   contained in any of Plaintiffs' employment materials, handbooks, or in any discussions with
2   Plaintiffs once they began their employment.  Plaintiffs also contend that the employment
3   applications are not supported by consideration on the part of FedEx because, at the time the
4   applications were signed, FedEx had not yet agreed to employ Plaintiffs and Plaintiffs had not yet
5   accepted any position with FedEx.

6       Even to the extent the applications are construed to be contracts or to supply the terms of
7   the employment relationship, the 6-month limitation provision is unconscionable.  There was no
8   negotiation by Plaintiffs before signing the employment applications, and the limitation term itself
9   is buried in fine print.  Substantively, the employment applications are on-line forms, the purpose
10  of which is "solely to preclude [FedEx] employees from bringing lawsuits by tricking them into
11  missing an unknown contractual statute of limitations."  (Doc. 18, 16:6-7.)  FedEx regularly
12  updates its employee handbooks and driver guidelines, but this provision was not included in any
13  of the written material provided to Plaintiffs over the course of their employment.  The right to
14  bring suit is a fundamental First Amendment right, and to deny its own employees this right by
15  burying the provision in an employment application and then never again including it in any of its
16  materials is unconscionable.

17      Plaintiff also cites *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) for the
18  proposition that contractually shortened limitation periods have never been recognized outside the
19  context of straightforward transactions in which the triggering event for either a breach of a
20  contract or the accrual of a right is immediate and obvious.  Plaintiffs argue the cases cited by
21  FedEx are 100 years old, and concern filing an insurance claim on a life insurance policy and a
22  business partner suing for a commission under a mutually negotiated agreement.  The two cases
23  cited by FedEx, *Tebbets v. Fidelity Cas. & Co.*, 155 Cal. 137, 139 (1909) and *Beeson v. Schloss*,
24  183 Cal. 618, 622-23 (1920), are limited to breach of contract actions and easily recognizable
25  claims.

26      Additionally, Plaintiffs assert that Markowitz' employment application was submitted to
27  another company, and should not therefore preclude his claim.  Specifically, he submitted that
28  application to FedEx National, Inc. before going to work for FedEx Freight, Inc. (Defendant).

FedEx has presented no evidence how the employment application submitted to FedEx National, Inc. could be incorporated into his current employment situation or possibly govern his relationship with FedEx Freight, Inc.

Finally, Plaintiffs assert that, even if the limitation provision controls, the Court should apply equitable tolling and deem Plaintiffs' claims timely filed.

### 3.     FedEx's Reply to Plaintiffs' Opposition

FedEx contends that the employment relationship is fundamentally contractual, and when an employee applies to work at a company, and both sides subsequently begin performing, both the company and the employee have accepted the terms and conditions of employment as set forth in the employer's documents, including its employment application.   Here, the circumstances establish that the parties agreed to a six-month limitation period, which ultimately became part of Plaintiffs' employment contract with FedEx.

FedEx argues that an executed employment application becomes integrated into any later terms and conditions of employment.  Plaintiffs' reliance on *Harden v. Maybelline Sales Corp*. is misplaced because that case involved a standardized employment application and a subsequent formal written offer of employment, which was at odds with the application.   Here, there is no evidence conflicting with the limitation period in the application, and thus *Harden* is wholly distinguishable.

FedEx contends there was sufficient consideration for Plaintiffs' agreement to the terms of the application.  The application provides that "[i]f employed by FedEx Freight, in consideration thereof and the compensation paid therefore, without further consideration, I do hereby agree to the following: . . . ."  (Doc. 15, Naylor Decl., Exhibits A-C.)  FedEx argues that payment is clearly a benefit conferred on Plaintiffs in exchange for their agreement to the terms and conditions in their employment applications and provides sufficient consideration.

FedEx cites *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1042-45 (9th Cir. 2001) for the proposition that a 6-month limitation period is not substantively or procedurally unconscionable.  As to Plaintiff Markowitz' application which was signed while he worked for FedEx National, that company merged with FedEx Freight and Markowitz admitted in his

1  deposition that, at that time, all FedEx National employees became FedEx Freight employees.

2  Plaintiff Markowitz offers no evidence to dispute that FedEx Freight left unchanged other terms

3  and conditions of his employment, such as his seniority.

4        Finally, as to Plaintiffs' request for equitable tolling, they cite no case law to support their

5  argument.  Even if the Court were to apply equitable tolling, it would not save Plaintiffs' claims.

6  Plaintiffs admit in their opposition papers they were aware that their claims against FedEx accrued

7  in January 2013, yet they did not file their lawsuit until eight months later, and there is no basis for

8  the delay.

9  **B.      FedEx's Request for Judicial Notice is Granted**

10        In support of its reply brief, FedEx requests that the Court take judicial notice of 18 court

11  orders issued by various state and federal courts.  (Doc. 23.)  The Federal Rules of Evidence

12  provide that judicial notice may be taken of adjudicative facts.  *See* Fed. R. Evid. 201(a).  A

13  judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally

14  known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

15  determination by resort to sources whose accuracy cannot be reasonably questioned.  *See* Fed. R.

16  Evid. 201(b).

17        Courts frequently take judicial notice of court records.  *See Reyn's Pasta Bella, LLC v. Visa*

18  *USA, Inc.*, 442 F.3d 741, 756 n. 6 (9th Cir. 2006).  Orders issued by other courts are subject to

19  judicial notice; however, no notice is taken of such documents for the truth of the matter asserted

20  therein.  *In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (in

21  considering defendant's motion to dismiss, court noticed the existence of unrelated court

22  documents, but refused to take judicial notice of documents for the truth of the matter asserted

23  therein).  As such, FedEx's request for judicial notice is GRANTED as to the existence of these

24  orders, but not as to the facts contained therein.

25  ///

26  ///

27  ///

28  ///

**C.     There is No Material Dispute that the Limitation Period is a Term of the Employment Agreement Between the Parties**

     **1.     Plaintiffs Do Not Materially Dispute Their Employment Applications Contain a 6-Month Limitation Provision**

The only issue for purposes of this summary judgment motion is whether Plaintiffs Hall, Rodriguez, and Markowitz are barred from pursuing their claims due to the time-limitation provision set forth in their employment applications.   FedEx submits employment applications signed by Plaintiffs Hall, Rodriguez, and Markowitz containing the following provision:

> I agree to bring any such complaint within the time prescribed by law or within six (6) months after the date of the event forming the basis of my claim or lawsuit, whichever expires first.

(Doc. 15-1, Naylor Decl., Exhs A-C.)   According to FedEx, applicants seeking employment are required to complete an employment application prior to their employment.   (Doc. 15, Naylor Decl., ¶ 3.)   For the last few years, FedEx has accepted online applications, but prior to that time paper copies of applications were completed or retained.   (Doc. 15, Naylor Decl., ¶ 4.)

While Plaintiffs Hall and Rodriguez do not remember filling out the application contained in their respective personnel files, neither disputes providing the information contained on the application, and completing and signing the application document electronically, either personally or through the assistance of a spouse.[3]   Plaintiff Markowitz acknowledges his handwritten signature on his employment application, although he did not remember completing that particular form.[4]   Although Plaintiffs dispute FedEx's statement that they each agreed to the 6-month

---

[3] Plaintiff Rodriguez testified he did not remember completing the employment application, but after reviewing a copy during his deposition, he confirmed that his electronic signature was affixed to the document, he had read all of the paragraphs above his signature before signing the document, and he understood that all the contents of the application applied to him and his employment.   (Doc. 14-3, Rodriguez Depo., 9:4-10:8.)   When asked about completing a job application upon returning to work at FedEx, Plaintiff Hall testified he did not recognize the copy of the application produced during his deposition and that since he had filled out so many documents, he did not know what he completed and what he did not.   When asked whether he had seen the application document before, he responded he was "not sure," but he "must have had to get the information."   (Doc. 14-2, Hall Depo., 155:21-158:17.)   He testified that if he had completed the employment application online, his wife would have sat with him and asked him the questions and "she would plug it in" to the online form.

[4] Plaintiff Markowitz reviewed a copy of an application he purportedly submitted upon applying for employment; he testified that he filled it out and it was his handwritten signature affixed to the document.   (Doc. 14-4, Markowitz Depo., 110:1-111:7.)

limitation provision in their respective job applications, Plaintiffs contend that it is not a material fact because California law states an employment application in and of itself is not a contract.

Plaintiffs offer no evidence they did not sign the employment application or that the application they signed did not contain the 6-month limitation provision.  Instead, Plaintiffs contend only that they do not remember completing the employment application.  As such, Plaintiffs fail to materially dispute that each of them signed a job application that contained this 6-month provision.  *See Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1113 n.3 (9th Cir. 2005) (noting that court considering summary judgment may accept defendant's version of plaintiff's conduct where plaintiff merely testifies that he does not remember a particular act).

**2.   No Material Dispute that the Limitation Provision is a Term of Plaintiffs' Employment**

The parties dispute whether the limitation provision contained in the employment applications constitutes a term of Hall, Rodriguez, and Markowitz' employment.  Plaintiffs assert the employment application is not itself a contract, it is unsupported by adequate consideration, and the terms contained in an employment application do not control the employment terms. FedEx contends employment is fundamentally a contractual relationship and the terms included in Plaintiffs' employment applications unquestionably govern the terms of their employment at FedEx.

Plaintiffs cite *Harden v. Maybelline Sales Corp.*, 230 Cal. App. 3d 1551, 1555 (1991) for the proposition that an employment application is not a contract.  FedEx contends *Harden* is distinguishable because that case involved a standardized application containing an at-will provision that was at odds with a subsequent formal written offer of employment.  As the offer letter contradicted the application, the court held the subsequent letter governed the terms and conditions of employment.  Because there is no conflicting evidence here, Plaintiffs' argument that the terms of the application each Plaintiff undisputedly completed fails to govern Plaintiffs' employment is misplaced.

Contracts may be either express or implied.  Cal. Civ. Code § 1619.  Here, Plaintiffs do not allege there is a written employment contract between the parties, and Plaintiffs offer no evidence

1  of a written employment contract.  Instead, they allege there was an implied-in-fact agreement

2  between Plaintiffs and FedEx.

3       The existence and terms of an implied contract are manifest by conduct.  *Caron v. Andrew*,

4  133 Cal. App. 2d 412, 416 (1955).  The terms contained in an employment application are

5  evidence of the parties' conduct and the agreed-upon terms of employment.  Thus, even to the

6  extent the employment application is not itself an integrated contract, it is evidence of the terms of

7  Plaintiffs' employment and the agreement between the parties.  *See Eisenberg v. Alameda*

8  *Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1388 (1999) (employment application and employee

9  handbook were not integrated contracts, but this did not undermine their materiality as evidence of

10  the nature of the employment); *see also Kovatch v. Cal. Cas. Management Co.*, 65 Cal. App. 4th

11  1256, 1275-76 (1998) (disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.*, 25 Cal.

12  4th 826, 854 n.19 (2001)).

13       Plaintiffs further contend their employment applications cannot supply evidence of the

14  terms of their employment because the application itself is not supported by any consideration.

15       FedEx contends it not only hired Plaintiffs, but continues to employ them to date; payment

16  of wages is clearly a benefit conferred on Plaintiffs in exchange for their agreement to the terms

17  and conditions in their employment applications.  Moreover, the application addresses the issue of

18  consideration.

19       The employment application provides that, "[i]f employed by FedEx Freight, in

20  consideration thereof and the compensation paid therefore, without further consideration, I do

21  hereby agree to the following . . . "  (Doc. 15, Naylor Decl., Exhibits A-C.)  By accepting

22  employment and agreeing to accept wages and other benefits in return for their services, the

23  employment applications were supported by sufficient consideration.  *See Asmus v. Pacific Bell*,

24  23 Cal. 4th 1, 10-11 (2000).  Analogously, continued employment has been held to provide

25  sufficient and adequate consideration to support unilateral modification to employment contracts.

26  *Id.*  As noted in *Asmus*, California law permits employers to implement policies that may become

27  unilateral implied-in-fact contracts when employees accept them by continuing their employment.

28

*Id.* at 10-11. Thus, Plaintiffs' assertion the employment application is not supported by sufficient consideration is not persuasive.

Moreover, the application is sufficient to show that an agreed-upon term of Plaintiffs' employment included the 6-month limitation provision. In *Harden*, the court recognized that the job application at issue was not "a valid express contract" because it was missing essential terms of the employment – e.g., compensation. 230 Cal. App. 3d at 1555. However, it was "evidence concerning the ultimate agreement entered into between the parties." *Id.* at 1556. Because the plaintiff had produced conflicting evidence of a term contrary to that contained in the application, the court concluded there was a triable issue regarding the terms of plaintiff's employment. This case is distinguishable from *Harden* because Plaintiffs submit no documentary evidence or testimony contradicting the 6-month limitation provision, or evidence that another term was conveyed in an employee manual or some other employment document. The mere fact that they do not recall signing the employment application is insufficient to dispute they signed the documents bearing their handwritten or electronic signatures. *See Blanford*, 406 F.3d at 1113 n.3 (noting that court considering summary judgment may accept defendant's version of plaintiff's conduct where plaintiff merely testifies that he does not remember a particular act). Because Plaintiffs offer no testimony or documentary evidence disputing or contradicting the 6-month limitation provision, there is no genuine material dispute that the 6-month limitation was a term of their employment.

**D.     The 6-Month Limitation is Reasonable**

FedEx asserts a contractual 6-month limitation period has been found reasonable in a number of cases, including in the employment context. FedEx cites *Beeson v. Schloss*, 183 Cal. 618, 622 (1920), *Ward v. Sys. Auto Parks & Garages, Inc.*, 149 Cal. App. 2d Supp. 879, 880-1 (1957), and *Tebbets v. Fidelity Cas. & Co.*, 155 Cal. 137, 139 (1909), that all found reasonable a contractually agreed-to limitation period that was shorter than the applicable statute of limitations. Plaintiffs contend that *Beeson* and *Tebbets* are distinguishable in that they involved easily recognizable claims in straightforward contract disputes. (Doc. 18, 14:16-15:7.)

1

### 1.   California Law Permits Parties to Contractually Shorten Statutes of Limitation

2

A statute of limitations "prescribes the period[] beyond which actions may not be brought."

3   *See* 3 Witkin, Cal. Procedure, Actions, § 430, p. 546 (5th ed. 2012).   Statutes of limitation "come

4   into the law not through the judicial process but through legislation.   They represent a public

5   policy about the privilege to litigate."   *O'Neill v. Tichy*, 19 Cal. App. 4th 114, 120 (1993).

6

California courts have "afforded contracting parties considerable freedom to modify the

7   length of a statute of limitations."   *Moreno*, 106 Cal. App. 4th at 1430.   In general, courts will

8   enforce parties' agreements for a shorter limitations period than provided by statute, so long as it is

9   reasonable.   *Id.*   "'Reasonable' in this context means the shortened period nevertheless provides

10   sufficient time to effectively pursue a judicial remedy."   *Id.*   Thus, parties may stipulate for a

11   shorter period than provided for by the statute of limitations, but the stipulation must not violate

12   public policy and the period agreed to must not be unreasonable "as to show imposition or undue

13   advantage in some way."   *Beeson*, 183 Cal. at 622-23.

14

### 2.   Plaintiffs' Claims and Applicable Statutes of Limitation

15

Plaintiffs each allege claims against FedEx for (1) fraud; (2) constructive fraud; (3) breach

16   of oral contract; (4) breach of implied contract; and (5) breach of the covenant of good faith and

17   fair dealing.   (Doc. 1-2.)   Pursuant to California law, the elements of a fraud claim include (1)

18   misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

19   (or "scienter"); (3) intent to defraud (to induce reliance); (4) justifiable reliance; and (5) resulting

20   damage.   *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).   The elements of a cause of action for

21   constructive fraud include (1) a fiduciary relationship; (2) nondisclosure; (3) intent to deceive; and

22   (4) reliance and resulting injury.   *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516-17 (1980).

23

The elements of a breach of contract claim include (1) the existence of a contract; (2)

24   plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting

25   damage to the plaintiff.   *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).   A

26   cause of action for breach of the implied contract has the same elements, except that the promise is

27   not written or oral, but is implied from the promisor's conduct.   *Yari v. Producers Guild of Am.,*

28   *Inc.*, 161 Cal. App. 4th 172, 182 (2008).   A cause of action for breach of the covenant of good

faith and fair dealing requires (1) the existence of a contractual relationship; (2) implied duty; (3) breach; and (4) causation of damages.  *Smith v. City & Cnty. of S.F.*, 225 Cal. App. 3d 38, 49 (1990).

Fraud and fraud-based claims are subject to the three-year statute of limitations under California Code of Civil Procedure § 338(d).  Section 338(d) also provides that a cause of action based on fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . . "   The statute of limitations for breach of a contract that is not based on a written agreement is two years, whether the agreement is oral or implied in fact.  Cal. Code Civil Proc. § 339.  Similarly, a claim for breach of the implied covenant of good faith and fair dealing has a two-year statute of limitation arising out of a tort theory, and four years when predicated on a contract theory.  Cal. Code Civ. Pro. § 339; *Frazier v. Metropolitan Life Ins. Co.*, 169 Cal. App. 3d 90, 102 (1985).

### 3.     The Event Commencing the Limitation Period

Under the language of the employment application, the limitation provision commenced "six (6) months after the date of the event forming the basis of [Plaintiffs'] claim or lawsuit." FedEx contends the limitation period therefore commenced when each Plaintiff discovered he would be impacted by FedEx's change of operations.  FedEx maintains it is undisputed that Plaintiffs Rodriguez and Markowitz first discovered they would be impacted by the change of operations in July 2012, and Plaintiff Hall testified he first became aware of the impact sometime before December 2012.  (Doc. 13-1, 9:15-19.)  As such, the limitation period commenced in July 2012 for Rodriguez and Markowitz and commenced in December 2012 for Plaintiff Hall.  The 6-month limitation therefore expired no later than January 2013 as to Plaintiffs Rodriguez and Markowitz and no later than July 2013 for Plaintiff Hall.  Because Plaintiffs did not file their complaint until September 19, 2013, the 6-month limitation provision bars the claims of these Plaintiffs.

Plaintiffs contend it is irrelevant when they *discovered* they would be impacted by FedEx's change of operations because their causes of action could not accrue under the law until they incurred damages, which were not realized until January 2013.

1     In its reply brief, FedEx asserts it does not matter what event commenced the 6-month

2     provision – discovery of the change of operations or the incurring of damages.   According to

3     FedEx, even construing all facts in Plaintiffs' favor and deeming the limitation provision to have

4     commenced when the very last element of Plaintiffs' claims – i.e., damages – became known to

5     Plaintiffs in January 2013, their complaint was still not filed within 6 months of that event.

6     Plaintiffs are correct that, in general, a statute of limitations does not commence until a

7     claim has fully accrued, i.e., all the essential elements of the claim have occurred or, in the case of

8     fraud, are at least reasonably suspected.   While an action for breach of contract generally accrues

9     when the contract is breached, *see Romano v. Rockwell Int'l Inc.*, 14 Cal. 4th 479, 488 (1996), the

10    statute of limitations is not triggered by a breach that produces no immediate harm, or only

11    nominal damages.   Instead, the period begins to run when the plaintiff suffers appreciable and

12    actual harm.   *Garver v. Brace*, 47 Cal. App. 4th 995, 999-1000 (1996).   As explained by the

13    California Supreme Court,

14        Impelled by [a] concern for the pragmatic, we have drifted away from the view
15        held by some that a limitations period necessarily begins when an act or omission
          of defendant constitutes a legal wrong as a matter of substantive law.   Rather, we
16        generally now subscribe to the view that the period cannot run before plaintiff
          possesses a true cause of action, by which we mean that events have developed to a
17        point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment
          such as an award of nominal damages.
18

19    *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975).

20        Here, Plaintiffs assert the breach or misrepresentation that forms the basis of their claims

21    was not accompanied by immediate damage.   Plaintiffs contend they did not know how much their

22    bidding seniority would affect their pay until they bid on runs, were assigned spots on the extra-

23    board because no more runs were available when they were permitted to bid, and then actually

24    realized less pay as a result of assignment to the extra-board.   Thus, Plaintiffs dispute that the 6-

25    month limitation period could have commenced in July 2012 as FedEx contends.

26        Plaintiffs also cite *Moreno* that noted

27        a contractually shortened limitations period has never been recognized outside the
28        context of straightforward transactions in which the triggering event for either a

breach of contract or for the accrual of a right is immediate and obvious . . . Instead, most reported decisions upholding shortened periods involve straightforward commercial contracts plus the unambiguous breaches or accrual of rights under those contracts.

106 Cal. App. 4th at 1430 (2003).

In *Moreno*, a contractual limitation shortening the time to bring a cause of action was determined to be unreasonable and against public policy because it abrogated the discovery rule and expired before the plaintiffs had adequate time to discover the facts relevant to their claim. *Id.* By abrogating the discovery rule, the court noted the limitation period would potentially expire before the cause of action would legally accrue and could work to prevent a plaintiff from seeking a judicial remedy. The *Moreno* court distinguished California case law finding similar contractual limitations enforceable because, in those cases, the claim and the accrual of right was immediate and obvious, unlike in the case before it where the plaintiffs did not know or have reason to know the facts underlying their claim when the contractual provision commenced running.[5]

While the events underlying Plaintiffs' claims did not arise at one specific time, the events underlying Plaintiffs' claims were not latent and hidden as was the case in *Moreno*. FedEx's alleged breach and misrepresentation were immediately obvious to Plaintiffs when they discovered other drivers would be transferring from Fresno and retaining their seniority. Plaintiffs testified they anticipated damage from the change in operations and the transfer of Fresno drivers – i.e., they would lose their assigned run when the transfers occurred, but that they were not actually damaged in terms of receiving less pay until January 2013. (Markowitz Depo., 92:15-21; Doc. 18-4, Markowitz Decl., ¶¶ 15, 18; Hall Depo., 146:13-20, Doc. 18-2, Hall Decl., ¶¶ 12, 14; Doc. 18-3, Rodriguez Decl., ¶¶ 14, 17).) Thus, the damage was obvious and known to Plaintiffs when it occurred in January 2013. Although the elements of Plaintiffs' claim did not occur at one time, different from the California cases distinguished by *Moreno* where the prima facie elements

---

[5] Two cases distinguished by the *Moreno* court include *Tebbets* and *Beeson,* which are cited by FedEx in support of the proposition that contractual limitations are routinely approved by California courts. In *Tebbets*, death triggered the statute of limitations for actions for benefits under an accident-life insurance policy which specified that all actions for death benefits had to be brought within six months from the date of death. 155 Cal. at 139. The court found that the limitations period was not unreasonable. *Id.* In *Beeson*, receipt of a detailed statement of commissions earned was the triggering event for actions for unpaid sales commissions. 183 Cal. at 622-24. The court found that six months from receiving the statement was a sufficient time to bring an action for unpaid commissions. *Id.*

1  of the claims occurred together, the events underlying Plaintiffs' claims nonetheless remained

2  obvious and were known at the time they occurred.  In other words, while the parties here dispute

3  which event – alleged breach or damage – triggered the 6-month limitation period, neither the

4  breach nor the damage were hidden or unknown, setting this case apart from *Moreno*.

5       This case is also distinguishable from *Moreno* in another important aspect.  In *Moreno,* the

6  court held that the plaintiffs' causes of action did not accrue under the one-year contractually

7  agreed-to limitation until they discovered or should have discovered the defendant's negligence.

8  106 Cal. App. 4th at 1434.  By allowing the plaintiffs the benefit of the "discovery rule," as they

9  would have been entitled under the applicable statute of limitations, their claim was timely filed

10  within the 1-year contractual limitation period.

11       Here, even if the 6-month limitation period did not accrue until Plaintiffs actually suffered

12  damage, it would not save Plaintiffs' claims.  Specifically, Plaintiffs argue their claims legally

13  accrued in January 2013 when they were able to ascertain damages. (Doc. 18, 18:7-11 ("Here,

14  each of the Plaintiffs' causes of action have the element of damages, therefore, their claims did not

15  accrue until they actually suffered damage.  This did not occur until the Fresno drivers actually

16  transferred to Kettleman City in January, 2013."); Doc. 18-4, Markowitz Decl., ¶ 18 ("In February

17  2013, once I knew I was losing income because of the misrepresentations made to me about the

18  transfer . . . ");  Doc. 18-3, Rodriguez Decl., ¶ 17 (same); Doc. 18-2, Hall Decl., ¶ 14 (same).)

19  Nevertheless, Plaintiffs did not file suit until September 2013, which, unlike the plaintiffs' claims

20  in *Moreno*, is beyond the 6-month limitation provision.

21       Any factual dispute about when the 6-month limitation commenced is immaterial.

22  Resolving in Plaintiffs' favor all ambiguity with respect to when Plaintiffs' claims accrued and

23  what events triggered the commencement of the 6-month limitation period, as noted above,

24  Plaintiffs claims remain untimely.  Plaintiffs present no evidence establishing that the limitation

25  period commenced later than January 2013.  Therefore, even viewing the facts in the light most

26  favorable to Plaintiffs and determining the 6-month limitation provision did not commence until

27  Plaintiffs ascertained damages in January 2013, the complaint was not filed within 6 months of

28  those events and is untimely.

The only remaining question is whether the 6 month limitation period constitutes a reasonable amount of time to seek a judicial remedy.  California law is clear that 6 months is a sufficient period to pursue a judicial remedy for common law claims such as Plaintiffs' – even in the employment context.  *Soltani v. Western & Southern Life Insurance Co.*, 258 F.3d 1038 (9th Cir. 2001) (6-month contractual provision commencing on the date of termination of employment found reasonable); *Beeson*, 183 Cal. at 624; *Tebbets*, 155 Cal. at 139.

**E.      The 6-Month Limitation Provision is Not Unconscionable**

Plaintiffs argue the 6-month limitation period is unconscionable and cannot be enforced. Courts may strike down particular contractual clauses as unconscionable.  *See Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000).  In *Armendariz*, the California Supreme Court set forth the analytical framework for determining if a contractual provision is unconscionable:

> [U]nconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results . . . . [B]oth [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.  But they need not be present in the same degree.  Essentially a sliding scale is invoked . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Id.* at 99.

**1.      Procedural Unconscionability**

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.  It focuses on factors of oppression and surprise." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999).

"Unconscionability analysis begins with an inquiry into whether the contract was negotiated and the circumstances of the parties.  The term [adhesion contract] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Soltani*, 258 F.3d at 1042.  "The question is whether [the adhering party] is free to negotiate and alter the terms of the proffered agreement." *Parr v. Super. Ct.*, 139 Cal. App. 3d 440, 444 (1983).

1  Here, like *Parr* and *Soltani*, Plaintiffs' employment applications are essentially "contracts" of

2  adhesion.  FedEx is a large national corporation that has vast bargaining strength in comparison to

3  Plaintiffs, it imposed the terms of the employment application in a standardized form as a

4  condition of employment, and there was no opportunity for Plaintiffs to negotiate.  While FedEx

5  does not concede that the terms were non-negotiable, it nonetheless states that each employee was

6  required to submit a signed application when seeking employment with FedEx.  (Doc. 15, Naylor

7  Decl., ¶¶ 3-4.)

8      Plaintiffs argue no reasonable person would have seen the one-sentence 6-month limitation

9  provision buried in the "fine print" of the employment application.  The limitation provision is

10  contained at the end of the application, and it was not hidden or in a smaller font.  Plaintiff Hall

11  testified that if he completed an online application, which he does not remember, he would have

12  "sat there and [his] wife would ask [him] a question or she already knew the answer, she would

13  plug it in."  (Doc. 14-2, Hall Depo, 157:2-5.)  He testified that he understood he was required to

14  complete the application as accurately as possible, that when hired his employment would be

15  subject to certain policies of the company, and no one ever told him that certain provisions of the

16  employment application would not apply.  (Doc. 14-2, Hall Depo., 158:13-159:4.)  While Plaintiff

17  Rodriguez did not remember completing the employment application, when shown his electronic

18  signature on the document, he indicated he had read all of the paragraphs above his signature

19  before signing the document and he understood that all the contents of the application applied to

20  his employment at FedEx.  (Doc. 14-3, Rodriguez Depo., 9:21-10:8.)  Plaintiff Markowitz also

21  acknowledged his signature on the employment application.  (Doc. 14-4, Markowitz Depo., 110:1-

22  111:7.)  None of Plaintiffs' testimony establishes they were given insufficient time to read the

23  application or to ask questions regarding its contents.  Moreover, the provision itself is in the same

24  font and type as the rest of the application.  The provision was located on the final page of a 6-

25  page document, in a section that was marked "IMPORTANT – PLEASE READ CAREFULLY

26  BEFORE SIGNING."  (Doc. 14, Naylor Decl., Exhibits A-C.)  *See Roman v. Super. Ct.*, 172 Cal.

27  App. 4th 1462, 1471 (2009) (arbitration clause in adhesive employment application not procedural

28  unconscionable where provision was contained on the last page of seven-page employment

1   application, underneath heading "Please Read Carefully, Initial Each Paragraph and Sign Below").

2   There is no showing of undue surprise or oppression.

3        **2.      Substantive Unconscionability**

4        Merely because a contract is one of adhesion does not render it automatically

5   unenforceable.  There must be some showing of substantive unconscionability.  While procedural

6   unconscionability focuses largely on oppression and the manner in which the agreement was

7   negotiated, substantive unconscionability focuses on the terms of the agreement and the presence

8   of overly harsh or one-sided results.  *Kinney*, 70 Cal. App. 4th at 1329.

9        Plaintiffs argue the provision is substantively unconscionable because the purpose of the

10  provision is to preclude employees from bringing lawsuits by tricking them into "missing an

11  unknown contractual statute of limitations."   (Doc. 18, 14:7.)   FedEx never reiterated this

12  employment provision in any subsequent written materials, and "burying" such a provision in an

13  application and then never again including the provision in any employment materials is entirely

14  unconscionable. (Doc. 18, 14:7-15.)

15       FedEx argues both California and federal case law hold a 6-month provision such as this is

16  not substantively unconscionable.  Plaintiffs had sufficient time to pursue a judicial remedy after

17  they allegedly accrued damages, and contend they met with an attorney in February 2013.

18  Plaintiffs provide no evidence they could not have filed their lawsuit earlier or that anything

19  prevented them from complying with the provision.  FedEx maintains that, without evidence of

20  undue advantage, the limitations period is not unreasonable in any way and should be enforced.

21       "[T]he weight of California case law overwhelmingly indicates that the six-month

22  limitation provision is not procedurally unconscionable."   *Soltani*, 258 F.3d at 1043; *Han v.*

23  *Mobile Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995); *Beeson*, 183 Cal. at 624; *Hambrecht & Quist*

24  *Venture Partners v. Am. Medical Int'l, Inc.*, 38 Cal. App. 4th 1532, 1548-49 (1995).  Here, other

25  than stating it was unfair to put the term in an employment application, Plaintiffs have not

26  established the 6-month was substantively unconscionable under California law.

27  ///

28  ///

### 3.      Conclusion

While the employment applications Plaintiffs completed are documents of adhesion and Plaintiffs were not positioned to bargain over the terms, these facts are not dispositive.  The court must consider both the procedural and the substantive elements.  After considering both the procedural and the substantive prongs together on a sliding scale, the substantive prong outweighs any procedural unconscionability.  *Soltani*, 258 F.3d at 1044.  The employment agreement's 6-month limitation is not unconscionable.

### F.      Markowitz' Employment Application

Plaintiff Markowitz' employment application was submitted to FedEx National, Inc. ("National") the company for whom he worked prior to National's merger with FedEx Freight, Inc. (Defendant).  Plaintiff Markowitz contends he left his employment with National before the company became part of FedEx Freight, Inc., and FedEx has presented no evidence that the employment application he completed with National has been integrated into his employment agreement with FedEx or how it could possibly govern Markowitz' relationship with FedEx.

Plaintiff Markowitz testified he was employed by National from 2006 until 2010, when he transferred to Holbrook, Arizona.  He transferred to Holbrook, Arizona, because National was "splitting up the teams and with [his] seniority, [he] would be at the bottom of the board.  If [he] transferred to Holbrook, [he'd] be in the middle and [he'd] be able to get a decent run." (Markowitz Depo., 31:10-19.)

As FedEx correctly notes, Plaintiff Markowitz offers no evidence that he signed a different application when he transferred from National to FedEx.  He does not dispute that, upon transfer, FedEx left unchanged other terms and conditions of his employment with National, including his seniority, upon the January 2011 National merger with FedEx.  As such, Plaintiff Markowitz fails to create a genuine dispute that the terms of the application he completed prior to working for National are not the terms of his current employment with FedEx, now merged with National.

### G.      Equitable Tolling

Finally, Plaintiffs assert that the 6-month provision is not jurisdictional and is subject to equitable tolling due to "the obscure nature of the provisions in the employment applications and

1   the exercise of reasonable diligence by the Plaintiffs." (Doc. 18, 15:25-26.)  Plaintiffs maintain

2   they moved quickly to retain an attorney after they realized they were damaged by FedEx's change

3   of operations.  None of them was aware of the one sentence of fine print of their employment

4   applications, and FedEx never again reproduced this provision in any of its employment

5   handbooks or guidelines.  Thus, Plaintiffs contend it is reasonable to toll the limitation period for

6   two months from July 2013 to September 2013.

7        Plaintiffs cite no authority for the proposition that a private agreement between the parties

8   limiting the time period to file an action may be equitably tolled.  As a general matter, equitable

9   tolling may apply where the plaintiff is prevented from asserting a claim by wrongful conduct on

10  the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made

11  it impossible to file a claim within the time limits.  *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068

12  (9th Cir. 2006).  "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable

13  to obtain vital information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202

14  F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d

15  1176 (9th Cir. 2001).  "If a reasonable plaintiff would not have known of the existence of a

16  possible claim within the limitation period, then equitable tolling will serve to extend the statute of

17  limitations for filing suit until the plaintiff can gather what information he needs."  *Id.*

18       Here, Plaintiffs present no evidence they were misled into allowing the deadline to pass by

19  some misconduct of FedEx.  The fact that Plaintiffs failed to read or understand the terms

20  contained in their employment application is not a product of any misconduct on the part of

21  FedEx.  Additionally, there is no showing that Plaintiffs were unable to investigate their claims.

22  They argue they contacted an attorney by February 2013 and conferred with him in March 2013.

23  As six months has repeatedly been considered a reasonable amount of time to seek judicial review

24  of claims arising out of breach of contract, and Plaintiffs fail to establish how they were precluded

25  from filing suit or investigating their claims adequately during that six month period, the Court has

26  no basis to equitably toll the parties' private agreement as to the 6-month limitation.

27  ///

28  ///

1  **H.     Conclusion**

2       The 6-month limitation provision applies to Plaintiffs Hall, Markowitz, and Rodriguez'

3  contract and fraud-based claims.   The 6-month provision is reasonable and not unconscionable.

4  Further, the contractual limitation provision is not subject to equitable tolling.   As there is no

5  material dispute regarding the applicability of the limitation provision, and because Plaintiffs Hall,

6  Markowitz, and Rodriguez' claims were filed beyond the 6-month limitation provision, they are

7  untimely.   As such, FedEx' motion for summary judgment as to the claims of Plaintiffs Hall,

8  Markowitz, and Rodriguez is GRANTED.

9                                        **IV.     ORDER**

10       For all the reasons set forth above, IT IS HEREBY ORDERED that FedEx's Motion for

11  Summary Judgment is GRANTED as to the claims of Plaintiffs Hall, Markowitz, and Rodriguez.

12

13

IT IS SO ORDERED.

14

15    Dated:   __July 11, 2014__                    _____ **/s/ Sheila K. Oberto**

16                                             UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28